Jonathan O. Hafen (Utah Bar. No. 6096)
jhafen@parrbrown.com
Terry E. Welch (Utah Bar. No. 5819)
twelch@parrbrown.com
Stephen J. Hill (Utah Bar. No. 1493)
shill@parrbrown.com
Chad S. Pehrson (Utah Bar No. 12622)
cpehrson@parrbrown.com
PARR BROWN GEE & LOVELESS
Attorneys for Plaintiff Corel Software, LLC
101 South 200 East, Suite 700
Salt Lake City, UT 84111
Telephone:    801-532-7840

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COREL SOFTWARE, LLC,<br><br>             Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>             Defendant. | **COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**Case No. 2:15-cv-00528-EJF**<br>**Magistrate Judge Evelyn J. Furse**<br><br>**JURY DEMANDED** |

Plaintiff Corel Software, LLC ("Corel"), for its complaint against Defendant Microsoft

Corporation ("Microsoft"), alleges as follows:

### INTRODUCTION

1.      Since the 1980s, WordPerfect—software born in Utah and now owned and sold

by Corel Corporation—has had to compete worldwide with Microsoft for sales and market share

in the area of computer word processing applications.  Microsoft has employed aggressive tactics

to take WordPerfect's once-significant market share and, indeed, has succeeded.  Despite

1

maintaining a base of loyal followers, WordPerfect has been reduced to minimal market share as a result of Microsoft's aggressive actions.

2.     WordPerfect invested significant resources into developing innovative features for its software that improved the work of its users.  Microsoft has knowingly copied features that, before being copied by Microsoft, distinguished WordPerfect's software over Microsoft's products.  A subset of those features, and the patents Corel invested in to protect them, are the subject of this lawsuit.

3.     In the late 1990s, engineers working at Corel's facility in Orem, Utah invented a feature for WordPerfect called "RealTime Preview."  This marked a significant advance in ease-of-use by allowing users to preview the outcome of formatting changes quickly and without the burdensome, "trial-and-error" process of committing to a change, then having to "undo" the change if it did not satisfy the user's needs, and repeating the process until the user was satisfied.

4.     In the 1990s, word processing software was becoming a desktop publishing tool with increased formatting options, numerous available fonts, and high-end and complex uses for document graphic design in addition to text processing.  With these developments in the marketplace, the need to be able to quickly preview and choose between numerous design and formatting options was increasing.

5.     A team of three WordPerfect inventors, Kevin C. Unbedacht, Bruce G. Woodward, and Eric D. Johnson, with a combined background in software engineering and user research, created RealTime Preview in the process of searching for an "Ah-Ha" feature to distinguish the WordPerfect application from Microsoft Word.

6.     The RealTime Preview invention marked a dramatic change from prior art formatting approaches, making word processing easier and faster, providing a more consistent and better overall user experience, allowing for formatting changes on-the-fly, reducing user effort and energy, and allowing users to be more creative and proficient with the WordPerfect software by eliminating computing obstacles between a user's creative vision and the document as it would appear on the page.

7.     The RealTime Preview feature achieved the inventors' goal of distinguishing WordPerfect over Microsoft Word.  That is, until Microsoft copied the feature, ultimately including it in Microsoft Word, Microsoft Outlook, Microsoft PowerPoint, and other software, and actively branded and promoted the feature as a user benefit called "Live Preview."

8.     Over time, Microsoft has increased the number of uses for the Live Preview feature in its software products, presumably in response to consumer demand.

9.     Microsoft has infringed and continues to infringe, under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., several patents owned by Corel that arose from the RealTime Preview invention (together, the "Corel patents"):

(a)     U.S. Patent No. 6,731,309 ("Unbedacht '309 patent"), entitled "*Real Time Preview*," which was duly and legally issued on May 4, 2004, from a patent application filed August 28, 1998, with Kevin C. Unbedacht, Bruce G. Woodward, and Eric D. Johnson as the named inventors (attached as Ex. 1);

(b)     U.S. Patent No. 7,827,483 ("Unbedacht '483 patent"), entitled "*Real Time Preview*," which was duly and legally issued on November 2, 2010, from

a patent application filed January 6, 2004, which claims priority to the

Unbedacht '309 patent application (attached as Ex. 2); and

(c)     U.S. Patent No. 8,700,996 ("Unbedacht '996 patent"), entitled "*Real Time*

*Preview,*" which was duly and legally issued on April 15, 2014, from a

patent application filed March 22, 2013, which claims priority to a patent

application filed on October 14, 2010, which claims priority to the

Unbedacht '483 patent application, which claims priority to the Unbedacht

'309 patent application (attached as Ex. 3).

10.     The Corel patents cover foundational word processing and graphics editing

technologies, originating with the RealTime Preview invention, that provide previews of

document formatting changes in real time, thus improving ease of use and allowing users to save

significant time when editing or changing text, graphics, and tables using formatting options

including, but not limited to font face, font color, font size, line spacing, text justification, table

text alignment, table alternating fill colors, text wrap around objects, table fills, image border

styles and colors, and image fill colors.

11.     The RealTime Preview invention disclosed and claimed in the Corel patents

allows a user to preview the effect of a change to a document before committing to the change.

This allows users to avoid unexpected or undesirable changes, resulting in improved ease of use,

efficiency, and customer demand compared to prior technologies.  Users enjoy the benefit of

surveying a variety of formatting command options and observing the effect of the formatting

options on the active document in real time, thus saving time, keystrokes, and effort when editing

4

documents.  As a result, systems incorporating the invention facilitate users' increased

performance, efficiency, and creativity.

