James S. Jardine (jjardine@rqn.com / SBN 1647)
Samuel C. Straight (sstraight@rqn.com / SBN 7638)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, UT 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543

Jonathan J. Lamberson (lamberson@fr.com / *Pro Hac Vice*)
Bryan K. Basso (basso@fr.com / *Pro Hac Vice*)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Defendant
MICROSOFT CORPORATION

*Additional counsel listed on signature page*

---

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COREL SOFTWARE, LLC, | Case No. 2:15-cv-00528-JNP-PMW |
| Plaintiff, | **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO LIFT THE STAY AND FOR LEAVE TO AMEND FINAL INFRINGEMENT CONTENTIONS** |
| v. | |
| MICROSOFT CORPORATION, | **ORAL AGRUMENT REQUESTED** |
| Defendant. | Judge Jill N. Parrish |
| | Magistrate Judge Paul M. Warner |

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... iv

II.   FACTUAL BACKGROUND ........................................................................ vi

      A.    The '309 patent ................................................................................. vii

      B.    The '996 Patent ................................................................................ xiii

      C.    The Parties' Settlement Discussions ................................................ xiv

III.  ARGUMENT .................................................................................................1

      A.    The Court Should Not Lift the Stay Because Microsoft Has
            Filed for *Ex Parte* Reexamination of the '309 Patent, Which
            Will Further Simplify the Case ...........................................................1

      B.    The Court Should Deny Corel's Request to Amend its
            Infringement Contentions Under Both Fed. R. Civ. P. 15 and
            Local Patent Rule 3.4 .........................................................................3

            1.    The Court Should Deny Corel's Motion Under Fed. R.
                  Civ. P. 15 ..................................................................................3

            2.    The Court Should Deny Corel's Motion Under Local
                  Patent Rule 3.4 .........................................................................5

                  a.    No Good Cause Exists Under Local Patent Rule
                        3.4 ...................................................................................5

                  b.    Microsoft Is Unduly Prejudiced Under Local
                        Patent Rule 3.4 ...............................................................7

IV.   CONCLUSION ............................................................................................10

## **TABLE OF AUTHORITIES**

### **Cases**

*Akeena Solar Inc. v. Zep Solar Inc.*,
    No. C 09-05040 JSW, 2011 WL 2669453 (N.D. Cal. July 7, 2011) ............................. 2, 3

*Allvoice Devs. US, LLC v. Microsoft Corp.*,
    612 F. App'x 1009 (Fed. Cir. 2015) ................................................................. 7

*DeLorme Publ'g Co. v. BriarTek IP, Inc.*,
    60 F. Supp. 3d 652 (E.D. Va. 2014) ................................................................. xi

*Foman v. Davis*,
    371 U.S. 178 (1962) ................................................................................. 3

*Google, Inc. v. Netlist, Inc.*,
    No. C 08-4144 SBA, 2010 WL 1838693 (N.D. Cal. May 5, 2010) .................................. 6

*Hydro Eng'g, Inc v. Petter Invs., Inc.*,
    No. 2:11-CV-139 TS, 2012 U.S. Dist. LEXIS 97184 (D. Utah July 12,
    2012) ............................................................................................. 9

*In re Katz Interactive Call Processing Patent Litig.*,
    639 F.3d 1303 (Fed. Cir. 2011) ...................................................................... 5

*Nuance Commc'ns, Inc. v. ABBYY Software House*,
    No. C 08-02912 JSW MEJ, 2012 WL 2427160 (N.D. Cal. June 26,
    2012) ............................................................................................. 9

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) ...................................................................... 5

*Parallel Networks, LLC v. Abercrombie & Fitch Co.*,
    704 F.3d 958 (Fed. Cir. 2013) ..................................................................... v, 3

*Pozen Inc. v. Par Pharm., Inc.*,
    2010 U.S. Dist. LEXIS 146631 (E.D. Tex. Jun. 8, 2010) ............................................ 6

*Thorne Research, Inc. v. Atl. Pro-Nutrients, Inc.*,
    No. 2:13-CV-784, 2016 WL 1122863 (D. Utah Mar. 22, 2016) ...................................... 5

*Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*,
    278 F.R.D. 505 (N.D. Cal. 2011) ..................................................................... 3

*United States Ethernet Innovations, LLC v. Acer, Inc.*,
No. C 10-3724 CW, 2013 U.S. Dist. LEXIS 147571 (N.D. Cal. Oct. 11,
2013) ........................................................................................................... 9

*Wave Loch, Inc. v. Am. Wave Machs., Inc.*,
No. 08-CV-928 BAS, 2014 WL 7261552 (S.D. Cal. Oct. 1, 2014) ............................ v, 4

*Whatsapp Inc. v. Intercarrier Communs., LLC*,
No. 13-cv-04272-JST, 2014 U.S. Dist. LEXIS 185643 (N.D. Cal.
Sep. 3, 2014) ........................................................................................... 10

