IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| COREL SOFTWARE, LLC,<br><br>                               Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>                               Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO AMEND FINAL INFRINGEMENT CONTENTIONS**<br><br>Case No. 2:15-CV-00528-JNP-PMW<br><br>Judge Jill N. Parrish |

Before the court is Corel Software, LLC's motion to amend its Final Infringement Contentions. [Docket 159.] The court GRANTS the motion.

## BACKGROUND

Corel sued Microsoft Corporation, alleging that it infringed three patents: the '309 patent, the '483 patent, and the '996 patent. In November 2015, Corel served its Initial Infringement Contentions. Pursuant to Rule 2.3 of this court's Local Patent Rules (LPR), Corel asserted ten initial claims for the '996 patent. In April 2016, Corel asserted eight claims in its Final Infringement Contentions for the '996 patent. *See* LPR 3.1 (requiring a plaintiff to limit its Final Infringement Contentions to eight claims per patent unless the court authorizes additional claims).

In August 2016, Judge Warner stayed the litigation pending the outcome of Microsoft's petition for *inter partes* review (IPR) before the United States Patent and Trademark Office (PTO). On December 1, 2016, a panel of three administrative patent judges denied Microsoft's request to institute IPR of the '483 patent. The panel concluded that the prior art identified by Microsoft did not disclose the limitation of claim 1, which requires "identifying a font by hovering of the cursor

for a predetermined period of time over the font displayed in a menu or tool bar option of the document display window." The panel reasoned that the prior art did not disclose or suggest "applying a 'predetermined period of time' in the context of 'hovering.'" The panel did not address whether pausing while hovering would have been obvious to a person of ordinary skill because Microsoft did not adequately brief this issue.

On the same day that the panel denied IPR of the '483 patent, it granted IPR for claims in the '996 patent. Corel moved for reconsideration of this decision. On February 22, 2017, the panel denied Corel's motion. On February 27, 2017, Corel canceled the '996 patent claims that were still at issue before the panel in an attempt to prevent further delay of this litigation. On February 28, 2017, the panel dismissed IPR of the '996 patent. On the same day, Corel moved this court to lift the litigation stay and to substitute two new claims from the '996 patent to replace the claims that it had canceled. This court denied Corel's motion to lift the stay.

On June 6, 2018, after the PTO panel had resolved all pending issues, Judge Warner lifted the stay. On June 8, 2018, Corel renewed its motion to amend its final infringement contentions for the '996 patent. Corel requests that this court grant leave to substitute two new claims in place of the claims that it had previously asserted in its Initial and Final Infringement Contentions.

## ANALYSIS

This court has adopted a set of Local Patent Rules to "provide a standard structure for patent cases that will permit greater predictability and planning for the court and litigants." LPR Preamble. Under these rules, the plaintiff in a patent case must serve a set of "Initial Infringement Contentions" LPR 2.3. "Without leave of court, [a plaintiff] must limit the allegedly infringed claims to ten (10) per asserted patent." *Id.* The plaintiff may amend these initial contentions if "during discovery a party claiming patent infringement discovers an Accused Instrumentality [i.e.,

an "accused apparatus, product, device, process, method, act or other instrumentality"] that was not previously disclosed or known." LPR 2.1 & 2.3.

After the defendant serves its Initial Non-Infringement, Unenforceability and Invalidity Contentions, the plaintiff must then serve its Final Infringement Contentions, which "may rely on no more than eight (8) asserted claims, from the set of previously-identified asserted claims, per asserted patent without an order of the court upon a showing of good cause and absence of unfair prejudice to opposing parties." LPR 2.4 & 3.1. "A party may amend its Final Infringement Contentions . . . only by order of the court upon a showing of good cause and absence of unfair prejudice to opposing parties, made no later than fourteen (14) days of the discovery of the basis for amendment. An example of a circumstance that may support a finding of good cause, absent undue prejudice to the non-moving party, includes a claim construction by the court different from that proposed by the party seeking amendment." LPR 3.4.

Corel argues that this court should grant leave to amend its Final Infringement Contentions for the '996 patent. It wishes to abandon the eight claims that it previously asserted and substitute two new claims. Corel asserts generally that the discovery that triggered the need for the amendment was the "new information created at the PTO." At some points in its briefing, Corel implies that the triggering event was the PTO panel's February 22, 2017 denial of its petition for rehearing of the panel's decision to grant IPR for the '996 patent claims. At other points, Corel suggests that the reasoning of the panel's December 1, 2016 decision denying IPR for the '483 patent supplied the new information that justifies amendment of the Final Infringement Contentions. Taken together, it appears that the discoveries that Corel relies upon are: (1) the PTO panel's expressions of skepticism that the asserted claims for the '996 patent were patentable and (2) the panel's reasoning that claim 1 of the '483 patent may be patentable because the identifying

3

limitation of hovering for a predetermined period of time was not disclosed in the prior art identified by Microsoft. These discoveries obviously led Corel to believe that the asserted claims for the '996 patent were in danger of being invalidated and that two unasserted claims from the '996 patent, which contained "hovering for a predetermined period of time" claim language, were more likely to survive an invalidation challenge.

