Jake M. Holdreith (*pro hac vice*)
jholdreith@robinskaplan.com
Aaron R. Fahrenkrog (*pro hac vice*)
afahrenkrog@robinskaplan.com
Logan J. Drew (*pro hac vice*)
ldrew@robinskaplan.com
Emily J. Tremblay (*pro hac vice*)
etremblay@robinskaplan.com
John K. Harting (*pro hac vice*)
jharting@robinskaplan.com
Benjamen C. Linden (*pro hac vice*)
blinden@robinskaplan.com
Samuel J. LaRoque (*pro hac vice*)
slaroque@robinskaplan.com
William R. Jones (*pro hac vice*)
wjones@robinskaplan.com
ROBINS KAPLAN LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402–2015
Telephone: 612-349-8500
Facsimile: 612-339-4181

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: 310-203-7096

Jonathan O. Hafen (Utah Bar No. 6096)
jhafen@parrbrown.com
Terry E. Welch (Utah Bar No. 5819)
twelch@parrbrown.com
Kade N. Olsen (Utah Bar No. 17775)
kolsen@parrbrown.com
PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, UT 84111
Telephone: 801-532-7840

Attorneys for Plaintiff Corel Software, LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| COREL SOFTWARE, LLC,<br><br>     Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>     Defendant. | Case No. 2:15-cv-00528-JNP-DBP<br><br>**COREL'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF DAN R. OLSEN PURSUANT TO FED. R. EVID. 702**<br><br>ORAL ARGUMENT REQUESTED<br><br>District Judge Jill N. Parrish<br>Chief Magistrate Judge Dustin B. Pead |

## TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 1

    A. Microsoft's opposition confirms that Dr. Olsen's testimony is exactly the kind of claim construction testimony that courts should exclude. ........................... 1

    B. Dr. Olsen's doctrine of equivalents opinions are inconsistent with this Court's prior claim construction and summary judgment order and directed towards improper opinions of prosecution history estoppel. ..................... 4

    C. Dr. Olsen's testimony comparing Corel's commercial embodiment of the invention to Microsoft's accused products should be excluded. ............................ 8

    D. Dr. Olsen's reliance on unproduced debug software should be excluded. ............. 9

III. CONCLUSION .................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*,
   98 F.3d 1563 (Fed. Cir. 1996)......................................................................................8

*AquaTex Indus., Inc. v. Techniche Sols.*,
   479 F.3d 1320 (Fed. Cir. 2007)..............................................................................2, 7, 8

*ContentGuard Holdings, Inc. v. Amazon.com, Inc.*,
   No. 2:13-CV-1112-JRG, 2015 WL 6886957
   (E.D. Tex. Nov. 7, 2015) (unpublished) ...................................................................10

*Cordis Corp. v. Bos. Sci. Corp.*,
   561 F.3d 1319 (Fed. Cir. 2009)...............................................................................1, 6

*DNA Genotek Inc. v. Spectrum Sols. L.L.C.*,
   671 F. Supp. 3d 1105 (S.D. Cal. 2023).......................................................................1

*Ekchian v. Home Depot, Inc.*,
   104 F.3d 1299 (Fed. Cir. 1997)....................................................................................8

*Ferring Pharms. v. Par Pharm.*,
   No. 1:15-cv-00173-RGA, 2016 U.S. Dist. LEXIS 149434
   (D. Del. Oct. 28, 2016) (unpublished) .....................................................................3, 4

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
   344 F.3d 1359 (Fed.Cir.2003)......................................................................................6

*Gentry Gallery, Inc. v. Berkline Corp.*,
   134 F.3d 1473 (Fed. Cir. 1998)....................................................................................8

*GPNE Corp. v. Apple Inc.*,
   108 F.Supp.3d 839 (N.D. Cal. 2015) ..........................................................................4

*Huawei Techs., Co., Ltd v. Samsung Elecs. Co, Ltd.*,
   340 F.Supp.3d 934 (N.D. Cal. 2018) .......................................................................2, 4

*Kilopass Tech. Inc. v. Sidense Corp.*,
   No. C 10-02066 SI, 2014 U.S. Dist. LEXIS 112321
   (N.D. Cal. Aug. 12, 2014) (unpublished) ..................................................................9

*Lovelett v. Peavey Elecs. Corp.*,
   No. 95 Civ. 9657 (MBM), 1996 U.S. Dist. LEXIS 15210
   (S.D.N.Y. Oct. 15, 1996) (unpublished) ....................................................................9

