Jake M. Holdreith (*pro hac vice*)
jholdreith@robinskaplan.com
Aaron R. Fahrenkrog (*pro hac vice*)
afahrenkrog@robinskaplan.com
Logan J. Drew (*pro hac vice*)
ldrew@robinskaplan.com
Emily J. Tremblay (*pro hac vice*)
etremblay@robinskaplan.com
John K. Harting (*pro hac vice*)
jharting@robinskaplan.com
Benjamen C. Linden (*pro hac vice*)
blinden@robinskaplan.com
Samuel J. LaRoque (*pro hac vice*)
slaroque@robinskaplan.com
William R. Jones (*pro hac vice*)
wjones@robinskaplan.com
ROBINS KAPLAN LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402–2015
Telephone: 612-349-8500
Facsimile: 612-339-4181

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: 310-203-7096

Jonathan O. Hafen (Utah Bar No. 6096)
jhafen@parrbrown.com
Terry E. Welch (Utah Bar No. 5819)
twelch@parrbrown.com
Kade N. Olsen (Utah Bar No. 17775)
kolsen@parrbrown.com
PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, UT 84111
Telephone: 801-532-7840

Attorneys for Plaintiff Corel Software, LLC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COREL SOFTWARE, LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MICROSOFT CORPORATION,<br><br>　　　　Defendant. | Case No. 2:15-cv-00528-JNP-DBP<br><br>**COREL'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF JOHN L. HANSEN PURSUANT TO FED. R. EVID. 702**<br><br>ORAL ARGUMENT REQUESTED<br><br>District Judge Jill N. Parrish<br>Chief Magistrate Judge Dustin B. Pead |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

    A.  Mr. Hansen's "valuations" are untethered to the goal of the hypothetical negotiation framework: none values Microsoft's—or any comparable—use of the patented technology. ................................................................................ 2

    B.  None of Mr. Hansen's "valuations" provides evidence of customary rates in the industry under *Georgia-Pacific* Factor 12. ..................................................... 5

III. CONCLUSION .................................................................................................................... 7

## TABLE OF AUTHORITIES

Page

**Cases**

*Apple Inc. v. Wi-LAN Inc.*,
  25 F.4th 960 (Fed. Cir. 2022) .................................................................................. 4

*Aqua Shield v. Inter Pool Cover Team*,
  774 F.3d 766 (Fed. Cir. 2014) ............................................................................. 2, 4

*Correct Transmission, LLC v. Nokia of Am. Corp.*,
  No. 2:22-CV-00343-JRG-RSP, 2024 WL 1287616 (E.D. Tex. Mar. 26, 2024) ....... 6

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) .............................................................................. 2

*Function Media, L.L.C. v. Google Inc.*,
  No. 2:07-CV-279-CE, 2010 U.S. Dist. LEXIS 3273 (E.D. Tex. Jan. 15, 2010)
  (unpublished) .......................................................................................................... 6

*Intuitive Surgical, Inc. v. Auris Health, Inc.*,
  549 F. Supp. 3d 362 (D. Del. 2021) ........................................................................ 5

*Omega Patents, LLC v. CalAmp Corp.*,
  13 F.4th 1361 (Fed. Cir. 2021) ............................................................................... 2

*Oracle Am., Inc. v. Google Inc.*,
  No. 10-cv-03561-WHA, 2012 U.S. Dist. LEXIS 35393, 2012 WL 877125
  (N.D. Cal. Mar. 15, 2012) (unpublished) ............................................................... 4

*Robocast, Inc. v. Microsoft Corp.*,
  No. 10-cv-1055-RGA, 2014 U.S. Dist. LEXIS 5836, 2014 WL 202399
  (D. Del. Jan. 16, 2014) (unpublished) .................................................................... 4

*See On Track Innovations Ltd. v. T–Mobile USA, Inc.*,
  106 F. Supp. 3d 369 (S.D.N.Y. 2015) .................................................................... 6

*SSL Servs., LLC v. Citrix Sys., Inc.*,
  769 F.3d 1073 (Fed. Cir. 2014) ........................................................................ 2, 5

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) .............................................................................. 4

## I.  INTRODUCTION

The *Georgia-Pacific* analysis attempts to quantify the reasonable royalty that the infringer should pay based on the value of *its use* of the patented technology. Here, Microsoft used the '483 patent to create demand for Office upgrades and sell billions of Office licenses. Mr. Hansen's "real-world" valuations are at odds with the established hypothetical negotiation framework. None of his "valuations" considers *Microsoft's* use of the technology. Indeed, none of Mr. Hansen's "valuations" qualify for consideration under any *Georgia-Pacific* factor. Microsoft cannot argue otherwise. The Court must exclude Mr. Hansen's unreliable opinion.

