# **<u>Exhibit A</u>**

FINTIV, INC., Plaintiff-Appellant v. APPLE INC.,..., Not Reported in Fed....

Case 2:15-cv-00528-JNP-DBP    Document 415-1    Filed 05/30/25    PageID.29821
Page 2 of 6

2025 WL 1419363
Only the Westlaw citation is currently available.
United States Court of Appeals, Federal Circuit.

FINTIV, INC., Plaintiff-Appellant

v.

APPLE INC., Defendant-Appellee

2023-2208
|
Decided: May 16, 2025

Appeal from the United States District Court for the Western District of Texas in No. 1:21-cv-00896-ADA, Judge Alan D. Albright.

**Attorneys and Law Firms**

Meredith Leigh Martin Addy, AddyHart P.C., Atlanta, GA, argued for plaintiff-appellant. Also represented by Charles A. Pannell, III; Caren Yusem, Washington, DC; Marcus Barber, John Downing, Darcy L. Jones, Heather Kim, Thucminh Nguyen, Jonathan K. Waldrop, Kasowitz Benson Torres LLP, Redwood Shores, CA; Paul Gunter Williams, Atlanta, GA.

Melanie L. Bostwick, Orrick, Herrington & Sutcliffe LLP, Washington, DC, argued for defendant-appellee. Also represented by Abigail Colella; Alexandra Bursak, New York, NY; Jessica Hannah, DLA Piper LLP, San Francisco, CA; Stanley Joseph Panikowski, III, San Diego, CA.

Before Dyk, Chen, and Stark, Circuit Judges.

**Opinion**

Chen, Circuit Judge.

 **\*1**  In December 2018, Fintiv, Inc. (Fintiv) sued Apple Inc. (Apple) for infringement of certain claims of U.S. Patent No. 8,843,125 ('125 patent). After construing the claim term "widget" and at first denying Apple's motion for summary judgment, the United States District Court for the Western District of Texas changed course and granted summary judgment of noninfringement in favor of Apple. *Fintiv, Inc. v. Apple Inc.*, No. 21-CV-896, 2023 WL 4237356 (W.D. Tex. June 21, 2023) (*Order*). Fintiv appeals. For the reasons explained below, we *reverse*.

**BACKGROUND**

**I.**

The '125 patent is titled "System and Method for Managing Mobile Wallet and Its Related Credentials." The patent relates to virtual wallets stored on mobile devices—in other words, a "mobile wallet application" capable of storing "virtual cards" that can be used to "replace conventional physical wallets." '125 patent col. 1 ll. 25–46. The mobile device may also store "user financial credentials, such as credit card numbers," which can be used for "con-tactless payment" using Near Field Communication technology. *Id.* col. 1 ll. 47–62.

The patent teaches a mobile wallet management system that, among other components, includes a wallet client management component and a widget management component. *Id.* col. 4 ll. 52–56. The wallet client management component "is responsible for the wallet application itself (referred [to] as the container), which may house the individual widgets (e.g., applications stored at the application level related to a financial institution, transportation account, and the like)." *Id.* col. 4 ll. 57–61. The widget management component "on the other hand is responsible for the individual widgets stored within the wallet container." *Id.* col. 5 ll. 4–6. The patent explains that "[w]idgets may be an application configured to interface with a user of the mobile device," such as "individual payment applications, transportation applications, and other related applications." *Id.* col. 5 ll. 6–9.

Once a mobile wallet application is installed on the mobile device, the user can "provision ... specific contactless card applets" and "corresponding widget applications and [wallet management applets (WMA)] onto [the] mobile device." *Id.* col. 8 ll. 18–22. "The corresponding widget may reside in the mobile wallet application, at the application level, to provide an interface to the user." *Id.* col. 8 ll. 63–65 (figure reference number omitted). And the corresponding WMA, "which may include account specific information of the contactless card apple[t] (e.g. credit card number, expiration date, security code, PIN, etc.), may be provisioned into" a secure element of the device. *Id.* col. 8 l. 66 – col. 9 l. 2. Thus, "[b]y installing both the WMA applet and the widget, the user may view and manage the information stored in the WMA applet through the corresponding widget." *Id.* col. 9 ll. 2–5 (figure reference numbers omitted).

FINTIV, INC., Plaintiff-Appellant v. APPLE INC.,..., Not Reported in Fed....