12.     Microsoft has infringed and continues to infringe the Corel patents, directly and

indirectly, by making, using, selling, offering for sale, and/or importing into the United States,

products that practice the inventions claimed in the Corel patents; and by encouraging third

parties to use, sell, offer for sale, and/or import into the United States, Microsoft products that

practice the inventions claimed in the Corel patents, with knowledge of the Corel patents and the

infringement resulting therefrom.

13.     Microsoft's products that practice the inventions claimed in the Corel patents

include at least those products that incorporate Microsoft's Live Preview feature, including but

not limited to Microsoft Word, Microsoft Excel, Microsoft Outlook, Microsoft PowerPoint,

Microsoft OneNote, Microsoft Visio, Microsoft Paint, Microsoft WordPad, and Microsoft

Publisher, along with any hardware products that feature any of said software programs, offered

for sale since at least 2007 (collectively, the "Infringing Products").

14.     In several Infringing Products, Microsoft incorporates multiple infringing

features, such as Live Preview for font face, font size, line spacing, image fill color, image line

color, text color, text highlighting color, bullets and numbering, and text justification, among

others.

15.     Since it began incorporating infringing features, Microsoft has not removed any

such features in subsequent releases; instead, it has expanded the number of infringing features

appearing in the Infringing Products, including additional features in more recent product

releases.

16.     Through its infringement of the Corel patents, on information and belief, Microsoft has enjoyed economic benefits of increased revenue or decreased costs compared to the substandard technologies it used before copying WordPerfect's RealTime Preview feature claimed in the Corel patents.

## THE PARTIES

17.     Corel Software, LLC, is a Delaware Limited Liability Company registered at 1209 Orange Street, Wilmington, DE 19801.

18.     Corel owns patents that cover the groundbreaking RealTime Preview invention.

19.     Microsoft Corporation is a Washington corporation with a principal place of business at One Microsoft Way, Redmond, Washington 98052-6399.

20.     Microsoft is a multinational technology company providing productivity and platforms for the personal computing, mobile-first, and cloud-first world.

21.     Microsoft develops, manufactures, licenses, supports, and sells computer software, consumer electronics, personal computers, and services.

22.     Microsoft designs in, manufactures in, uses in, offers for sale in, sells in, imports into, and/or exports from the United States billions of dollars of computer software and consumer electronics products each year.

## JURISDICTION

23.     This is an action for patent infringement, over which this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

24.     This Court has personal jurisdiction over Microsoft consistent with the requirements of the Due Process Clause of the United States Constitution and the Utah Long Arm Statute, Utah Code § 78-B-3-205.

25.     Microsoft transacts substantial business in Utah.

26.     Microsoft maintains active status to do business in Utah.

27.     Microsoft has committed and continues to commit acts of patent infringement in Utah as alleged in this Complaint.

28.     Microsoft has admitted or not contested proper personal jurisdiction in this District in other patent infringement actions.

## VENUE

29.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b)-(d) and 1400(b) because Microsoft is subject to personal jurisdiction in this District, Microsoft has committed acts of patent infringement in this District, Microsoft has purposefully availed itself of the rights and benefits of Utah law and regularly does and solicits business in Utah, and Microsoft derives substantial revenue from things used or consumed in this District.

30.     Microsoft has admitted or not contested proper venue in this District in other patent infringement actions.

31.     The first named inventor on the Corel patents, Kevin C. Unbedacht, resides in this District presently and has resided in this District since the 1990s, when he participated in creating the RealTime Preview invention.

32.     The second named inventor on the Corel patents, Bruce G. Woodward, resides in this District presently and has resided in this District since the 1980s, including the period in the 1990s during which he participated in creating the RealTime Preview invention.

33.     The third named inventor on the Corel patents, Eric D. Johnson, resides in this District presently and has resided in this District since the 1990s, when he participated in creating the RealTime Preview invention.

## FACTUAL ALLEGATIONS

### I.     The Corel Patents

34.     Plaintiff Corel Software, LLC owns all rights, titles, and interests in and to the Corel patents, including the exclusive right to bring suit with respect to any past, present, and future infringement.

35.     Each of the Corel patents is valid and enforceable.

36.     The Corel patents disclose a software apparatus and method performed during use of a document or graphics editing program that allows a user to preview a formatting or graphic change in real time by monitoring the user's actions—including by monitoring the user's cursor position—to determine when the user has considered an available format change and has not yet executed the change through the user interface.

37.     In one respect, the Corel patents claim a novel software apparatus and method of executing formatting commands as soon as they are identified, but not actively selected, by the user.  For example, the user can scroll through a list of font types in an editing window, and as the cursor passes from one font type to another, the document being worked on will change from one font to another.  Unlike in prior art approaches, the user does not have to perform an extra

operation which positively and actively directs the software to execute the identified command. In short, the invention performs changes immediately when they are identified.

38.     In another respect, the Corel patents claim a novel software apparatus and method of identifying formatting changes considered by a user by monitoring the user's cursor position and automatically executing code associated with the formatting change.

39.     The Corel patents solve a problem—the slow and inefficient process of selecting among multiple formatting options until the user reaches a desired result—arising specifically in the realm of productivity applications for computers, and the invention's solution is rooted in computer technology involving an input device, an operating system, executable software, and display technology.

## II.     The Inventors

40.     Kevin C. Unbedacht, Bruce G. Woodward, and Eric D. Johnson are the named inventors on the Corel patents.

41.     Mr. Unbedacht studied computer science and engineering at Brigham Young University from 1986-88.

42.     After studying at Brigham Young University, Mr. Unbedacht joined WordPerfect Corporation as a software engineer.

43.     From 1987 until and through the time he co-invented the RealTime Preview feature, Mr. Unbedacht remained at WordPerfect Corporation (and its later owners), investing his efforts and career in building and improving the WordPerfect word processing application.