## **Statutes**

35 U.S.C. § 102 ...................................................................................................... xi

35 U.S.C. § 302 ..................................................................................................... xiii, 2

## **Other Authorities**

L.P.R. 2.3 ................................................................................................................ 4

L.P.R. 3.1 ............................................................................................................... 4, 5

L.P.R. 3.4 ................................................................................................................ 5

Peter S. Menell et al., PATENT CASE MANAGEMENT JUDICIAL GUIDE
§ 8.3.1 (3d ed. 2016) ......................................................................................... 5

## I.      INTRODUCTION

When the Court stayed this case, it did so with the hope that the parallel proceedings in the U.S. Patent & Trademark Office ("USPTO") would simplify the issues remaining in the litigation.  That has indeed occurred: the USPTO entered judgment that each and every asserted claim of Corel's U.S. Patent No. 8,700,996 ("the '996 patent") is invalid, and the Court should dismiss the '996 patent from the litigation.

Rather than accepting this outcome, Corel instead asks the Court to allow it to amend its infringement contentions to raise two new claims from the '996 patent.  There are several reasons why Corel's request for leave to amend should be denied.  First, Corel's request is untimely: Corel had Microsoft's final invalidity contentions for the '996 patent and its IPR petition in May of 2016, and it had the USPTO's invalidity decision in December of 2016.  Corel should have recognized long ago that the '996 patent is invalid; it had over 20 months to ask this Court for leave to assert these claims against Microsoft, yet it never did so.  Second, Corel's request is unduly prejudicial.  The parties completed fact discovery, and were engaged in claim construction and summary judgment briefing when this case was stayed.  Adding new claims at this late stage would require new fact discovery, new invalidity and non-infringement contentions, new claim construction briefing, and new summary judgment motions, all of which would unfairly prejudice Microsoft.  Finally, the timing of Corel's request—coming *after* the USPTO invalidated its asserted claims—is procedurally improper.  Corel made a strategic decision at the outset of this case to assert 10 broad claims against Microsoft so that it could increase its chances of obtaining a finding of infringement.  This litigation strategy inherently carried a risk that these broad claims would be found invalid, but Corel was willing to take that

risk.  By waiting until after the USPTO invalidated its claims to make its request, Corel has

engaged in the type of "shifting sands" approach that courts have repeatedly rejected.  *See Wave*

*Loch, Inc. v. Am. Wave Machs., Inc*., No. 08-CV-928 BAS, 2014 WL 7261552 (S.D. Cal. Oct. 1,

2014) (denying leave to amend contentions after USPTO invalidated asserted claims); *Parallel*

*Networks, LLC v. Abercrombie & Fitch Co*., 704 F.3d 958, 971 (Fed. Cir. 2013) ("We agree with

the district court that Parallel is seeking to amend its infringement contentions in order to make

arguments that could have been made before the entry of summary judgment, a tactic that the

district court correctly held to be improper").

With respect to Corel's request to lift the stay, Corel's motion omits a critical fact:

Microsoft has filed for *ex parte* reexamination of U.S. Patent No. 6,731,309 ("the '309 patent"),

that request is currently pending before the USPTO, and the parties will find out within three

months whether Microsoft's petition is granted.  According to USPTO statistics, 92% of *ex parte*

reexamination requests are granted, and 78% of reexaminations result in all claims being either

amended or canceled.  Corel will likely argue that this *ex parte* reexamination request was filed

after it filed its motion, but the only reason Microsoft waited to file was that it was engaged in

settlement discussions with Corel where Microsoft offered not to file its request for

reexamination if Corel would agree to drop the '309 patent.  Rather than continuing with those

discussions, Corel filed this motion without engaging in any meet and confer with Microsoft.

As explained more fully below, Microsoft was forced to file a reexamination request for

the '309 patent because Corel raised a baseless objection in the *inter partes* review ("IPR")

proceedings regarding whether the manuals describing QuarkXPress are prior art.  Microsoft had

no reason to expect that Corel would raise this argument: in the litigation, Corel admitted that

QuarkXPress was prior art, and the manuals are dated 1993, five years before the '309 patent was filed.  When Microsoft asked for leave to submit additional evidence to the USPTO showing that the QuarkXPress manuals were prior art, Corel opposed that request.  Based on that objection, the USPTO declined to consider any additional evidence, and the end result was that the USPTO never reached the merits of Microsoft's IPR petition.  Corel's procedural victory will be short-lived, however: Microsoft's *ex parte* reexamination request for the '309 patent provides the additional evidence that Microsoft was barred from submitting in the IPR.  The outcome of this reexamination, like the IPR on the '996 patent, will simplify the issues.

Corel should have voluntarily dropped the '996 and '309 patents.  These patents are invalid, a fact that Corel has known since at least the time it received Microsoft's invalidity contentions.  Since Corel will not take this step voluntarily, the Court should (1) grant Microsoft's co-pending motion to enter judgment on the '996 patent, and (2) maintain the stay so that the USPTO can invalidate Corel's '309 patent in the pending *ex parte* reexamination proceedings.