Given that the litigation was stayed when Corel made these discoveries, the 14-day deadline to move for amendment of its Final Infringement Contentions was tolled. Thus, the relevant questions before the court are whether Corel has made an adequate showing of good cause to permit amendment and whether Microsoft would be unduly prejudiced.

**I.     GOOD CAUSE**

The Local Patent Rules provide little direct guidance on what constitutes good cause to amend the Final Infringement Contentions. The court therefore looks to related provisions of the Local Patent Rules to determine what may constitute good cause.

The most direct example of good cause is found within LPR 3.4 itself. The rule states that "a claim construction by the court different from that proposed by the party seeking amendment" is an instance where good cause may be found. Thus, under certain circumstances an adverse litigation development can satisfy the good cause requirement. Another example of good cause can be inferred from LPR 2.3, which permits amendment of a plaintiff's Initial Infringement Contentions if "during discovery a party claiming patent infringement discovers an Accused Instrumentality that was not previously disclosed or known." In other words, the discovery of new facts, including new potentially infringing instrumentalities or previously unknown examples of prior art, may also be the basis for good cause to amend.

In this case, the rulings issued by the PTO panel are best categorized as a litigation development. The only new information that Corel received was the panel's favorable analysis of the patentability of one of the claims asserted from the '483 patent and the panel's unfavorable analysis of the patentability of the claims asserted from the '996 patent. Microsoft argues that these types of litigation developments should not give rise to good cause to amend because Corel had the ability to analyze issues of patentability for itself. Microsoft contends that an adverse ruling based upon known information does not justify amendment. The problem with Microsoft's argument, however, is that the Local Patent Rules specifically authorize amendment in response to an adverse claim construction by the court. An adverse claim construction not only is a litigation development based upon a court's interpretation of known facts, it occurs at a later stage in the litigation. *See* LPR 3.1–3.2 (describing the process for asserting Final Infringement Contentions and Final Non-infringement Contentions); LPR 4.1 (explaining that 14 days after service of the Final Contentions, the claim construction proceedings begin). It would be incongruous to deny amendment now, at the final contentions stage of the litigation, only to grant amendment later based upon a development in the claim construction stage of the litigation. The court, therefore, finds there is good cause to amend.

## II. UNDUE PREJUDICE

Microsoft argues that it will be unduly prejudiced if Corel is permitted to amend its Final Infringement Contentions because it will be required to expend additional time and expense to defend against the new claims. But it is usually true that any amendment of the Final Contentions would lead to additional work and expense on the part of the non-amending party. Thus, the inconvenience and expense required by additional discovery and briefing of the new issues does not generally rise to the level of *undue* prejudice. *See Hydro Eng'g, Inc. v. Petter Investments, Inc.*,

No. 2:11-cv-139-TS, 2012 WL 2872628, at *3 (D. Utah July 12, 2012) (analyzing undue prejudice in the context of a motion to amend a complaint); *Cuffy v. Getty Ref. & Mktg. Co.*, 648 F. Supp. 802, 806 (D. Del. 1986) ("Prejudice does not mean inconvenience to a party."). Instead, "an amendment may be prejudicial if its timing prevents the defendant from pursuing a potentially promising line of defense." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1209 (10th Cir. 2006); *accord Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 509 n.2 (N.D. Cal. 2011), *aff'd*, 475 F. App'x 334 (Fed. Cir. 2012) ("Generally, the issue is not whether the defendant would be required to engage in additional work in response to newly amended claims. The question is what incremental prejudice results from the *delay* in asserting those claims (*e.g.,* in ability to complete discovery because of approaching trial date).").

In this case, Microsoft's ability to defend against the proposed new claims will not be hampered. Although it might have been more convenient to the parties if Microsoft had been given notice that it needed to challenge the patentability of the proposed new claims, it will have ample opportunity to make these arguments before this court. Under the new scheduling order adopted by the court, moreover, Microsoft will have an opportunity to conduct additional discovery regarding the new claims and to amend its unenforceability, invalidity, and non-infringement contentions. Therefore, any prejudice Microsoft will suffer by having to defend against the proposed new claims does not rise to the level of undue prejudice.

## CONCLUSION

Because there is good cause to amend and Microsoft will not be unduly prejudiced, the court GRANTS Corel's motion to amend its Final Infringement Contentions. [Docket 159.] Pursuant to the amended scheduling order, [Docket 170], Corel shall have seven days from the date of this order to serve its amended Final Infringement Contentions.

DATED November 5, 2018.

BY THE COURT:

_____
JILL N. PARRISH
United States District Judge