*Mass. Inst. of Tech. v. Shire Pharm., Inc.*,
   839 F.3d 1111 (Fed. Cir. 2016)..................................................................................4

*Maxwell v. J. Baker, Inc.*,
   86 F.3d 1098 (Fed. Cir. 1996)....................................................................................8

*Tanabe Seiyaku Co. v. U.S. Int'l Trade Comm'n*,
   109 F.3d 726 (Fed. Cir. 1997)....................................................................................8

*Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*,
   988 F.2d 1165 (Fed. Cir. 1993)..................................................................................8

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*,
   141 F.3d 1084 (Fed. Cir. 1998).............................................................................7, 8

*Viva Healthcare Packaging USA Inc. v. CTL Packaging USA Inc.*,
   197 F. Supp. 3d 837 (W.D.N.C. 2016) .....................................................................4

*Wahpeton Canvas Co. v. Frontier, Inc.*,
   870 F.2d 1546 (Fed. Cir. 2007)..............................................................................6, 7

*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*,
   170 F.3d 985 (10th Cir. 1999) ................................................................................10

*Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*,
   19 F.3d 1418 (Fed. Cir. 1994)....................................................................................6

**Rules**

Fed. R. Civ. P. 37................................................................................................................10

I.   INTRODUCTION

Microsoft's opposition confirms that Dr. Olsen crosses the line into legal issues such as claim construction and prosecution history disclaimer/estoppel. For example, Microsoft leaves no doubt that Dr. Olsen uses the prosecution history to argue the inventors allegedly excluded the accused products from the scope of the claims: "Dr. Olsen discusses the file history to show how the inventors *differentiated their patent system* from systems like the accused products[.]" Dkt. 398 at 3. This is precisely the type of claim construction expert testimony the Federal Circuit has warned of. *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009).

Microsoft also argues that Dr. Olsen may testify to the prosecution history because different rules apply for a doctrine of equivalents analysis. But Dr. Olsen's testimony conflicts with this Court's prior claim construction and summary judgment order. Microsoft cites no case that permits an expert to argue prosecution history to a jury under the guise of an equivalency analysis, particularly *after* a prior finding of no disclaimer/estoppel.

These opinions as well Dr. Olsen's non-infringement opinions based on improper comparison to Corel's commercial embodiment of the invention and reliance on unproduced software should be excluded.

II.   ARGUMENT

   A.   **Microsoft's opposition confirms that Dr. Olsen's testimony is exactly the kind of claim construction testimony that courts should exclude.**

Dr. Olsen's opinions at, for example, paragraphs 54, 56, 59, 64, 204 and 213 of his rebuttal report should be excluded because they amount to improper claim construction arguments of the terms "font command code", "memory medium storing the active document" and "updating the display." Dkt. 379, Ex. 1; *see DNA Genotek Inc. v. Spectrum Sols. L.L.C.*, 671 F. Supp. 3d 1105,

- 1 -

1119 n.2 (S.D. Cal. 2023) (collecting cases). Dr. Olsen opines on a narrow understanding of these claim terms and then in subsequent paragraphs cites to the specification or prosecution history for support. This is precisely the type of claim construction testimony that courts routinely exclude.

Microsoft's cited authority does not hold differently. Quoting *Huawei v. Samsung*, Microsoft argues that there is nothing improper about Dr. Olsen explaining the plain and ordinary meaning of "font command code". *See* Dkt. 398 at 2. But Microsoft omits the full language in *Huawei*: "parties may 'introduce evidence as to the plain and ordinary meaning of terms not construed by the Court to one skilled in the art,' *so long as the evidence does not amount to 'arguing claim construction to the jury*[.]'" *Huawei Techs., Co., Ltd v. Samsung Elecs. Co, Ltd.*, 340 F.Supp.3d 934, 949 (N.D. Cal. 2018) (emphasis added). The *Huawei* court, in fact, excluded expert testimony crossing the line into claim construction. *See id*. at 967.