Mr. Hansen does not address the most significant difference between the hypothetical negotiation and these other "data points": the value *to Microsoft* of *Microsoft's* infringing use and aggressive promotion of the '483 inventions to sell billions of Office products. Mr. Hansen avoids analyzing how much money Microsoft made from using the patented technology and how much it would have willingly paid in a negotiation that assumed infringement and validity. His opinion is unreliable.

Corel seeks to exclude Mr. Hansen's unreliable reasonable royalty opinion, because he offers no opinion regarding the value of the patented technology to Microsoft and does not acknowledge key distinctions between the valuations supporting his opinion and the requirements of the hypothetical negotiation framework. Mr. Hansen cannot build a reasonable royalty opinion on those valuations. They have no place in the established hypothetical negotiation framework.

II.     ARGUMENT

   A.   **Mr. Hansen's "valuations" are untethered to the goal of the hypothetical negotiation framework: none values Microsoft's—or any comparable—use of the patented technology.**

Mr. Hansen claims to use the *Georgia-Pacific* hypothetical negotiation framework to estimate a reasonable royalty that Microsoft owes Corel for its use of Corel's patented technology. But Mr. Hansen's inputs—the various "valuations"—do not account for Microsoft's use of the patented technology. In most cases expressly so. More significant, Mr. Hansen does not adjust those "valuations" to account for the value of Microsoft's use. This fundamental flaw renders Mr. Hansen's reasonable royalty opinion contrary to law and unreliable.

"The value of what was taken—the value of the use of the patented technology—measures the royalty." *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) (quotation omitted). "In hypothetical-negotiation terms, the core economic question is what the infringer, in a hypothetical pre-infringement negotiation under hypothetical conditions, would have anticipated the profit-making potential of use of the patented technology to be, compared to using non-infringing alternatives." *Id.* And thus a damages expert must "account for . . . distinguishing facts when invoking [past valuations] to value the patented invention." *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1380 (Fed. Cir. 2021) (citing *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014)); *see also SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1093 (Fed. Cir. 2014) (The expert "expressly addressed the differences between the license negotiations and any hypothetical negotiations, thereby clarifying for the jury where such differences might exist and the limited value of such evidence.").

Here, Microsoft does not and cannot dispute that none of Mr. Hansen's "valuations" measures the value of Microsoft's use of the patented technology. So to use those valuations, Mr. Hansen must acknowledge that distinguishing fact and explain how the valuations still inform the hypothetical negotiation analysis. Mr. Hansen does not do this work in his report, and Microsoft does not argue otherwise in its opposition.

|  | **Distinguishing Facts** | **Hansen's Opinion**[1] |
|---|---|---|
| **McGladrey** | Estimated value of patents to *Corel* using only Corel's products/revenue and excluding potential licensing revenue (e.g., licensing Microsoft)<br><br>Dkt. 382 at 6. | No adjustment to value Microsoft use |
| **Acacia/Microsoft** | Did not consider whether Microsoft obtained value from the patented technology and did not contemplate Microsoft paying a reasonable royalty<br><br>Dkt. 382 at 8–9. | No adjustment to value Microsoft use |
| **Huawei** | Considered "small" and "medium" entity use and excluded "large" entity use (e.g., Microsoft use)<br><br>Dkt. 382 at 9–10. | No adjustment to value Microsoft use |
| **Vector/Gores** | Provided no indication that negotiations considered that Microsoft was using the patented technology<br><br>Dkt. 382 at 10–11. | No adjustment to value Microsoft use |

---

[1] Microsoft does not argue that Mr. Hansen accounts for these differences. *See* Dkt. 399.