Case 2:15-cv-00528-JNP-DBP    Document 415-1    Filed 05/30/25    PageID.29822
Page 3 of 6

Fintiv asserted infringement of independent claims 11, 18, and 23 and dependent claims 13–14, 20, and 24–25 (collectively, asserted claims) of the '125 patent against Apple. Independent claim 11 recites a method for provisioning a contactless card applet in a mobile device comprising, among other steps, "retrieving a widget and a wallet management applet (WMA) corresponding to the contactless card applet" and "provisioning the selected contactless card applet, the widget, and the WMA." Independent claim 18 recites a wallet management system comprising, among other things, "a widget management component configured to store and to manage widgets" and "a rule engine configured to filter a widget based on the mobile device information." Independent claim 23 recites a mobile device comprising, among other things, "a mobile wallet application configured to store a widget corresponding to a contactless card applet" and "an over-the-air (OTA) proxy configured to provision the contactless card applet, a widget corresponding to the contactless card applet, and the WMA."

## II.

**\*2** Fintiv accused multiple Apple devices—the iPhone, iPad, Apple Watch, and Mac—of infringing through their use of Apple Pay and Apple Wallet. Apple Pay allows consumers to make electronic payments, including, for example, through the Apple Wallet application. A user may provide their payment card information to add the card to the Apple Wallet application. The user may then select a card from Apple Wallet to make a payment through Apple Pay or view certain information about the card.

Central to the district court's grant of summary judgment and this appeal is the court's construction of "widget." The district court construed "widget" as "plain-and-ordinary meaning and where the plain-and-ordinary meaning is 'software that is either an application or works with an application, and which may have a user interface.' " J.A. 66–67. Neither party takes issue with that construction.

Apple moved for summary judgment of noninfringement on four independent grounds, one of which was non-infringement of the "widget" limitation and " 'widget'-related limitations" (i.e., the claimed actions performed on a widget and the components configured to act on a widget).[1] *Order*, 2023 WL 4237356, at \*2–3. The district court initially denied the motion without any reasoning. Almost two years later, and just one month prior to the scheduled trial, Apple requested

to reargue its motion. Upon reargument, the district court granted the motion for summary judgment.

In granting the motion, the court reasoned that Fintiv and its expert witness, Dr. Michael Shamos, "failed to identify the claimed widget in the accused products." *Id.* at \*3. The court reviewed Fintiv's "source code and non-source code" evidence, including Dr. Shamos's testimony, but found it insufficient to identify a "widget," as construed. *Id.* at \*4. In short, the court reasoned that "nowhere does Fintiv's opposition state that 'the "widget" in the accused product is X,' where X is an identifiable piece of software, as required by the [c]ourt's construction." *Id.* The court did not address the widget-related limitations or Apple's remaining grounds for summary judgment of noninfringement. *See id.* at \*3, \*5.

The district court entered final judgment accordingly. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## STANDARD OF REVIEW

"We review the grant of summary judgment of non-infringement under the law of the relevant regional circuit." *Clare v. Chrysler Grp. LLC*, 819 F.3d 1323, 1326 (Fed. Cir. 2016). "Applying Fifth Circuit law, we review the district court's decision to grant summary judgment *de novo*, applying the same standard as the district court." *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129 (Fed. Cir. 2011) (citing *United States v. Caremark, Inc.*, 634 F.3d 808, 814 (5th Cir. 2011)). "Summary judgment is appropriate if, in viewing the evidence in a light most favorable to the non-moving party, the court finds that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Id.* (quoting Fed. R. Civ. P. 56(a)).

**\*3** Infringement is a question of fact. *Id.* at 1129–30. "On appeal from a grant of summary judgment of non-infringement, we determine whether, after resolving reasonable factual inferences in favor of the patentee, the district court correctly concluded that no reasonable jury could find infringement." *Id.* at 1130.

## DISCUSSION

This appeal concerns a single limitation: the "widget" limitation. None of the claims comprise simply "a widget." In the case of the method claims, the claims require

FINTIV, INC., Plaintiff-Appellant v. APPLE INC.,..., Not Reported in Fed....

Case 2:15-cv-00528-JNP-DBP    Document 415-1    Filed 05/30/25    PageID.29823
Page 4 of 6

certain actions performed on a widget ("retrieving" and "provisioning"). *See, e.g.*, '125 patent at claim 11. And in the case of the system and device claims, the claims require certain elements "configured to" act on a widget. *See, e.g.*, '125 patent at claim 23 ("a mobile wallet application configured to store a widget"). But Fintiv's theory of infringement for all the asserted claims alike requires proving the presence of a widget. *See, e.g.*, Appellant's Opening Br. 35 ("[T]o survive summary judgment, Fintiv was only required to present evidence that created a legitimate inference of the existence of a widget ...."); Appellant's Reply Br. 1 ("Fintiv has never argued that it did not have to present evidence of widget software.").