44.     Mr. Woodward graduated from Brigham Young University in 1988 with a degree in computer science.

45.     Upon graduation, Mr. Woodward was hired at WordPerfect as a software engineer.

46.     From 1988 until and through the time he co-invented the RealTime Preview feature, Mr. Woodward remained at WordPerfect Corporation (and its later owners), investing his efforts and career in building and improving the WordPerfect word processing application.

47.     Mr. Johnson graduated from Brigham Young University in 1990 with a degree in computer science.

48.     Upon graduation, Mr. Johnson was hired at WordPerfect as a software engineer and worked as part of a contextual inquiry team.

49.     Mr. Johnson's work on the WordPerfect contextual inquiry team involved observing multiple WordPerfect users to determine how they worked, what problems they encountered, what features in the WordPerfect application might solve those problems, and how to make the WordPerfect application compatible with the users' preferences.

50.     From 1990 until and through the time he co-invented the RealTime Preview feature, Mr. Johnson remained at WordPerfect Corporation (and its later owners), investing his efforts and career in building and improving the WordPerfect word processing application.

51.     Collaboration among Mr. Unbedacht, Mr. Woodward, and Mr. Johnson brought together complementary skills in software engineering and user preferences analysis, and these skills and an ambition to create distinguishing features desired by users resulted in the RealTime Preview invention.

52.     When they first implemented the RealTime Preview feature, Mr. Unbedacht, Mr. Woodward, and Mr. Johnson realized that they had made a significant advance in word processing software that had not existed previously.

53.     The RealTime Preview invention was received by expressions of excitement at the dramatic improvement over prior approaches.

54.     Customers of WordPerfect software reacted to the RealTime Preview invention as a major advance in word processing and a reason to buy the WordPerfect software instead of an alternative product.

55.     Mr. Unbedacht, Mr. Woodward, and Mr. Johnson remained with the WordPerfect company until after the company was purchased by Novell and then by Corel Corporation.

III.    **WordPerfect**

56.     WordPerfect Corporation arose out of a software development project pursued by a professor and graduate student at Brigham Young University in the early 1980s.

57.     The name WordPerfect also refers to a word processing application originally owned and sold by WordPerfect Corporation and now owned and sold by Corel Corporation.

58.     The WordPerfect software application has existed since the early 1980s, when it was developed, and is still sold today.

59.     Novell, which acquired the WordPerfect company, and Corel Corporation, which acquired WordPerfect from Novell, both have retained the WordPerfect brand for the word processing software application.

60.     The inventions described and claimed in the Corel patents were developed in conjunction with the WordPerfect application, and specifically in conjunction with attempts to

create new and groundbreaking features for the WordPerfect application that would give WordPerfect a competitive advantage against Microsoft and others.

61.     Since the 1990s, WordPerfect's primary competitor has been and remains Microsoft's Office software suite, including Microsoft Word—Microsoft's document and word processing software.

62.     The inventions claimed in the Corel patents were first incorporated into WordPerfect products by at least 2000, and have remained in WordPerfect products since then.

63.     Upon the inventors' creation of the RealTime Preview invention, WordPerfect invested in incorporating the invention into WordPerfect software and marketing the feature to distinguish WordPerfect software over its competitors, including Microsoft Word.

64.     WordPerfect protects even its name for the RealTime Preview invention, applying a trademark designation to its "RealTime Preview[TM]" mark.

65.     On information and belief, Microsoft did not incorporate a real-time preview feature in its products until Microsoft released its Office 2007 suite of products.

66.     Until Microsoft's release of Office 2007, the RealTime Preview feature in WordPerfect provided Corel Corporation with a differentiator that it used to distinguish WordPerfect from Microsoft's software.

67.     Microsoft copied the RealTime Preview feature and added it to its own products—including at least Microsoft Word, Microsoft Outlook, Microsoft Excel, Microsoft PowerPoint, and the other Infringing Products—as the "Live Preview" feature.

68.     Despite severely diminished market share based on competition from Microsoft and from Microsoft's copying of features that previously gave WordPerfect some competitive differentiation, the WordPerfect application is still sold today to a base of loyal users.

**IV.     Microsoft's "Live Preview" Feature**

69.     At least as early as the release of Office 2007, Microsoft incorporated the Live Preview feature in its software products.

70.     Microsoft branded and actively promoted the Live Preview feature to its customers and potential customers.

71.     On information and belief, Microsoft actively promoted the Live Preview feature because Microsoft expected that the feature would increase demand for its products that incorporated the feature compared to the substandard approaches that Microsoft had incorporated in prior products for formatting changes.

72.     As an example of this active promotion, Microsoft's support website for Office 2007 identifies and describes the Live Preview feature:

# Preview formats, fonts, and styles before you apply them

You can see how formatting options such as fonts and Quick Styles will look, before you commit to them, by using the Live Preview feature that is included in several programs in the 2007 Microsoft Office system.

## What do you want to do?

⇓ Preview font formatting in Word, Excel, Outlook, and PowerPoint
⇓ Preview paragraph formatting in Word, Outlook, and PowerPoint
⇓ Preview Quick Styles in Word, Outlook, Excel, and PowerPoint
⇓ Preview picture formatting in Word, Outlook, Excel, and PowerPoint
⇓ Turn on or off Live Preview

73.     Microsoft's support website further instructs end users on how to use the Live Preview feature for several formatting operations in several Office 2007 applications, including using Live Preview to preview font formatting in Word 2007:

## Preview font formatting in Word, Excel, Outlook, and PowerPoint

## Which 2007 Microsoft Office system program are you using?

⇓ Word

## Word

1. Select the text that you want to format.

2. On the **Home** tab, in the **Font** group:

   ▪ Click the **Font** box down-arrow, then move the pointer over the fonts.