## II.    FACTUAL BACKGROUND

Corel brought this action on July 27, 2015, alleging infringement of three United States patents: U.S. Patent No. 8,700,996 ("the '996 patent"), U.S. Patent No. 6,731,309 ("the '309 patent"), and U.S. Patent No. 7,827,483 ("the '483 patent").  [Docket No. 2 (Complaint).] Microsoft asserted multiple affirmative defenses, including both non-infringement and invalidity. [Docket No. 34 (Answer).]  Corel served initial infringement contentions in November of 2015 and final infringement contentions in April of 2016.  Microsoft served initial non-infringement and invalidity contentions in January of 2016, supplemental non-infringement contentions in

February of 2016, supplemental invalidity contentions in April of 2016, and final non-infringement and invalidity contentions in May of 2016.  Fact discovery closed in June of 2016.

At around the close of fact discovery, Microsoft petitioned the United States Patent & Trademark Office ("USPTO") for *inter partes* review ("IPR") of the asserted claims of the patents-in-suit.  On August 23, 2016, the Court ordered a stay of the case pending resolution of the IPRs.  [Docket No. 127.]  The USPTO declined to institute IPR with respect to the '483 patent.  With respect to the '309 patent and '996 patents, as explained below, Corel's motion omits several key facts that are relevant to its motion.

A.   **The '309 patent**

As Corel notes at page viii of its motion, the '309 patent has no overlap with the other two patents asserted in this case.  Rather than dealing with previewing formatting changes, the '309 patent relates to dragging guidelines, margins, and images within a document.  In Corel's prior art WordPerfect 8 software, when a user dragged a margin the user would see a dashed line representing the new margin location and the old margin would stay in the same place on the screen, as shown in the following screenshot:

/ / /

/ / /

/ / /



[Docket No. 108, Ex. 1.]  The '309 patent purports to improve upon this functionality by

updating the guideline or margin as the user performs a drag operation:

> The method itself comprises responding to one of the guidelines or margins being grabbed and relocated from a first location to a second location by inserting code corresponding to the guideline or margin at the second location into the memory medium storing the active document; and removing code corresponding to the guideline or margin at the first location from the memory medium storing the active document.

[Docket No. 100, JA-00012 at 9:60-67.]  The patent candidly acknowledges that, "[t]he method

of the invention consists generally of the same routines as known in the art, but executed in a

different order."  [Docket No. 100, JA-00010 at 6:1-3.]  In the prior art (according to Corel), the

user would drag the guideline or margin, then release the mouse, and only then would the screen

update.  In Corel's patents, the user drags the guideline or margin, and the update occurs prior to

releasing the mouse.

Corel, however, was not the first company to include such "guideline or margin" dragging functionality in its software.  QuarkXPress 3.32 was a software product released by Quark, Inc. on or before December 31, 1996.  [Docket No. 108, Ex. 2.]  QuarkXPress was a "powerful, easy-to-use electronic publishing application" that combined "writing, editing, and typography with color and pictures" and was available for both the Microsoft Windows and Apple Macintosh operating systems.  [*Id.*]  QuarkXPress allowed a user to preview the movement of both guidelines and margins.  Specifically with respect to guidelines, if the user grabbed the handle on a guideline surrounding a text box while holding the Apple command key (⌘), the user could then watch the text move and change as the user dragged the guideline:

> To view text resizing as you drag one of the handles of the text box, hold down the appropriate key combination (⌘ or ⌘-OptionShift) and the mouse button until the text box flashes and the resizing border is displayed, then drag one of the handles.

[Docket No. 108, Ex. 3 at MS_COREL_029904.]  This functionality is shown in the following screenshots:

/ / /

/ / /

/ / /



/ / /

/ / /

/ / /



[Docket No. 108, Ex. 4.]

Microsoft's IPR petition for the '309 patent raised QuarkXPress. [Docket No. 95, Ex. M.] But because the scope of IPR is limited to printed publications (*see* 35 U.S.C. § 311(b)), Microsoft could not give the USPTO a copy of the QuarkXPress software. Instead, Microsoft relied on copies of the manuals for QuarkXPress 3.32, which are themselves printed publications. *See, e.g., DeLorme Publ'g Co. v. BriarTek IP, Inc.*, 60 F. Supp. 3d 652, 662-63 (E.D. Va. 2014) (finding a manual qualified as a prior art printed publication under 35 U.S.C. § 102).

During the litigation, Corel admitted that "it is not aware of any direct evidence showing QuarkXPress 3.32 was not on sale or in public use prior to the conception of the Asserted Patents." [*See* Docket No 108, Ex. 17 (RFA No. 52).]  Thus Microsoft reasonably believed that Corel did not dispute the prior art status of QuarkXPress.  Indeed, the manuals for QuarkXPress have a 1993 copyright date, which is five years before Corel filed for its '309 patent.  However, much to Microsoft's surprise, Corel's response to the IPR petition primarily focused on an alleged lack of proof that the manuals for QuarkXPress were prior art.  [Lamberson Decl.,[1] Ex. 1.]