For the term "font command code", Microsoft argues that Dr. Olsen is simply describing how the patented system works and that Corel's expert relies on the same portions of the specification in his expert report. *See* Dkt. 398 at 2–3. Microsoft ignores that the two experts rely on the patent specification in different ways. Dr. Bederson relies on portions of the specification to support his doctrine of equivalents analysis for the term "font command code", *see* Dkt. 398-1, ¶¶ 725, 734; it is entirely appropriate, as Dr. Bederson does, to use the written description to analyze the function of a claim term as well as insubstantial differences between the claim element and the accused product. *See AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1328 (Fed. Cir. 2007). On the other hand, Dr. Olsen relies on the specification in the section of his report titled "font command codes" to re-define the claim term: he opines that the

specification adopts his narrow understanding of the term "font command code." *See* Dkt. 379, Ex. 1, ¶¶ 54, 56, 59. This use of the specification is clearly prohibited under Microsoft's own cited authority. *See*, *e.g.*, *Ferring Pharms. v. Par Pharm.*, No. 1:15-cv-00173-RGA, 2016 U.S. Dist. LEXIS 149434, at *3 (D. Del. Oct. 28, 2016) (unpublished) ("Both parties' experts are, therefore, precluded from testifying that the specification and prosecution history support their views regarding the plain and ordinary meaning of the claim terms.").

For the terms "memory medium storing the active document" and "updating the display", Dr. Olsen does not merely describe the plain meaning of the claim terms at paragraphs 204 and 213[1] as Microsoft asserts. Dkt. 398 at 3. Dr. Olsen does not explain how those of skill in the art would have understood those terms in the field at the time of the invention. He addresses the legal question of prosecution history disclaimer instead. *See*, *e.g.*, Dkt. 379, Ex. 1, ¶204 (using the prosecution history to explain that Corel said the "preview happens in the document itself, rather than a separate 'sample portion'"), ¶213 (explaining that Corel noted that "'[r]ather than providing a transient representation of how a command might impact a document, the method of the invention actually executes the identified command.'").

If the Court has any doubt, it need look no further than Microsoft's own brief. Microsoft unambiguously states that "Dr. Olsen discusses the file history to show how the inventors *differentiated their patent system* from systems like the accused products[.]" Dkt. 398 at 3 (emphasis added). In other words, Dr. Olsen relies on the file history to argue that the inventors excluded the accused products from the scope of their claims. *See* Dkt. 379, Ex. 1, ¶¶204, 213.

---

[1] Microsoft mistakenly refers to paragraph 212 of Dr. Olsen's Rebuttal Report.

This is plainly directed towards legal questions of claim construction and disclaimer that are improper for expert testimony. *See Mass. Inst. of Tech. v. Shire Pharm., Inc.*, 839 F.3d 1111, 1119 (Fed. Cir. 2016) ("The doctrine of prosecution disclaimer . . . preclude[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." (cited authority omitted)); *see also Ferring Pharms.*, 2016 U.S. Dist. LEXIS 149434, at *3; *Huawei Techs.*, 340 F.Supp.3d at 949.

Microsoft cites only one case for its argument that is proper for an expert to discuss the prosecution history, *GPNE v. Apple*, and it does not apply. *GPNE* involved a post-trial motion where the patentee took issue with the defendant's arguments and evidence regarding the construed term "node." *GPNE Corp. v. Apple Inc.*, 108 F.Supp.3d 839, 852 (N.D. Cal. 2015). The expert in *GPNE* did not use prosecution history to argue the meaning of the term "node". *Id.* at 856. Instead, the prosecution history was used to illustrate the factual differences between cell phones and pagers at the time of the invention. *See id.* Thus, the permitted evidence in *GPNE* was not used to argue that the inventors excluded the accused products from the scope of the claims as Dr. Olsen does here.

> **B.     Dr. Olsen's doctrine of equivalents opinions are inconsistent with this Court's prior claim construction and summary judgment order and directed towards improper opinions of prosecution history estoppel.**

Dr. Olsen's doctrine of equivalents opinions merit exclusion for two reasons. **First**, Dr. Olsen's opinions conflict with this Court's claim construction and summary judgment order. *Viva Healthcare Packaging USA Inc. v. CTL Packaging USA Inc.*, 197 F. Supp. 3d 837, 852 (W.D.N.C. 2016) (citing cases). For example, in his equivalency analysis, Dr. Olsen opines that the inventors distinguished the patented invention from systems that operate on "a sample

portion" or "provid[e] a transient representation of how a command might impact a document." Dkt. 379, Ex. 1, ¶¶316, 318, 325, 328, 354. Thus, Dr. Olsen concludes that the accused products that use a "scratch" document approach cannot be equivalent to the claimed invention. *See id*. These opinions conflict with this Court's prior rulings on Microsoft's unsuccessful prosecution disclaimer and estoppel arguments regarding the "scratch" document implementation. *See* CC and SJ Order, Dkt. 361 at 8 ("Corel's remarks are best understood as arguments that the claim language, *as written*, was distinguishable from [the prior art] Habib because Corel's invention modified the active document rather than a snippet of sample text in a separate preview window." (emphasis in original)); *see also id*. at 9 n.3 (noting that Microsoft's "proposed phrase, 'not in a transient representation of the user's document,' implies a temporary representation of the document as a whole, rather than a few words displayed in a small preview window as disclosed in [prior art] Habib.").