To use any of these valuations, Mr. Hansen must offer "a basis in fact to associate the royalty rates used in prior [valuations] to the particular hypothetical negotiation at issue in the case." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011). Microsoft's cases do not provide otherwise. *See, e.g.*, *Robocast, Inc. v. Microsoft Corp.*, No. 10-cv-1055-RGA, 2014 U.S. Dist. LEXIS 5836, 2014 WL 202399, at *2 n.3 (D. Del. Jan. 16, 2014) (unpublished) (valuation accounted for licensing revenue from infringers because the company's only asset was the asserted patent); *Oracle Am., Inc. v. Google Inc.*, No. 10-cv-03561-WHA, 2012 U.S. Dist. LEXIS 35393, 2012 WL 877125, at *3 (N.D. Cal. Mar. 15, 2012) (unpublished) (finding that even though the method of valuation may not have accounted for profits earned through licensing third parties, the profit allocation method used estimated "the value of a *license* to [the] patent portfolio" (emphasis in original)).

Without adjustment, it cannot be true that (1) Corel's use of its own technology, (2) Microsoft's self-serving discount, and (3) unconsummated offers to sell the patents that carved out or did not otherwise account for Microsoft's unlicensed use inform the reasonable royalty analysis here. Mr. Hansen offers no explanation for why the valuations on which he relies may serve, unadjusted, as a proxy for the value of Microsoft's use of patented technology. This omission renders his methodology flawed and his opinion unreliable. *Aqua Shield*, 774 F.3d at 770 ("In the damages context, therefore, we examine the methodology for consistency with the legal principles defining a reasonable royalty."). Not considering the value of the infringer's use is not consistent with the Federal Circuit's principles defining a reasonable royalty. *See Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 974 (Fed. Cir. 2022) (noting expert testimony should have

- 4 -

been excluded when he committed methodological and factual errors in analyzing comparable license agreements, rendering "his opinion untethered to the facts of this case").

> B. **None of Mr. Hansen's "valuations" provides evidence of customary rates in the industry under *Georgia-Pacific* Factor 12.**

Microsoft concedes that none of the "valuations" on which Mr. Hansen relies provides evidence of "royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty" (*GP* Factor 1) or "rates paid by the licensee for the use of other patents comparable to the patent in suit" (*GP* Factor 2). Instead, Microsoft argues that Mr. Hansen may consider the "valuations" under the "broader" *Georgia-Pacific* Factor 12.[2] Yet Microsoft cites no case finding that a damages expert may consider analogous "valuations" under Factor 12. Indeed, a tax study, Microsoft's self-serving assessment of patents, unconsummated third-party offers to purchase patents, and internal business deliberations do not provide evidence of customary rates in the industry.

None of Microsoft's cases considered tax studies or unconsummated offers to purchase the asserted patent. *See* Dkt. 399 at 4; *see, e.g.*, *SSL Servs., LLC*, 769 F.3d at 1093 (addressing whether executed technology agreements involving the defendant were comparable and thus relevant to the hypothetical negotiation framework); *Intuitive Surgical, Inc. v. Auris Health, Inc.*, 549 F. Supp. 3d 362, 372 (D. Del. 2021) (considering whether evidence of typical royal rates in the industry was relevant to the hypothetical negotiation). Microsoft leans on *Function Media*, in particular, but that case did not involve a tax study or a valuation based on only the transferring

---

[2] As Microsoft acknowledges, Factor 12 covers "[t]he portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions."

party's own use of the patented technology—it specifically considered a *royalty rate* attributable to technology that the *defendant* acquired. *See Function Media, L.L.C. v. Google Inc.*, No. 2:07-CV-279-CE, 2010 U.S. Dist. LEXIS 3273, at *12 (E.D. Tex. Jan. 15, 2010) (unpublished). Even the opposing party's expert admitted to "us[ing] combined technology licenses and royalty rates for technology in other cases." *Id*. at *13. Thus the court concluded that the use of those royalty rates "has some 'general acceptance.'" *Id*.

Here, Mr. Hansen cites no evidence supporting the general acceptance of tax studies as evidence relevant to a reasonable royalty analysis. In fact, Mr. Hansen testified that of the 20 or so real-world licensing negotiations that he has been involved in, he has never used a tax accountant's document about transferring patents between related companies. *See* Ex. 2 at 16:23-20:14.