Fintiv first argues that the district court erroneously demanded Fintiv present source code evidence of a widget. We disagree with Fintiv's characterization of the district court's decision. True, the district court reasoned in part that Fintiv failed to identify source code comprising a widget. *See Order*, 2023 WL 4237356, at *3–4, *3 n.1. But the court ultimately concluded that Fintiv didn't proffer source code *or non-source code* evidence to support Apple's motion. *See id.* at *4 (rejecting Fintiv's "conten[tion] that it has proffered sufficient evidence (source code *and non-source code*) to defeat Apple's motion" (emphasis added)). The district court faulted Fintiv for "fail[ing] to identify *software* that constitutes the accused 'widget,'" not only for failing to present source code evidence of software. *Id.* (emphasis added).

We agree with Fintiv, however, that the district court erroneously granted summary judgment of noninfringement. The district court adopted a broad construction of "widget," defining it as "software that is either an application or works with an application, and which may have a user interface." J.A. 66–67. This construction does not require the claimed widget to possess any particular functional attributes, nor does it specify what the widget must do in relation to other claim limitations. Neither party challenges that construction. Under this broad construction, Fintiv proffered sufficient evidence to create a genuine issue of material fact that a widget exists in the accused products.[2]

**\*4** As an initial matter, there is no genuine dispute that Fintiv and Dr. Shamos failed to identify specific source code as the claimed widget. Dr. Shamos conceded during his deposition that none of the source code he cited makes up the widget. *See Order*, 2023 WL 4237356, at *3; J.A. 15244–46. Indeed, both Fintiv and Dr. Shamos admit that Dr. Shamos's report cited source code modules "to identify code for 'retrieving' the

widget or performing other actions on widgets—not the code for the widget itself." Appellant's Br. 44; *see* J.A. 18983.[3]

Still, "[a] patentee may prove infringement by 'any method of analysis that is probative of the fact of infringement,' and circumstantial evidence may be sufficient." *Martek Biosc. Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1372 (Fed. Cir. 2009) (citations omitted). Fintiv points to the testimony of Dr. Shamos related to observed functionality in the accused products as circumstantial evidence of a widget.

The '125 patent describes the widget as allowing a user to interact with information corresponding to a virtual credit card. *See* '125 patent col. 8 l. 60 – col. 9 l. 5. Consistent with that disclosure, Dr. Shamos testified in his report that "[t]he software (the 'widget') allows a user to, for example, view the card's details or perform transactions." J.A. 18767. Dr. Shamos explained:

> For instance, the widget (providing a user interface) is also provisioned (made available for use), as reflected in the screenshots below. Each screenshot below (showing the virtual card image for the Visa card) presents a software (with a user interface) that is made available to the user for selecting, via its user interface, among the available ones to, for example, view the card's details or perform transactions.
>
> Tabular or graphical material not displayable at this time.

*Id.* at 18790–91; *see also, e.g.*, *id.* at 18794–95. Dr. Shamos elaborated during his deposition. For example, he explained, "I can select [the card art] ... as a payment instrument[,] or I can select it and view its details[,] or I can select it and I can delete it," and "the interactivity that occurs between the user and that card information is performed by a widget." J.A. 18961; *see also id.* ("[T]he widget is software that enables you to do things with the card."). He further testified that "the underlying code exists that retrieves the credentials associated with that card," *id.* at 18966, and "the widget is the code that's sitting behind ... the card art that is activated when I touch it," J.A. 15247. *See also, e.g.*, J.A. 18960–61, 18963–64 (Dr. Shamos further testifying regarding the widget limitation).

The district court faulted Fintiv and Dr. Shamos for not "identify[ing] specifically what *in* [Dr. Shamos's] screenshots is the claimed 'widget.'" *Order*, 2023 WL 4237356, at *4 (emphasis added). But the widget software does not necessarily need to be a discrete element visible "in" the user operation screenshots. Dr. Shamos identified the alleged widget as the "software (with a user interface) that is made

available to the user for selecting, via its user interface," one of the available cards to, "for example, view the card's details or perform transactions." J.A. 18790. In other words, the software underlying the observed user interface and functionality that allows a user to interact with the virtual cards in the Apple Wallet application to make payments and view the cards' details.

**\*5** Further, consistent with Dr. Shamos's opinion that software underlies the observed functions is testimony of an Apple witness, Mr. Tackin. When asked about what Apple refers to as "passes" in the context of Apple Pay, Mr. Tackin testified that a "pass" could be understood as "a [user interface] and *software* presentation on the application processor that relates to the card that was installed." J.A. 19378 (emphasis added); *see also id.* at 19380 (testifying that the "card art could be ... considered as part of the pass"). Like Dr. Shamos, Apple's own witness testified that software underlies the card art and user interface presentation. [4]