   ▪ Click the **Font Size** box down arrow, then move the pointer over the font sizes.

   ▪ Click the **Text Highlight Color** button down-arrow, then move the pointer over the highlight or fill colors.

   ▪ Click the **Font Color** button down-arrow, then move the pointer over the font colors.

3. To apply the previewed formatting, click the selected font name, font size, or color.

4. To cancel live previewing without applying any changes, press **ESC**.

74.     Since its introduction of the Live Preview feature for formatting changes such as fonts and object colors, Microsoft has continued to both broaden and deepen its use of the patented features across its product line, incorporating the Live Preview feature (and, thus, the RealTime Preview invention claimed in the Corel patents) into other products such as Microsoft OneNote and Microsoft Visio, and expanding the use of the Live Preview feature (and, thus, the RealTime Preview invention claimed in the Corel patents) within its product line by increasing the number of different implementations of  Live Preview within the Infringing Products.

75.     For example, Microsoft has continued to add Live Preview feature functionality to the Infringing Products, such as the following Office 2010 feature advertised on Microsoft's "official blog of the Microsoft Office product development group":

In Office 2010, we're combining the rich functionality of the Paste Special dialog and the Paste Recovery feature into a new Paste Options gallery.  The Paste Options gallery includes Live Preview – hovering over each Paste item allows users to preview the Paste formatting with their actual content.  The new Paste Options gallery helps users get the right results the first time, making the task of copying and pasting content into a document quicker and easier by eliminating the repetitive process of pasting, undoing and trying again.

Keep Text Only is a useful Paste format that works in many scenarios.  Whenever it is included in the Paste Options gallery, it shows up as the last item in the gallery to make it easy to spot and select.  Similarly, the first option in the gallery is almost always the default Paste option, the format that would have appeared when pasting with CTRL+V in previous versions.

When the user right clicks and hovers over an option in the Paste Options gallery, two things happen in addition to the Live Preview:

-     The rest of the UI "gets out of the way" by becoming transparent.  This effectively increases the size of the visible Live Preview area, helping the user preview the results and select the right Paste option.
-     A tooltip is displayed, showing the label and keyboard accelerator information.  The tooltip is intended to complement the Live Preview in helping the user chose the right option from the gallery, and as importantly, educate him/her during the transitional period of getting used to the new graphical presentation of the functionality.



*Context menu before Paste Live Preview*          *Paste Live Preview with transparency and tooltip*

76.     Microsoft has continued to add features to the Infringing Products that infringe the Corel patents at least as recently as the release of Microsoft Office 2013.

77.     Since incorporating the Live Preview feature, Microsoft has not changed its formatting user interface to move away from the Live Preview feature.

78.     Microsoft now incorporates the Live Preview feature in all of the Infringing Products.

79.     Microsoft enables the Live Preview feature by default in the Infringing Products.

80.     In Word 2010, for example, Live Preview is checked by default in the "General" tab of the "Options" dialog box menu:



81.     The information icon next to the "Enable Live Preview" option in the "Options"

dialog box in Word 2010 describes the Live Preview feature:



82.     On information and belief, Microsoft enables the Live Preview feature by default

because it knows users prefer the feature over substandard prior approaches to implementing

formatting changes.

83.     As Microsoft promotes, "Live Preview helps break the repetitive 'Undo' cycle of

applying formatting to content, deciding against the formatting change, choosing Undo to return

to the original formatting, and then starting the cycle all over again.

**V.     Microsoft's Direct Infringement**

84.     Microsoft's use, sale, offer for sale and/or manufacture of the Infringing Products

in the United States, and/or importation of said Infringing Products into the United States, is

without license or permission from Corel and constitutes infringement of the Unbedacht '309,

'483, and '996 patents.

85.     Microsoft has directly infringed, and continues to infringe, literally or under the

doctrine of equivalents, one or more claims of each Corel patent by acting without authority to

make, have made, use, offer to sell, sell within the United States, and/or import into the United States, the Infringing Products.

86.     Microsoft's direct infringement has caused injury and damage to Corel and will cause additional damage in the future.

**VI.     Microsoft's Indirect Infringement**

87.     Microsoft indirectly infringes the Corel Patents by inducing direct infringement by others under 35 U.S.C. § 271(b) and contributing to direct infringement by others under 35 U.S.C. § 271(c).

88.     Direct infringers whose infringement has been induced or contributed to by Microsoft include customers, original equipment manufacturers ("OEMs"), importers, resellers, and/or end users of the Infringing Products.

89.     On information and belief, Microsoft has intended and continues to intend to induce patent infringement by these direct infringers and has had actual knowledge that the inducing acts would cause infringement or, at the least, has been willfully blind to the fact that its inducing acts would cause infringement.

90.     Microsoft has contributed to direct infringement by others because the infringing features (including "Live Preview") in the Infringing Products have no substantial non-infringing uses, and the infringing features constitute a material part of the invention claimed in the Corel patents.

*Microsoft's Knowledge of the Corel Patents*

91.     Microsoft has knowledge of the Corel patents.

92.     Microsoft had knowledge of the Corel patents prior to the filing of this Complaint.

93.     In or around 2011, representatives for Corel engaged in communications with Microsoft regarding the potential sale of certain Corel patents to Microsoft, including the Unbedacht '309 and '483 patents.

94.     In or around 2014, continuing into 2015, representatives for Corel again engaged in communications with Microsoft regarding the potential sale of certain Corel patents to Microsoft, including the Unbedacht '309, '483, and '996 patents.