Given this surprising argument, Microsoft requested leave to submit additional evidence to the USPTO regarding the obvious prior public availability of QuarkXPress.  [*Id*., ¶ 3.]  This additional evidence consisted of a declaration from the Chief Financial Officer of Quark Inc. regarding the public availability of the manuals, as well as other pieces of evidence regarding the availability of the software.  [*Id*.]  Corel objected to Microsoft's request (*Id*.), and the USPTO ultimately denied Microsoft's request for leave, which resulted in it denying Microsoft's IPR petition—not on the merits, but because of the supposed lack of proof regarding the date of public availability of the QuarkXPress manuals.  Specifically, the USPTO stated, "Petitioner [Microsoft] has provided insufficient persuasive evidence that QuarkXPress was disseminated to the public as of any particular date, and does not otherwise explain why this particular manual was 'sufficiently accessible to the public interested in the art' before the critical date." [Lamberson Decl., Ex. 2 at p.11.]

---

[1] "Lamberson Decl." refers to the Declaration of Jonathan J. Lamberson, filed herewith.

Corel's procedural victory will be short lived.  Microsoft has already re-filed a request for *ex parte* reexamination with the USPTO, this time providing the additional evidence that the USPTO felt was lacking from Microsoft's earlier petition.  [Lamberson Decl., Ex. 3.][2] According to the USPTO, "[d]ecision on a request for reexamination submitted under 35 U.S.C. § 302 [i.e., *ex parte*] must be made no later than **3 months from its filing**, and the remainder of the proceeding must proceed with 'special dispatch' within the Office."  *See* https://www.uspto.gov/web/offices/pac/mpep/s2209.html (emphasis added).  Also, according to USPTO statistics, over 92% of *ex parte* reexamination requests are granted.  *See* https://www.uspto.gov/sites/default/files/documents/ex_parte_historical_stats_roll_up.pdf.

On the merits, Corel has no significant defenses regarding the validity of the '309 patent. Its only argument is one of claim construction: that the phrase "guideline" in the '309 patent does not apply to the borders of the text boxes in QuarkXPress.  [*See* Lamberson Decl., Ex. 1 at pp.33-37.]  Yet the manual for QuarkXPress explicitly refers to these lines as "guidelines."  [*See* Docket No. 105 at DA-0086 ("you will use guidelines to place and modify text boxes").]  Also, Corel itself argued that the borders of text boxes were "guidelines" in its infringement contentions in this litigation.  [*See* Docket No. 108, Ex. 10 at p.4 ("the document shown below includes guidelines on the text box").]  This evidence is now before the USPTO, and the USPTO will necessarily resolve this claim construction dispute as part of its invalidity determination.

**B.    The '996 Patent**

Microsoft filed its petition for IPR on the '996 patent on May 23, 2016.  [Docket No. 80, Ex. F.]  That petition raised, among other grounds, invalidity based on Corel Draw 7,

---

[2] Microsoft had to file for *ex parte* reexamination, rather than IPR, because the one-year statutory

WordPerfect Suite 8, an IBM technical disclosure bulletin from 1991, and U.S. Patent

Number 6,185,591 to Baker.  [*Id.*]  All of these prior art references had been previously raised in

this litigation.  [*See* Lamberson Decl., Exs. 4-6.]

      The USPTO granted Microsoft's petition for *inter partes* review on December 1, 2016,

finding that Microsoft had established a reasonable likelihood that it would prevail in showing

that all the claims Corel had asserted – claims 1, 3, 6, 8, 13, 14, 20, 22, 24, and 28 of the '996

patent – were unpatentable.  [Docket No. 141, Ex. 5.]  On February 27, 2017, Corel asked the

USPTO to enter an adverse judgment against it with respect to all of these same claims –

claims 1, 3, 6, 8, 13, 14, 20, 22, 24, and 28 of the '996 patent.  [Docket No. 141, Ex. 14.]  The

USPTO granted Corel's request on February 28, 2017, stating:

> it is hereby
>
> ORDERED that Patent Owner's Request for Adverse Judgment under 37
> C.F.R. § 42.73(b)(2) with respect to claims 1, 3, 6, 8, 13, 14, 20, 22, 24, and 28 of
> U.S. Patent No. 8,700,996 B2 patent is GRANTED; and,
>
> ORDERED that judgment is entered herein against Patent Owner with respect to
> claims 1, 3, 6, 8, 13, 14, 20, 22, 24, and 28 of U.S. Patent No. 8,700,996 B2.

[Docket No. 145, Ex. A.]  Microsoft accordingly has moved for entry of final judgment in this

litigation with respect to the '996 patent.  [Docket No. 145.]