Microsoft argues that Dr. Olsen does not discuss disclaimer or disavowal and "simply quote[s] Corel's own language about the function if its claims[.]" Dkt. 398 at 5. Dr. Olsen's opinions, however, go beyond simply quoting Corel's language about the function of claim limitations—they expressly adopt the disclaimer and estoppel arguments that Microsoft previously raised. *See*, *e.g.*, Dkt. 379, Ex. 1, ¶316 ("Corel argued its invention 'does not provide a 'preview' in the traditional sense. Rather than providing a transient representation of how a command might impact a document, the method of the invention actually executes the identified command"), ¶318 ("Corel was clear that its patent makes the change 'on the document or application itself, rather than on a sample portion'"), ¶325 ("During prosecution, Corel was clear that its invention operates 'on the document or application itself, rather than on a sample

portion'"), ¶328 ("Corel was clear that its patent makes the change 'on the document or application itself, rather than on a sample portion'"), ¶354 ("During prosecution, Corel said its invention operations 'on the document or application itself, rather than on a sample portion'"). The fact that Dr. Olsen rehashes these arguments in the context of different claim limitations does not make them any more permissible.

**Second**, Dr. Olsen's doctrine of equivalents opinions also merit exclusion because they rely on prosecution history to impermissibly argue estoppel to a jury. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1368 (Fed.Cir.2003) ("[T]he determinations concerning whether the presumption of surrender has arisen and whether it has been rebutted are questions of law for the court, not a jury, to decide."); *see also Cordis*, 561 F.3d at 1337.

Microsoft argues that the doctrine of equivalents presents an exception to the rule against permitting experts to opine on prosecution history to the jury and cites to *Zenith Labs. v. Bristol-Myers Squibb*. *Zenith* does not support Microsoft's assertion that an expert may consult the prosecution history for any purpose to address the doctrine of equivalents. *Zenith* dealt with different circumstances: it involved a bench trial, with no risk of jury confusion. *See Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1419 (Fed. Cir. 1994). Further, the *Zenith* court consulted the prosecution history to preclude the doctrine of equivalents *as a matter of law*. *See id*. at 1425. In other words, *Zenith* does not stand for the proposition that an expert must always have the latitude to opine on the prosecution history in an equivalency analysis.

Microsoft argues that the Federal Circuit has condoned the jury's consideration of prosecution history as part of a doctrine of equivalents analysis in *Wahpeton Canvas Co. v.*

- 6 -

*Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 2007). But *Wahpeton* did not squarely address whether and to what extent an expert is permitted to opine on prosecution history to a jury. *See id*. Further, *Wahpeton* is ambiguous as to how the prosecution history was used, if at all, with respect to an equivalency analysis. *See id*. ("Wahpeton simply disregards the substantial evidence presented to the jury that *certain disputed limitations* of claim 1, 11, and 14 *and their equivalents* were absent from the applicable accused devices." (emphasis added)).

Nor does Corel's cited authority help Microsoft. Microsoft quotes *AquaTex* for the proposition "the patent's prosecution history also may reveal the identification of a specific function relating to claimed structure[.]" Dkt. 398 at 4. Microsoft neglects to note that *AquaTex did not* resort to the prosecution history because the court had "already held that neither the arguments nor amendments made during prosecution" related to the allegedly foreclosed equivalent. *AquaTex*, 479 F.3d at 1326 n.5.

Microsoft also omits that *AquaTex* described the *Court*'s role, not an *expert*'s. Dkt. 398 at 4 (citing *AquaTex*, 479 F.3d at 1326 n.5 (Fed. Cir. 2007) (quoting *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 141 F.3d 1084, 1090 (Fed. Cir. 1998))). The full language from *Vehicular Techs.*, cited in *AquaTex* describes only judicial analysis:

> In some cases, *the patent's prosecution history also may reveal the identification of a specific function relating to claimed structure*. This may result from an amendment to claim language that was made to overcome, for example, a prior art rejection by the examiner. In such cases, *the judicial analysis* of whether structure and its associated function has been surrendered is conducted *under the rubric of prosecution history estoppel*.