Mr. Hansen's unconsummated offers for sale are also distinct from customary or other rates that may be relevant to a hypothetical negotiation. *Cf. Correct Transmission, LLC v. Nokia of Am. Corp.*, No. 2:22-CV-00343-JRG-RSP, 2024 WL 1287616, at *3 (E.D. Tex. Mar. 26, 2024) ("This is distinct from the instance where an expert is permitted to consider a rate offered by the patent owner. There, the offered rate is presumed to be known and thus arguably likely to be considered as part of the hypothetical negotiation."). Mr. Hansen should not be allowed to testify to a "customary royalty rate" based on what third parties (e.g., Microsoft, Acacia, and Huawei) "hoped" to pay. *See On Track Innovations Ltd. v. T–Mobile USA, Inc.*, 106 F. Supp. 3d 369, 416 (S.D.N.Y. 2015) ("Ultimately, the Via licensing scheme is nothing more than an unconsummated offer indicating what Via *hoped* to collect for the patent pool.").

Telling, Microsoft does not appear to argue that Mr. Hansen should testify to customary rates; Microsoft looks to use Mr. Hansen to admit the valuations, untethered to a reliable reasonable royalty analysis.

### III.   CONCLUSION

Mr. Hansen's "valuations" provide no evidence of the value of Microsoft's use of the patented technology. Yet he uses them, wholesale, to set a reasonable royalty in this case. That methodology runs contrary to the established hypothetical negotiation framework. Indeed, none of the valuations qualify for consideration under any *Georgia-Pacific* factor. The Court should exclude Mr. Hansen's reasonable royalty opinion.

DATED: December 16, 2024

Respectfully submitted,

*/s/ Aaron R. Fahrenkrog*
Jake M. Holdreith (*pro hac vice*)
Aaron R. Fahrenkrog (*pro hac vice*)
Logan J. Drew (*pro hac vice*)
Emily J. Tremblay (*pro hac vice*)
John K. Harting (*pro hac vice*)
Benjamen C. Linden (*pro hac vice*)
Samuel J. LaRoque (*pro hac vice*)
William R. Jones (*pro hac vice*)
**ROBINS KAPLAN LLP**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402–2015
Telephone:   612-349-8500
Facsimile:    612-339-4181
jholdreith@robinskaplan.com
afahrenkrog@robinskaplan.com
ldrew@robinskaplan.com
etremblay@robinskaplan.com
jharting@robinskaplan.com
blinden@robinskaplan.com
slaroque@robinskaplan.com

- 8 -

        wjones@robinskaplan.com

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: 310-203-7096

*/s/ Kade N. Olsen*
Jonathan O. Hafen (Utah Bar. No. 6096)
Terry E. Welch (Utah Bar. No. 5819)
Kade N. Olsen (Utah Bar No. 17775)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, UT 84111
Telephone:     801-532-7840
Facsimile:     801-532-7750
jhafen@parrbrown.com
twelch@parrbrown.com
kolsen@parrbrown.com

**ATTORNEYS FOR PLAINTIFF
COREL SOFTWARE, LLC**

## CERTIFICATE OF SERVICE

I certify that on December 16, 2024, I served a copy of the foregoing document on the following counsel of record for Microsoft Corporation, via the Court's ECF system:

Jonathan J. Lamberson (*pro hac vice*)
Hallie Kiernan (*pro hac vice*)
Henry Huang (*pro hac vice*)
**WHITE & CASE LLP**
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306
Telephone: (650) 213-0384
Facsimile: (650) 213-8158
lamberson@whitecase.com
hallie.kiernan@whitecase.com
henry.huang@whitecase.com

Frank E. Scherkenbach (*pro hac vice*)
**FISH & RICHARDSON P.C.**
One Marina Park Drive
Boston, MA 02110
Telephone: (617) 542-5070
Facsimile: (617) 542-5071
scherkenbach@fr.com

James S. Jardine
Beth J. Ranschau
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
Salt Lake City, UT 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
jjardine@rqn.com
branschau@rqn.com

Bryan K. Basso (*pro hac vice*)
**FISH & RICHARDSON P.C.**
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071
basso@fr.com

Excylyn J. Hardin-Smith (*pro hac vice*)
**FISH & RICHARDSON P.C.**
7 Times Square, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291
hardin-smith@fr.com

DATED: December 16, 2024         By: */s/ Kade N. Olsen*