Although Dr. Shamos did not identify the precise source code that makes up the alleged widget, drawing reasonable inferences in favor of Fintiv, the non-moving party, Fintiv's evidence is sufficient for a reasonable jury to find that software provides the functionality Dr. Shamos observed and identified in the accused products. *See Absolute Software*, 659 F.3d at 1133; *see, e.g., Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1306 (Fed. Cir. 2020) (finding of infringement supported by expert's testimony describing operation of the accused products); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1326 (Fed. Cir. 2009) (vacating summary judgment because circumstantial evidence created a genuine issue of fact regarding infringement). That a plaintiff seeks to prove infringement of computer-implemented technology by evidence other than source code does not mean that infringing source code does not exist. *See Chewy, Inc. v. Int'l Bus. Machs. Corp.*, 94 F.4th 1354, 1363–64 (Fed. Cir. 2024) (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 761 F.3d 1329, 1343 (Fed. Cir. 2014)). For its part, Apple speculates that "mere data," rather than software, could underlie the functions observed by Dr. Shamos. Appellee's Br. 64. But Apple cites no competing testimony or product documentation to support that view. *Cf. Finjan LLC v. SonicWall, Inc.*, 84 F.4th 963, 971, 973 (Fed. Cir. 2023) (affirming summary judgment of non-infringement where defendant submitted evidence that its accused products operate in a manner differently than as required by the construction of a claim term).

\* \* \*

The district court granted summary judgment because Fintiv "has no evidence of a 'widget' in the accused products; that is, the accused products contain no 'software that is either an application or works with an application, and which may have a user interface.' " *Order*, 2023 WL 4237356, at \*3. Beyond the apparent implausibility that the accused products contain no software, [5] Fintiv has sufficiently identified and proffered circumstantial evidence of a widget, as we have explained above.

The real issue, it appears to us, is whether the alleged widget as identified by Fintiv can satisfy related claim limitations. For example, the limitation requiring the widget to "correspond[ ] to the contactless card applet," '125 patent at claims 11, 23, or the steps requiring the widget to be "retriev[ed]" and "provision[ed]," *id.* at claim 11. At oral argument, Apple repeatedly argued that these limitations could not be satisfied. *See* Oral Arg. at 21:28–54, 22:19–23:19, 24:01–12, 27:53–28:43. But the district court did not grant summary judgment based on those related claim limitations and that issue was not briefed to us on appeal. Accordingly, we remand for the district court to address whether summary judgment of noninfringement is warranted as to those limitations or on the remaining grounds asserted by Apple, which the district court did not reach. *See Order*, 2023 WL 4237356, at \*2.

## CONCLUSION

**\*6** We have considered Apple's remaining arguments and find them unpersuasive. For the reasons stated above, we *reverse* the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

COSTS

Costs to Fintiv.

**All Citations**

Not Reported in Fed. Rptr., 2025 WL 1419363

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.    4

Case 2:15-cv-00528-JNP-DBP    Document 415-1    Filed 05/30/25    PageID.29825
Page 6 of 6

FINTIV, INC., Plaintiff-Appellant v. APPLE INC.,..., Not Reported in Fed....

## Footnotes

1    Apple also moved for summary judgment on the grounds that (1) foreign users do not "use" the accused system "within the United States" and thus do not infringe under 35 U.S.C. § 271(a), (2) the accused iPads and Macs do not meet the court's construction of the "contactless card applet" limitation of claims 11 and 23 and their dependent claims, and (3) the pairing of the accused iPhone and Apple Watch does not satisfy the court's construction of the claim term "mobile device." J.A. 15160. The district court did not address these alternative grounds, *see Order,* 2023 WL 4237356, at *2, and we thus need not consider them on appeal.

2    Although it is not disputed on appeal, the district court's construction appears unduly broad without specifying that the widget perform any particular functionality beyond that the "software ... may have a user interface." J.A. 67. However, Fintiv appears to agree that its theory of infringement requires identifying a widget in the accused products that allows for the user to interact with credit card information. *See* '125 patent col. 8 l. 60 – col. 9 l. 5; Oral Arg. at 2:14–3:29, available at https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-2208_0306202 5.mp3.

3    At oral argument, the parties agreed to waive confidentiality for all material redacted "in the briefing," save for source code file names. Oral Arg. at 0:20–1:40. This waiver did not clearly extend to material marked confidential in the joint appendix. Nonetheless, we discuss herein material from the appendix that is revealed by the parties' briefs.

4    As explained above, Dr. Shamos conceded that the specific source code files he cited in his report were to identify code for performing certain actions on widgets, not code for a widget itself. Fintiv contends that the district court improperly relied on Dr. Shamos's concessions to find that "passes are not the widget." *Order,* 2023 WL 4237356, at *4. We agree with Fintiv to the extent that the district court meant that "passes" more generally—beyond the specific files cited by Dr. Shamos—could not be the widget or evidence of a widget.

5    Counsel for Apple seemed to agree. *See* Oral Arg. at 22:28–23:22.

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.