95.     Upon information and belief, Microsoft followed Corel's patent portfolio as Corel obtained the Corel patents due to Corel being a primary competitor of Microsoft in the market for productivity applications.

96.     Microsoft has cited to the Unbedacht '309 patent in prosecuting its own patents, for many years:

    (a)     U.S. Patent No. 7,603,632, assigned to Microsoft and applied for on November 1, 2000, issuing on October 13, 2009, cites to the Unbedacht '309 patent.

    (b)     U.S. Patent No. 7,458,031, assigned to Microsoft and applied for on April 16, 2004, issuing on November 25, 2008, cites to the Unbedacht '309 patent.

    (c)     U.S. Patent No. 8,539,447, assigned to Microsoft and applied for on June 4, 2008, issuing on September 17, 2013, cites to the Unbedacht '309 patent.

    (d)     U.S. Patent No. 8,645,863, assigned to Microsoft and applied for on June 26, 2008, titled "Menus with Translucency and Live Preview," cites to the

published patent application number 2004/0139401 that issued as the

Unbedacht '483 patent.

97.     On July 21, 2004, the U.S. Patent and Trademark Office examiner assigned to the

application that ultimately issued as U.S. Patent No. 7,603,632 rejected all pending claims in

view of a combination of three references that included the Unbedacht '309 patent.  The

Unbedacht '309 patent was the only reference cited in that rejection that the examiner had not

previously raised.

98.     Microsoft disclosed the Unbedacht '309 patent to the U.S. Patent and Trademark

Office on July 11, 2005, as one of two references listed on an Information Disclosure Statement

during prosecution of the application that ultimately issued as U.S. Patent No. 7,458,031.

99.     Microsoft disclosed the Unbedacht '309 patent to the U.S. Patent and Trademark

Office on June 4, 2008, as one of three references listed on an Information Disclosure Statement

submitted with the initial patent application that ultimately issued as U.S. Patent No. 8,539,447.

100.    The U.S. Patent and Trademark Office examiner assigned to the application that

ultimately issued as U.S. Patent No. 8,645,863 (titled "Menus with Translucency and Live

Preview") cited published application number 2004/0139401, which ultimately issued as the

Unbedacht '483 patent, in five separate rejections of claims from Microsoft's application.  After

each rejection, Microsoft amended its claims.

101.    Although Microsoft had seen the Unbedacht '309 patent cited by a patent

examiner in 2004, and Microsoft itself had disclosed the Unbedacht '309 patent as potential prior

art in other patent prosecutions in 2005 and 2008, Microsoft did not disclose the Unbedacht '309

or '483 patents or their applications when, in 2010, it filed the application leading to U.S. Patent

No. 8,645,863; Microsoft did file two Information Disclosure Statements at the outset of that prosecution in 2010, but did not list the Unbedacht '309 or '483 patents or their applications among the twenty references that Microsoft did disclose.  Despite Microsoft not disclosing the application leading to the Unbedacht '483 patent during prosecution of its own patent with "Live Preview" in the title, the examiner found and raised it in the first rejection of claims.

102.    On information and belief, based on Microsoft's communications with Corel representatives in 2011, 2014, and 2015; Microsoft's citations to the Unbedacht '309 patent; the U.S. Patent and Trademark Office's citations of the Unbedacht '309 patent and the published application that issued as the Unbedacht '483 patent; and the belief that Microsoft was following the development of Corel's patent portfolio, Microsoft had knowledge of the Unbedacht '309 patent as of 2004, knowledge of the Unbedacht '483 patent as of 2010, and knowledge of the Unbedacht '996 patent as of 2014.

103.    On information and belief, Microsoft reviewed the specification and claims of the Unbedacht '309 patent when that patent issued in 2004; Microsoft further reviewed the specification and claims of the Unbedacht '309 patent when the U.S. Patent and Trademark Office cited that patent in 2004 during prosecution of the application that issued as Microsoft's U.S. Patent No. 7,603,632; Microsoft further reviewed the specification and claims of the Unbedacht '309 patent when Microsoft cited that patent to the U.S. Patent and Trademark office as part of prosecuting the applications that issued as U.S. Patent Nos. 7,458,031 and 8,539,447; and Microsoft further reviewed the specification and claims of the Unbedacht '309 patent in 2011, 2014, and 2015 when Corel engaged in communications with Microsoft regarding the potential sale of certain patents to Microsoft, including the Unbedacht '309 patent.

104.     On information and belief, Microsoft reviewed the specification and claims of the Unbedacht '483 patent when that patent issued in 2010; Microsoft further reviewed the Unbedacht '483 specification and claims when the U.S. Patent and Trademark Office relied upon its published application to reject Microsoft's pending patent claims five times during 2010, 2011, and 2012; and Microsoft further reviewed the specification and claims of the Unbedacht '483 patent in 2011, 2014, and 2015 when Corel engaged in communications with Microsoft regarding the potential sale of certain patents to Microsoft, including the Unbedacht '483 patent.

105.     On information and belief, Microsoft reviewed the specification and claims of the Unbedacht '996 patent when that patent issued in 2014; and Microsoft further reviewed the specification and claims of the Unbedacht '996 patent in 2014 and 2015 when Corel engaged in communications with Microsoft regarding the potential sale of certain patents to Microsoft, including the Unbedacht '996 patent.

106.     In 2015, Microsoft acknowledged during a discussion with Corel's representatives that Microsoft previously had seen the Corel patents and had considered the scope and disclosures of the Corel patents.