    **C.**    **The Parties' Settlement Discussions**

      On January 9, 2017, counsel for Microsoft contacted counsel for Corel and asked Corel to

consider voluntarily withdrawing the '309 and '996 patents from this litigation.  [Lamberson

---

time limit for filing IPR had passed.

Declaration, ¶ 8.]  Counsel for Microsoft explained that the USPTO was likely to invalidate the '996 patent in the pending IPR proceeding.  [*Id*.]  Counsel further explained that Microsoft was preparing to file an *ex parte* reexamination request for the '309 patent that would remedy the date issue Corel identified in the IPR proceedings.  [*Id*.]  Counsel explained that once Microsoft filed an *ex parte* reexamination request, that request could not be withdrawn or terminated (unlike an IPR proceeding, which can be terminated at the request of the parties).  [*Id*.]  There were also discussions between in-house counsel for Microsoft and Corel on this same subject.  [*Id*.]  Instead of pursuing these discussions further, Corel instead filed its request for an adverse judgment in the '996 IPR, followed a few hours later by this motion.  [*Id*.]  Corel never met and conferred with Microsoft regarding this motion prior to filing it.  [*Id*.]

///

///

///

### III.    ARGUMENT

> #### A.    The Court Should Not Lift the Stay Because Microsoft Has Filed for *Ex Parte* Reexamination of the '309 Patent, Which Will Further Simplify the Case

The Court should decline Corel's invitation to lift the stay.  While the Court's original stay order was premised on the filing of Microsoft's IPR petitions (*see* Docket No. 127), the same reasoning applies to Microsoft's request for *ex parte* reexamination of the '309 patent. Corel was able to avoid the merits of Microsoft's invalidity arguments in the '309 patent IPR proceeding by raising a new (and unfounded) challenge to the date of publication of the QuarkXPress manuals, but Corel cannot avoid the merits forever.  In its *ex parte* reexamination request, Microsoft has given the USPTO additional evidence regarding the public availability of the QuarkXPress manuals.  The Court has already seen a powerful example of the simplification that can result from proceedings in the USPTO: every asserted claim of the '996 patent has been invalidated, and the '996 patent can be removed from this litigation.  There is no reason to believe that the outcome with respect to the '309 patent will be any different; if anything, as discussed above, the '309 patent is even more plainly invalid.

None of the four factors this Court considered in its earlier order has changed in any material respect.  The first factor (whether a stay will simplify issues) weighs in favor of maintaining the stay because Microsoft has filed for *ex parte* reexamination of the '309 patent, which will likely result in invalidation of the '309 patent.  According to USPTO statistics, over 92% of *ex parte* reexamination requests are granted.[3]  Further, 78% of reexaminations result in all claims being either amended or canceled.[4]  Moreover, as explained above, Corel's only

---

[3] *See* https://www.uspto.gov/sites/default/files/documents/ex_parte_historical_stats_roll_up.pdf
[4] *Id.*

substantive defense to invalidity is based on the claim construction that will apply in the USPTO (under the "broadest reasonable construction" standard), which is a purely legal question that the USPTO will necessarily resolve as part of the reexamination process.  Microsoft believes that Corel's claim construction position is objectively baseless, since it is contradicted by Corel's own arguments in this litigation.  Even if the USPTO disagrees, however, the Court may gain useful guidance from the reasoning the USPTO applies when construing the asserted claims.

With respect to the second factor (the stage of the litigation), because the case has been stayed, nothing has changed since the Court issued its stay order and found "this factor weighs in favor of a stay."  [Docket No. 127 at 4.]

With respect to undue prejudice, the Court found that there was none to Corel.  [Docket No. 127 at 4.]  Again, nothing has changed since last August.  Notably, in Corel's opposition to Microsoft's original motion to stay, Corel predicted that a potential stay would run until at least November 2017.  [Docket No. 88 at ix-x.]  It is now only March of 2017, and a decision on the *ex parte* reexamination petition can be expected by June.[5]  If there was no prejudice in staying the case through at least November, there can be no such prejudice now.

A case with similar facts is *Akeena Solar Inc. v. Zep Solar Inc*., No. C 09-05040 JSW, 2011 WL 2669453, at *2 (N.D. Cal. July 7, 2011).  In *Akeena*, the defendant filed for *inter partes* reexamination of ten claims in the asserted patent and the case was stayed pending results of the reexamination.  *Id.* at *1.  The USPTO ultimately canceled those claims.  *Id.*  After the plaintiff moved to lift the stay, the defendant filed for reexamination of additional claims.  *Id.*

---

[5] According to the USPTO, "[d]ecision on a request for reexamination submitted under 35 U.S.C. § 302 [*i.e.*, ex parte] must be made no later than 3 months from its filing, and the

The court denied the plaintiff's motion to lift the stay because the second reexamination could simplify the issues. *Id.* at *2. Here, the asserted claims of the '996 patent have already been invalidated. Further simplification is likely through Microsoft's *ex parte* reexamination of the '309 patent. For all of the reasons that the Court found when it entered its stay in August of 2016, it should decline to lift the stay now while there are still proceedings in the USPTO.