*Vehicular Techs.*, 141 F.3d at 1090 (emphasis added). *Vehicular Techs.* does suggest that apart from estoppel, statements made in prosecution may evidence that an asserted equivalent is

beyond coverage under the doctrine of equivalents. *Id*. at 1090. But all of the cited *Vehicular Techs.* examples are instances of *judicial analysis* of prosecution history or instances where the prosecution history wasn't consulted at all. *See id.*[2] In sum, Microsoft cites no case that it is proper for an expert to argue prosecution history to a jury especially where—as here—a party previously and unsuccessfully argued for disclaimer and estoppel based on that same history.

      **C.    Dr. Olsen's testimony comparing Corel's commercial embodiment of the invention to Microsoft's accused products should be excluded.**

Dr. Olsen's opinions at paragraphs 337, 349, 351, and 352 of his rebuttal report should be excluded because they improperly compare the accused Microsoft products ("Word" and "Excel") to Corel's commercial embodiment ("WordPerfect") as part of a non-infringement analysis.[3] Dkt. 379, Ex. 1; *see AquaTex*, 479 F.3d at 1327 ("Infringement, either literally or under the doctrine of equivalents, does not arise by comparing the accused product . . . with a commercialized embodiment of the patentee.") (citations omitted).

Microsoft attempts to reposition Dr. Olsen's opinions as considering the "prior art" as part of an equivalency analysis. *See* Dkt. 398 at 5–6. Dr. Olsen does not actually consider

---

[2] *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1477 (Fed. Cir. 1998) (affirming prosecution history estoppel finding on summary judgment); *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1303 (Fed. Cir. 1997) (same); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1107 (Fed. Cir. 1996) (reversing denial of JMOL of non-infringement based on dedication of equivalent to the public); *Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1175 (Fed. Cir. 1993) (finding patentee was estopped from asserting doctrine of equivalents); *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1574 (Fed. Cir. 1996) (no doctrine of equivalents as a matter of law based on disclosures in the patent); *Tanabe Seiyaku Co. v. U.S. Int'l Trade Comm'n*, 109 F.3d 726, 733 (Fed. Cir. 1997) (bench trial finding that statements made to foreign patent office supported finding of no interchangeability).

[3] Corel disagrees with Microsoft's description of the undo functionality of Word. *See* Dkt. 398 at 6. Dr. Bederson explained how Word's undo stack saves information about both the new and old formatting. *See*, *e.g.*, Dkt. 404, Ex. 87, ¶¶459–475.

equivalency in the context of the "prior art" generally—he instead merely attempts to use Corel's commercial embodiment as an improper strawman proxy for the claim to argue non-infringement. *See* Dkt. 379, Ex. 1, ¶¶337, 349, 351, 352. Whether or not certain elements of Corel's WordPerfect pre-date the invention, Dr. Olsen uses the commercial embodiment improperly to replace the actual claim for assessing non-infringement.

Microsoft cites unpublished examples where "prior art" was considered as part of an equivalency analysis. *See Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2014 U.S. Dist. LEXIS 112321, at *48–49 (N.D. Cal. Aug. 12, 2014) (unpublished); *Lovelett v. Peavey Elecs. Corp.*, No. 95 Civ. 9657 (MBM), 1996 U.S. Dist. LEXIS 15210, at *18–19 (S.D.N.Y. Oct. 15, 1996) (unpublished). But neither of those cases involved, much less approved, comparison of functionality found in a commercial embodiment of the invention to the accused products as Dr. Olsen does here. *See Kilopass Tech.*, 2014 U.S. Dist. LEXIS 112321 at *38–39, 48–49 (considering equivalency theory in view of criticisms of the prior art and prior statements comparing the patents-in-suit with accused product); *Lovelett*, 1996 U.S. Dist. LEXIS 15210 at *18–19 (comparing claimed "shell rings" with prior art "drum shell" generally). Dr. Olsen's non-infringement opinions are properly excluded insofar as they compare Corel's commercial embodiment of the invention to Microsoft's accused products.