107.     Microsoft additionally has knowledge of the Corel patents based on the filing of this Complaint.

### Microsoft's Knowledge of Direct Infringement

108.     Microsoft is a global technology company with deep expertise in productivity applications, including expertise in word processing, graphics editing, formatting options in such applications, and user interface design for facilitating access to such formatting options.

109.     Microsoft is known as a market leader and, indeed, as the dominant player in the market for productivity applications.

110.     Microsoft possessed the technical expertise required to understand the scope of the inventions claimed in the Corel patents.

111.     On information and belief, based on Microsoft's review of the Unbedacht '309 patent's specification and claims in at least 2004, 2011, 2014, and 2015, Microsoft understood that the Unbedacht '309 patent claimed a method that allows a user of a document editing program to preview a formatting or graphic change in real time.

112.     On information and belief, based on Microsoft's review of the Unbedacht '483 patent's specification and claims in at least 2010, 2011, 2012, 2014, and 2015, Microsoft understood that the Unbedacht '483 patent claimed a software apparatus and method that allows a user of a document editing program to preview a formatting change in real time.

113.     On information and belief, based on Microsoft's review of the Unbedacht '996 patent's specification and claims in at least 2014 and 2015, Microsoft understood that the Unbedacht '996 patent claimed a method that allows a user of a document editing program to preview a formatting or graphic change in real time.

114.     On information and belief, Microsoft knows that its Live Preview feature provides a software apparatus and method that allows a user of a document editing program to preview a formatting or graphic change in real time.

115.     Microsoft knows that its Live Preview feature is always present in the Infringing Products.

116.    Microsoft knows that the Live Preview feature is active by default in the Infringing Products.

117.    Microsoft knows that, by 2007, several of its products incorporated the Live Preview feature.

118.    Microsoft knows that several of its products have included the Live Preview feature since 2007 and still do today.

119.    Microsoft knows that its customers make, use, sell, offer to sell, or import in the United States products that incorporate the Infringing Products purchased from Microsoft.

120.    Microsoft knows and has known that its customers, including global manufacturers like Acer, Inc., Asus, Dell Inc., HP, Lenovo, Samsung, and Sony Corp. have sold and currently sell or import in the United States finished products, such as computers, that incorporate Infringing Products.

121.    Microsoft's announced in 2010 that "Office 2010 can also be purchased with the most popular desktops and laptops from leading PC makers including Acer Inc., Asus, Dell Inc., HP, Lenovo, Samsung and Sony Corp. In the next year, more than 100 million PCs will ship with Office 2010 preloaded, which can easily be activated with the purchase of any one of the three versions of Office 2010, including Office Home and Student 2010, Office Home and Business 2010, or Office Professional 2010."

122.    Microsoft's website offers for sale computers made by various third-party manufacturers, and these computers come with Office 365 preloaded (including Infringing Products).

123.     On information and belief, Microsoft has designed the Infringing Products such that, when incorporated into the products of third parties with the default setting in which the Live Preview feature is active, those third-party products infringe one or more claims of the Corel patents when made in, used in, sold in, offered for sale in, or imported into the United States.

124.     Based on its knowledge of the scope of the Unbedacht '309 claims and its knowledge of the Live Preview feature and the products incorporating that feature, on information and belief, Microsoft understood by 2007 that its OEMs, importers, resellers, customers, and/or end users of the Infringing Products directly infringed the Unbedacht '309 claims when those entities used the Infringing Products, or third-party products incorporating the Infringing Products, in the default mode with Live Preview enabled.

125.     Based on its knowledge of the scope of the Unbedacht '483 claims and its knowledge of the Live Preview feature and the products incorporating that feature, on information and belief, Microsoft understood by 2010 that its OEMs, importers, resellers, customers, and/or end users of the Infringing Products directly infringed the Unbedacht '483 claims when those entities used or sold the Infringing Products, or third-party products incorporating the Infringing Products, in the default mode with Live Preview enabled.

126.     Based on its knowledge of the scope of the Unbedacht '996 claims and its knowledge of the Live Preview feature and the products incorporating that feature, on information and belief, Microsoft understood by 2014 that its OEMs, importers, resellers, customers, and/or end users of the Infringing Products directly infringed the Unbedacht '996

claims when those entities used the Infringing Products, or third-party products incorporating the Infringing Products, in the default mode with Live Preview enabled.

127.    As of the date of this Complaint, Microsoft is aware of how its Live Preview feature infringes the Corel patents when used or sold in third-party products.

**_Microsoft's Intent to Cause Direct Infringement_**

128.    On information and belief, Microsoft has designed, marketed, and sold its Infringing Products to third parties with knowledge and the specific intent to cause the third parties to make, use, sell, offer to sell in, and/or import into the United States products incorporating Microsoft's Infringing Products.

129.    On information and belief, Microsoft actively encouraged its customers and end users to directly infringe the Corel patents by encouraging the customers and end users to use the Live Preview feature in the Infringing Products.

130.    Microsoft's "Support" website provides direction for end users on how to use the Live Preview feature in Microsoft Word, Microsoft Excel, Microsoft Outlook, and Microsoft PowerPoint.

131.    Microsoft instructs end users on how to install Infringing Products on Microsoft's "Surface" tablet hardware.

132.    Through its marketing of the Infringing Products, Microsoft specifically intends for its customers, including end users, to directly infringe one or more claims of the Corel patents through use of the Live Preview feature.

133.     Microsoft develops the Infringing Products for third parties and markets the Infringing Products to third parties for inclusion in products that are sold to customers and used in the United States.

134.     Microsoft provides customers and end users with instructions, user guides, and technical specifications on how to use the Live Preview feature.