**B.     The Court Should Deny Corel's Request to Amend its Infringement Contentions Under Both Fed. R. Civ. P. 15 and Local Patent Rule 3.4**

**1.     The Court Should Deny Corel's Motion Under Fed. R. Civ. P. 15**

Amendments to infringement contentions in patent cases are governed by both Fed. R. Civ. P. 15 and the local patent rules. *See Trans Video Elecs., Ltd. v. Sony Elecs., Inc*., 278 F.R.D. 505, 507 (N.D. Cal. 2011), *aff'd*, 475 F. App'x 334 (Fed. Cir. 2012). Under Rule 15, leave should not be freely given when there is undue delay, bad faith, undue prejudice to the opposing party, or futility of amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, Corel is using the USPTO's decision on the '996 patent as an excuse for raising new arguments that Corel could have made at the outset of this litigation, but chose not to make for strategic reasons. Corel strategically chose to assert the broad independent claims of the '996 patent because asserting narrower claims would risk a finding of non-infringement. But Corel's litigation strategy inherently risked a finding of invalidity. Now, only after that strategy has backfired, does Corel seek to change course. Corel's shifting-sands tactic is "improper." *See Parallel Networks,* 704 F.3d at 971.

---

remainder of the proceeding must proceed with 'special dispatch' within the Office." *See* https://www.uspto.gov/web/offices/pac/mpep/s2209.html.

In a case with nearly identical facts, the district court found bad faith because "the movant appear[ed] to be raising a new claim in anticipation of an adverse ruling."  *See Wave Loch,* 2014 WL 7261552, at *2.  In *Wave Loch,* the case was stayed because defendant challenged plaintiffs' asserted claims via reexamination at the USPTO.  *Id.* at *1.  The USPTO canceled all of plaintiffs' asserted claims.  *Id.* Since there were no pending proceedings at the USPTO, defendant moved unopposed to lift the stay, and promptly moved for entry of judgment on the pleadings.  *Id.*  After having all of its asserted claims canceled by the USPTO, plaintiffs moved to amend their infringement contentions by asserting new claims that were not subject to reexamination.  *Id.*  The court denied leave to amend because plaintiffs wanted a "second bite of the apple," which was sought in bad faith to avoid an impending adverse ruling.  *Id.* at *3.

Corel's attempt to add new claims to its infringement contentions after cancellation of its asserted claims is the same strategy employed by plaintiffs in *Wave Loch*.  Corel emphasizes the similarity of claims 5 and 18 to other asserted claims – plaintiffs in *Wave Loch* made the same argument.  *Id.*  The court in *Wave Loch* responded to this argument by noting that it "begs the question" of why plaintiffs did not assert their proposed new claims at the outset.  *Id.*  The main difference between the facts in *Wave Loch* and this case is that here Corel has taken the additional step of blaming its failure to originally assert claims 5 and 18 on the local patent rules, which limit the number of claims that can be asserted without leave.  *See* L.P.R. 2.3 & 3.1.  But Corel never sought leave to assert more claims.  Initial infringement contentions are limited to 10 asserted claims only "without leave of court," and Corel never sought such leave.  L.P.R. 2.3.  Similarly, final infringement contentions are limited to 8 asserted claims only "without an order of the court upon a showing of good cause and absence of unfair prejudice to opposing parties."

L.P.R. 3.1.  Corel could have moved for leave to assert claims 5 and 18, but it chose not to do so because of its tactical decision to assert its broadest claims to improve its chances of showing infringement.  Since Corel was free to seek leave at any point earlier in this case but failed to do so prior to its claims being invalidated, the Court should find this request is improper and should deny it.  *See* Peter S. Menell et al., PATENT CASE MANAGEMENT JUDICIAL GUIDE § 8.3.1 (3d ed. 2016); *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1313 (Fed. Cir. 2011).

### 2.     The Court Should Deny Corel's Motion Under Local Patent Rule 3.4

This Court has broad discretion in enforcing its local patent rules.  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366-67 (Fed. Cir. 2006).  Under the local patent rules, amendment of final infringement contentions is only permitted "upon a showing of good cause and absence of unfair prejudice to opposing parties…."  L.P.R. 3.4.  Prompt amendment is required because accused infringers must be allowed to know their accusers' theory of liability in order to properly respond."  *O2 Micro Int'l Ltd.*, 467 F.3d at 1365.  "If the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless…."  *Id.* at 1366; *see also Thorne Research, Inc. v. Atl. Pro-Nutrients, Inc.*, No. 2:13-CV-784, 2016 WL 1122863, at *4 (D. Utah Mar. 22, 2016).