### D.     Dr. Olsen's reliance on unproduced debug software should be excluded.

In paragraphs 216 and 327 of Dr. Olsen's rebuttal report, he cites and describes screenshots from a special debug version of the accused Microsoft Word software as evidence of non-infringement. Dkt. 379, Ex. 1. Neither the screenshots nor the debug software itself was produced in litigation. Dr. Olsen's testimony relating to these screenshots and the debug software

should be excluded. *See ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-CV-1112-JRG, 2015 WL 6886957, at *2 (E.D. Tex. Nov. 7, 2015) (unpublished).

Microsoft argues that Corel does not apply the proper test for exclusion under Fed. R. Civ. P. 37. But "[a] district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). In any event, Corel explained why the evidence was prejudicial: absent access to the debug version of the software from which the screenshots were created, Corel cannot adequately cross-examine Dr. Olsen on this evidence. Dkt. 379 at 10. Indeed, Dr. Olsen could not answer questions at his deposition related to how the screenshot was created or how the debug code operated. Dkt. 379, Ex. 2 at 17:11-19:5. To the extent Microsoft suggests that Corel never requested the debug software version from which the screenshots were taken, that is incorrect. *See* Ex. 3 at 2 (requesting "Software incorporating Live Preview").

Corel requests exclusion of Dr. Olsen's opinions regarding unproduced debug software found at paragraphs 216 and 327 of his rebuttal report or alternatively that the Court require Microsoft to produce a copy of the debug software so that Dr. Olsen may be adequately cross-examined at trial.

## III. CONCLUSION

Dr. Olsen's testimony directed towards legal issues such as claim construction and prosecution history estoppel should be excluded. In addition, Dr. Olsen's testimony insofar as it impermissibly compares the accused products to Corel's commercial embodiment of the invention and relies on unproduced evidence should be excluded.

DATED: December 16, 2024                                     Respectfully submitted,

/s/ *Aaron R. Fahrenkrog*
Jake M. Holdreith (*pro hac vice*)
Aaron R. Fahrenkrog (*pro hac vice*)
Logan J. Drew (*pro hac vice*)
Emily J. Tremblay (*pro hac vice*)
John K. Harting (*pro hac vice*)
Benjamen C. Linden (*pro hac vice*)
Samuel J. LaRoque (*pro hac vice*)
William R. Jones (*pro hac vice*)
**ROBINS KAPLAN LLP**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402–2015
Telephone: 612-349-8500
Facsimile:  612-339-4181
jholdreith@robinskaplan.com
afahrenkrog@robinskaplan.com
ldrew@robinskaplan.com
etremblay@robinskaplan.com
jharting@robinskaplan.com
blinden@robinskaplan.com
slaroque@robinskaplan.com
wjones@robinskaplan.com

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: 310-203-7096

/s/ *Kade N. Olsen*
Jonathan O. Hafen (Utah Bar. No. 6096)
Terry E. Welch (Utah Bar. No. 5819)
Kade N. Olsen (Utah Bar No. 17775)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, UT 84111
Telephone: 801-532-7840
Facsimile:  801-532-7750
jhafen@parrbrown.com
twelch@parrbrown.com

- 12 -

kolsen@parrbrown.com

**ATTORNEYS FOR PLAINTIFF
COREL SOFTWARE, LLC**

CERTIFICATE OF SERVICE

I certify that on December 16, 2024, I served a copy of the foregoing document on the following counsel of record for Microsoft Corporation, via the Court's ECF system:

Jonathan J. Lamberson (*pro hac vice*)
Hallie Kiernan (*pro hac vice*)
Henry Huang (*pro hac vice*)
**WHITE & CASE LLP**
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306
Telephone: (650) 213-0384
Facsimile: (650) 213-8158
lamberson@whitecase.com
hallie.kiernan@whitecase.com
henry.huang@whitecase.com

Frank E. Scherkenbach (*pro hac vice*)
**FISH & RICHARDSON P.C.**
One Marina Park Drive
Boston, MA 02110
Telephone: (617) 542-5070
Facsimile: (617) 542-5071
scherkenbach@fr.com

James S. Jardine
Beth J. Ranschau
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
Salt Lake City, UT 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
jjardine@rqn.com
branschau@rqn.com

Bryan K. Basso (*pro hac vice*)
**FISH & RICHARDSON P.C.**
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071
basso@fr.com

Excylyn J. Hardin-Smith (*pro hac vice*)
**FISH & RICHARDSON P.C.**
7 Times Square, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291
hardin-smith@fr.com

DATED: December 16, 2024        By: */s/ Aaron R. Fahrenkrog*