135.     When Microsoft's customers and end users follow Microsoft's instructions, user guides, and technical specifications and use the Live Preview feature, they directly infringe one or more claims of the Corel patents.

136.     Microsoft knows that when it provides instructions, user guides, and technical specifications on how to use the Live Preview feature, customers and end users follow these instructions, user guides, and other technical specifications, and therefore directly infringe one or more claims of the Corel patents.

137.     In 2010, Microsoft reported that more than 1 billion PCs worldwide have Office software installed.

138.     Microsoft further reports that "considering there are approximately 1.8 billion Internet users worldwide, Microsoft and its channel partners see an incredible opportunity to deliver Office 2010 to existing and new Office customers around the world."

139.     Microsoft actively collaborates with manufactures, such as Dell, to promote the adoption of Infringing Products into laptop computers, desktop computers, and other consumer devices.

140.     Microsoft reported in 2011 that "Dell provides its customers with immediate access to Microsoft's most popular applications and services, taking experiences to the next

level. The latest versions of Internet Explorer, Bing, Microsoft Office and Windows Live Essentials are pre-loaded on Dell PCs for easy Internet access, sharing and creating, right out of the box."

141. In 2015, it is reported that 1.2 billion people use Microsoft Office, including the Infringing Products.

142. Microsoft recently has announced "strategic agreements with global OEMs Samsung and Dell, eight regional OEMs and top original device manufacturer Pegatron to pre-install Microsoft Office and Skype on Android tablets . . . 20 additional global and local OEM partners, including LG, Sony, Haier, Positivo and Wortmann, will make Microsoft productivity applications and services available on their Android tablets," and "[t]hese 31 partners will offer Android tablets pre-installed with Word, Excel, PowerPoint, OneNote, OneDrive and Skype in the near future."

143. Microsoft derives significant revenue by selling its Infringing Products which incorporate the Live Preview feature to third parties who directly infringe the Corel patents in the United States.

144. On information and belief, in 2007, Microsoft had net sales in the United States of at least $16.4 billion for its Office software products.

145. On information and belief, between 2009-2012, Microsoft Office accounted for 20-35% of Microsoft's total revenue.

146. On information and belief, between 2007-2013, Microsoft had 95% market share in the productivity software market.

147.    Microsoft's partnerships, marketing efforts, sales volume, instructions all evidence its intent to induce OEMs, manufacturers, resellers, customers, and end users to infringe one or more claims of the Corel patents by either using the Infringing Products or incorporating the Infringing Products into third party products and selling or importing these products in the United States.

148.    Because Microsoft has marketed its products to customers and/or end users and marketed to and collaborated with manufacturers, OEMs, importers, and resellers, which it knows infringe one or more claims of the Corel patents, Microsoft had the manifest specific intent to cause direct infringement, or has been willfully blind to the direct infringement it is inducing, and is therefore liable for inducing the direct infringement of these third parties.

149.    In sum, Microsoft knew of the Corel patents, incorporated a feature in the Infringing Products nearly identical to the RealTime Preview feature that Corel relied upon to differentiate its own products, gave the feature a name nearly identical to the Corel feature (Microsoft's "Live Preview" versus Corel products' "RealTime Preview"), enabled the Live Preview feature by default, expanded the number of programs using Live Preview, expanded the number of implementations of the Live Preview feature in several programs over time, described in publications how to use the Live Preview feature, offered for sale computer systems with the Infringing Products installed, and encouraged other companies to sell computer systems with the Infringing Products installed.  Microsoft knew of direct infringement by third parties and actively encouraged those third parties with the specific intent to cause the direct infringement.

***Microsoft's Contributory Infringement***

150.    On information and belief, Microsoft has contributed to the direct infringement of third parties, such as OEMs, manufacturers, importers, resellers, customers, and/or end users.

151.    On information and belief, the third parties directly infringe as described in paragraphs 109-128 in this Complaint.

152.    On information and belief, Microsoft knew that the combination for which its Infringing Products were being used was both patented and infringing as described in paragraphs 90-149 in this Complaint.

153.    Microsoft is aware of the Corel patents, that the Microsoft Live Preview feature is always present in the Infringing Products and cannot be used in a substantially non-infringing manner, and, therefore, that Microsoft's customers, manufacturers, OEMs, importers, resellers, and/or end users directly infringe one or more claims of the Corel patents when using the Infringing Products in the manner Microsoft intends and directs the Infringing Products to be used.

154.    The Microsoft Live Preview feature is a material part of the inventions claimed in the Corel patents because the Microsoft Live Preview satisfies all elements of claims in the Corel patents.

155.    The above-described acts of infringement committed by Microsoft have caused injury and damage to Corel and will cause additional damage in the future.

***Microsoft's Willful Infringement***

156.    Microsoft has knowledge of the Corel patents and has willfully, deliberately and intentionally infringed the claims of the Corel patents.

31

157.   As described above, Microsoft had pre-suit knowledge of the Corel patents and of infringement of the Corel patents.

158.   Microsoft therefore had pre-suit knowledge that its actions constituted direct infringement under 35 U.S.C. § 271(a), that its actions induced the direct infringement of others under 35 U.S.C. § 271(b), and that its actions contributed to the direct infringement of others under 35 U.S.C. § 271(c).

159.   Based on Microsoft's knowledge of the Corel patents and its apparent copying of the RealTime Preview feature from Corel's WordPerfect software, Microsoft faced an objectively high likelihood that its actions constituted infringement of the Corel patents.

160.   Microsoft chose to proceed with the actions pleaded in this Complaint despite the knowledge that its actions constituted infringement, or at least presented an objectively high likelihood of constituting infringement, under the statutory provisions cited above.