### a.     No Good Cause Exists Under Local Patent Rule 3.4

"[G]ood cause requires a showing of diligence," and Corel bears the burden of showing diligence.  *See O2 Micro Int'l Ltd.*, 467 F.3d at 1366 (internal quotations omitted).  Leave to amend infringement contentions is only appropriate when "***new information*** comes to light in the course of discovery."  *Id.* at 1365–66 (emphasis added).  "The critical issue is not when

[patentee] discovered this information, but rather, whether they **could have discovered it earlier** had it acted with the requisite diligence." *Google, Inc. v. Netlist, Inc.*, No. C 08-4144 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010) (emphasis added).

Here, Corel argues the USPTO's invalidity decision in December of 2016 was "new information," but in fact that decision merely confirmed information that was in Corel's possession for months. *See Pozen Inc. v. Par Pharm., Inc.*, 2010 U.S. Dist. LEXIS 146631, at *21-25 (E.D. Tex. Jun. 8, 2010) (finding waiting for confirmation of invalidity theories was not "diligence"). Corel knew as early as November of 2015 which claims it wanted to assert, and which it did not. [*See* Docket No. 108, Ex. 10 (Corel Preliminary Infringement Contentions).] Corel knew as early as January 2016 that Microsoft had challenged the validity of all asserted claims of the '996 patent, but not unasserted claims, and by May of 2016, Corel had invalidity contentions that raised all of the same prior art at issue in the IPR: Corel Draw 7, WordPerfect 8, the IBM Technical Disclosure Bulletin, and the Baker patent. [Lamberson Decl., Exs. 4-6.][6] By May of 2016, Corel also had Microsoft's petition for IPR on the asserted claims of the '996 patent. [Docket No. 80, Ex. F.] Corel knew that only the asserted claims were at issue in the IPR, and it knew that there was a substantial likelihood that those claims would be invalidated by the USPTO, yet through all of this it never sought leave to amend its contentions.

Corel also references the USPTO's February 2017 decision denying Corel's request for reconsideration, but Corel does not explain why it sought reconsideration or what the USPTO

---

[6] Notably, Corel Draw and WordPerfect are Corel's own software products, so the features those products included have been known to Corel for decades. Also, the IBM Technical Disclosure Bulletin and the Baker patent were raised during prosecution of Corel's patent, so Corel was aware of those as well even prior to this litigation. [*See* Docket No. 100, JA-00034 (citing IBM Technical Disclosure); JA-00035 (citing Baker).]

decided.  In fact, that motion had nothing to do with the merits of Microsoft's petition, but instead raised a technicality regarding only two asserted claims.  [*See* Docket No. 141, Ex. 11.]  The USPTO rejected Corel's request.  [Docket No. 141, Ex. 12.]  Again, by waiting for the USPTO to invalidate its claims, Corel was not pursuing or waiting for "new information."  It was simply waiting on confirmation of what it should have known at the outset of the case and certainly by the time it had Microsoft's invalidity contentions: that its claims are invalid.

Corel is represented by experienced patent counsel.  Corel chose not to assert claims 5 or 18 through twenty months of litigation.  These claims were not overlooked or misplaced.  This is not a case where some new fact or evidence was discovered, it is a case where a party lost and regrets the claims it brought.  Corel points to no case that has granted leave to amend under such circumstances, and its motion should be denied.

### b.    Microsoft Is Unduly Prejudiced Under Local Patent Rule 3.4

If this Court finds that Corel lacked diligence in seeking amendment, it need not consider the issue of prejudice.  *See, e.g., Allvoice Devs. US, LLC v. Microsoft Corp.,* 612 F. App'x 1009, 1016 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 697 (2015).  Nevertheless, Microsoft would be unduly prejudiced by Corel's untimely proposed amendment.

Corel's initial infringement contentions for the '996 patent were served in November of 2015, and fact discovery closed in June of 2016.  Thus from start to finish, everything the parties did in this case—all depositions, all discovery requests, and all prior art investigations—were focused on the asserted claims.  Contrary to Corel's arguments, the parties will need to redo significant work if these new claims are asserted now.  Most immediately, Microsoft will need to supplement its non-infringement and invalidity contentions for the '996 patent.  Microsoft raised

ten prior art references against the '996 patent, and each reference will need to be re-analyzed and have its invalidity claim charts updated to address the new proposed claims.  Microsoft may also need to revisit prior art that it withdrew earlier in the case to see whether it maps better against these new claims.

Microsoft also answered discovery requests that will need to be amended.  For example, Corel requested that Microsoft identify and describe non-infringing alternatives with respect to the '996 patent.  Microsoft may need to identify new alternatives in light of the new asserted claims, which have a different scope.  Also, Microsoft will need to serve new discovery regarding these two new claims.  For example, Microsoft is entitled to understand why Corel contends these claims are valid, and what Corel contends it is entitled to for damages for these new claims.  Microsoft will need to explore when Corel contends it conceived of this aspect of the '996 patent, and whether Corel contends its own products embody these claims.  Corel will have to identify any alleged secondary considerations of non-obviousness that purportedly apply to these new claims, and Microsoft will have to analyze that evidence.