### FIRST CLAIM FOR RELIEF

### Infringement of U.S. Patent No. 6,731,309

161.   Corel incorporates by reference the allegations set forth in paragraphs 1 through 160 above as if specifically set forth herein.

162.   Microsoft has directly infringed one or more claims of the Unbedacht '309 patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).  The infringement is and was willful, and remains ongoing.

163.   Microsoft has induced infringement of one or more claims of the Unbedacht '309 patent in violation of 35 U.S.C. § 271(b).  The infringement is and was willful, and remains ongoing.

164.     Microsoft has contributed to infringement of one or more claims of the Unbedacht '309 patent in violation of 35 U.S.C. § 271(c).  The infringement is and was willful, and remains ongoing.

165.     As a consequence of Microsoft's infringement of the Unbedacht '309 patent, Corel is entitled to recover damages adequate to compensate for the injuries complained of herein, the precise amount of which shall be determined at trial, but in no event less than a reasonable royalty.

## SECOND CLAIM FOR RELIEF

### Infringement of U.S. Patent No. 7,827,483

166.     Corel incorporates by reference the allegations set forth in paragraphs 1 through 165 above as if specifically set forth herein.

167.     Microsoft has directly infringed one or more claims of the Unbedacht '483 patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).  The infringement is and was willful, and remains ongoing.

168.     Microsoft has induced infringement of one or more claims of the Unbedacht '483 patent in violation of 35 U.S.C. § 271(b).  The infringement is and was willful, and remains ongoing.

169.     Microsoft has contributed to infringement of one or more claims of the Unbedacht '483 patent in violation of 35 U.S.C. § 271(c).  The infringement is and was willful, and remains ongoing.

170.     As a consequence of Microsoft's infringement of the Unbedacht '483 patent, Corel is entitled to recover damages adequate to compensate for the injuries complained of

herein, the precise amount of which shall be determined at trial, but in no event less than a reasonable royalty.

## THIRD CLAIM FOR RELIEF

### Infringement of U.S. Patent No. 8,700,996

171.    Corel incorporates by reference the allegations set forth in paragraphs 1 through 170 above as if specifically set forth herein.

172.    Microsoft has directly infringed one or more claims of the Unbedacht '996 patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).  The infringement is and was willful, and remains ongoing.

173.    Microsoft has induced infringement of one or more claims of the Unbedacht '996 patent in violation of 35 U.S.C. § 271(b).  The infringement is and was willful, and remains ongoing.

174.    Microsoft has contributed to infringement of one or more claims of the Unbedacht '996 patent in violation of 35 U.S.C. § 271(c).  The infringement is and was willful, and remains ongoing.

175.    As a consequence of Microsoft's infringement of the Unbedacht '996 patent, Corel is entitled to recover damages adequate to compensate for the injuries complained of herein, the precise amount of which shall be determined at trial, but in no event less than a reasonable royalty.

## JURY TRIAL DEMANDED

Corel hereby demands a trial by jury on all claims and issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Corel respectfully requests that this Court:

A.      enter judgment that Microsoft has directly infringed one or more claims of one or more of the Corel patents, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a);

B.      enter judgment that Microsoft has induced infringement of one or more claims of one or more of the Corel patents in violation of 35 U.S.C. § 271(b);

C.      enter judgment that Microsoft has contributed to infringement of one or more claims of one or more of the Corel patents in violation of 35 U.S.C. § 271(c);

D.      enter an order, pursuant to 35 U.S.C. § 284, awarding to Corel damages adequate to compensate for Microsoft's infringement of the Corel patents (and, if necessary, related accountings), in an amount to be determined at trial, but not less than a reasonable royalty;

E.      enter an order that such damages be trebled for the willful, deliberate and intentional infringement by Microsoft as alleged herein in accordance with 35 U.S.C. § 284;

F.      enter an order, pursuant to 35 U.S.C. § 285, deeming this to be an "exceptional case" and thereby awarding to Corel its reasonable attorneys' fees, costs, and expenses;

G.      enter an order that Microsoft account for and pay to Corel the damages to which Corel is entitled as a consequence of the infringement;

H.      enter an order for a post-judgment equitable accounting of damages for the period of infringement of the Unbedacht patents following the period of damages established at trial;

I.      enter an order awarding to Corel pre- and post-judgment interest at the maximum rates allowable under the law; and

J.      enter an order awarding to Corel such other and further relief, whether at law or in

equity, that this Court deems just and proper.

DATED: July 27, 2015

Respectfully submitted,

**PARR BROWN GEE & LOVELESS**

 /s/ Chad S. Pehrson

Jonathan O. Hafen (Utah Bar. No. 6096)
Terry E. Welch (Utah Bar. No. 5819)
Stephen J. Hill (Utah Bar. No. 1493)
101 South 200 East, Suite 700
Salt Lake City, UT 84111
Telephone:    801-532-7840
Facsimile:    801-532-7750
jhafen@parrbrown.com
twelch@parrbrown.com
shill@parrbrown.com

**ATTORNEYS FOR PLAINTIFF COREL
SOFTWARE, LLC**

*Of Counsel:*

Aaron R. Fahrenkrog
William H. Manning
John K. Harting
Benjamen C. Linden
**ROBINS KAPLAN LLP**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402–2015
Telephone:    612-349-8500
Facsimile:    612-339-4181
afahrenkrog@robinskaplan.com
wmanning@robinskaplan.com
jharting@robinskaplan.com
blinden@robinskaplan.com

Christine S. Yun Sauer
(*Admitted to MN; Not admitted to CA*)
**ROBINS KAPLAN LLP**
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone:    650-784-4040
Facsimile:    650-784-4041
cyunsauer@robinskaplan.com