These new claims would also require additional briefing on claim construction.  The parties previously briefed ten different claim construction issues (Docket No. 105), all of which are still at issue.  Additionally, the Court will need to determine what the "predetermined amount of time" limitation means in claims 5 and 18, and whether that limitation is definite.

Finally, Microsoft would also need to file at least two and potentially three new motions for summary judgment.  When this case was stayed, Microsoft had already filed a motion for non-infringement with respect to the asserted claims of the '996 patent.  Microsoft would need to withdraw and then re-file that motion with respect to claims 5 and 18.  It would also need to file

8

a new motion for invalidity with respect to those claims.  Corel has now admitted that virtually all of the limitations of the '996 patent are invalid, and claims 5 and 18 add nothing inventive, merely stating that the hovering must occur "for a predetermined period of time."  Corel does not claim to have invented hovering a mouse for a predetermined period of time.  Finally, if Corel does not voluntarily drop its willful infringement allegations with respect to the '996 patent, Microsoft would need to move on those as well since it is unclear how Microsoft could have "willfully" infringed claims that were never previously asserted against it.

The cases Corel relies on to support its argument for lack of undue prejudice are distinguishable.  For example, the plaintiff in *Hydro Engineering* sought amendment of its complaint under Fed. R. Civ. P. 15, not amendment of contentions under the local patent rules. *Hydro Eng'g, Inc v. Petter Invs., Inc.*, No. 2:11-CV-139 TS, 2012 U.S. Dist. LEXIS 97184, at *4 (D. Utah July 12, 2012).  Rule 15 generally allows for liberal amendment, while local patent rules do not.  *See Nuance Commc'ns, Inc. v. ABBYY Software House*, No. C 08-02912 JSW MEJ, 2012 WL 2427160, at *1 (N.D. Cal. June 26, 2012).  And the only prejudice in *Hydro Engineering* was from additional discovery.  *Hydro Eng'g, Inc.,* 2012 U.S. Dist. LEXIS 97184, at *8.  Here, Microsoft will need to engage in additional claim construction, invalidity and non-infringement contentions, and summary judgment briefing.  Corel also cites to *U.S. Ethernet Innovations,* where the plaintiff was allowed to amend its infringement contentions based on new facts found during discovery.  *United States Ethernet Innovations, LLC v. Acer, Inc*., No. C 10-3724 CW, 2013 U.S. Dist. LEXIS 147571, at *20 (N.D. Cal. Oct. 11, 2013).  Unlike the plaintiff in that case, Corel has not discovered any "new" facts to justify amendment.

Corel also relies on *Whatsapp* to support its contention that Microsoft's invalidity and non-infringement theories should not change by the addition of a dependent claim.  In *Whatsapp*, the independent claim described two databases, and the proposed new dependent claim added that the two databases were in a "common database."  *Whatsapp Inc. v. Intercarrier Communs., LLC*, No. 13-cv-04272-JST, 2014 U.S. Dist. LEXIS 185643, at *13 (N.D. Cal. Sep. 3, 2014). Prior art had already been submitted showing the two databases in a common database.  *Id.* at n. 4.  Here, the proposed dependent claims recite a new limitation, rather than simply combining previous limitations.  Further, the court in *Whatsapp* based its decision partially on its finding that the patentee was not seeking amendment to "respond to a substantive ruling in a manner that suggests gamesmanship."  *Id.* at 13.  Here, that is exactly what Corel is doing.

Finally, Corel argues that the Court should allow amendment under Local Patent Rule 1.1, which allows the court to modify obligations and deadlines if it advances the "just, speedy, and inexpensive determination of the action."  [Mot. at 7.]  Granting Corel leave to amend would not be just because Corel only acted *after* all the asserted claims were invalidated; it would not be speedy because it brings the '996 patent back into dispute when instead judgment should be entered dismissing it; and it would not be inexpensive because the parties would need to conduct additional litigation on that patent.

## IV.    CONCLUSION

Microsoft respectfully requests that this Court enter final judgment dismissing the '996 patent (*see* Docket No. 145), that it maintain the stay pending Microsoft's request for *ex parte* reexamination with respect to the '309 patent, and that it deny Corel's motion to amend its contentions either as moot or on the merits.

Dated:  March 16, 2017                    FISH & RICHARDSON P.C.


                                          By:  */s/ Jonathan J. Lamberson*
                                               Jonathan J. Lamberson

                                          Attorneys for Defendant
                                          MICROSOFT CORPORATION


*Additional Counsel:*

Frank E. Scherkenbach (scherkenbach@fr.com / *Pro Hac Vice*)
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02110
Telephone: (617) 542-5070
Facsimile: (617) 542-5071

Karolina Jesien (jesien@fr.com / *Pro Hac Vice*)
FISH & RICHARDSON P.C.
601 Lexington Avenue, 52nd Floor
New York, NY 10022
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Attorneys for Defendant
MICROSOFT CORP.


51047711.doc