James S. Jardine (jjardine@rqn.com / SBN 1647)
Beth J. Ranschau (branschau@rqn.com / SBN 13846)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, UT  84111
Telephone:  (801) 532-1500
Facsimile:   (801) 532-7543

Jonathan J. Lamberson (lamberson@whitecase.com / *Pro Hac Vice*)
Henry Huang (henry.huang@whitecase.com / *Pro Hac Vice*)
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA  940306
Telephone:  (650) 213-0300
Facsimile:   (650) 213-8158

Attorneys for Defendant
MICROSOFT CORPORATION

*Additional counsel listed on signature page*

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| COREL SOFTWARE, LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>MICROSOFT CORPORATION,<br><br>          Defendant. | Case No. 2:15-cv-00528-JNP-DBP<br><br>**DEFENDANT MICROSOFT CORPORATION'S RESPONSE TO COREL'S NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>District Judge Jill N. Parrish<br>Chief Magistrate Judge Dustin B. Pead |

Pursuant to Civil Local Rule 7-1(c), Microsoft respectfully submits this response to Corel's Notice of Supplemental Authority (Dkt. 415).  The case Corel submits was designated as unpublished and non-precedential by the Federal Circuit, likely because its holding is narrow and specific to the unique facts present in that case.

The claim term at issue in *Fintiv* was a "widget," which the district court construed as "software."  Dkt. 415, Ex. A at *2.  The court said the widget "may" have a user interface, which means it may not have a user interface.  *Id*.  The court further said the widget could be an application, or it could just work with an application.  *Id*.  In other words, the widget could be just about anything—any software "may" have an interface, and software can typically work with (i.e., be run by) applications.  The Federal Circuit noted the construction was broad and "does not require the claimed widget to possess any particular functional attributes, nor does it specify what the widget must do in relation to other claim limitations."  *Id*. at *3.  The remainder of the claim apparently related to functionality the expert could observe via the user interface, such as the ability to select a payment method.  *Id*. at *4.  The only question in *Fintiv* was whether there was software that implemented the observed functionality.  *Id*.  The Federal Circuit held that while Fintiv's expert did not identify precise source code, it was reasonable to assume some software must implement the functionality based on what the expert observed in the user interface. *Id*. at *5.

Here, the "font command code" in Corel's claims must do far more than the "widget" at issue in *Fintiv*, and the claimed requirements cannot be observed through the user interface alone.  For example, Corel's "font command code" must be associated with fonts in a drop-down menu, it must be inserted into memory storing the document (not some other memory), it must

be pushed onto the undo stack when confirmation is received from the user, and it must be removed from memory when confirmation is not received from the user. [Dkt. 322-2 ('483 patent), claims 1 & 14]. There is no way to see what codes are placed in or removed from areas of memory, or put on the undo stack, based on the user interface alone. Because Corel and its expert did not identify what the claimed "font command code" is, Corel has no evidence (direct or circumstantial) that any "font command code" meets all of these claimed requirements.

This case is further distinguishable from *Fintiv* because here Corel's expert *did* review the source code for the accused products—he did so because the claims required it. Dr. Bederson said he believes the claimed "font command code" is stored in an XF or XFE data structure. [Dkt. 387-3, Ex. 14, ¶ 555]. Yet when discussing other limitations that require "inserting" and "pushing" the font command code, Dr. Bederson did not discuss the XF data structure, he discussed a different piece of code called an IXFE. [Dkt. 404-48, Ex. 86, ¶¶ 589, 622]. There is no IXFE in an XF. [*Id.*, p.55]. In other words, Dr. Bederson's analysis is inconsistent. As Microsoft explained in its reply (Dkt. 411 at 10), Dr. Bederson had to be inconsistent because there is no way to map the asserted claims to Excel in a consistent manner. This case is thus more analogous to cases Microsoft cited in its opening brief, particularly *Stragent, LLC v. Volvo Car USA, LLC*, No. 22-cv-00293, 2024 U.S. Dist. LEXIS 59312 (D. Del. Apr. 1, 2024), where the district court granted summary judgment because the plaintiff's expert failed to explain *how* the claim limitations were met. *Stragent*, in turn, relied on binding Federal Circuit precedent that holds "opaque identification" of accused functionality by an expert is not enough to avoid summary judgment. *See Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1185 (Fed. Cir. 2009). The same is true here, so summary judgment is appropriate.

Dated:  June 5, 2025                                WHITE & CASE LLP


                                                    By:  */s/ Jonathan J. Lamberson*
                                                          Jonathan J. Lamberson

                                                    Attorneys for Defendant
                                                    MICROSOFT CORPORATION


*Additional Counsel:*

Hallie Kiernan (hallie.kiernan@whitecase.com / *Pro Hac Vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY  10020-1095
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113

Frank E. Scherkenbach (scherkenbach@fr.com / *Pro Hac Vice*)
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02110
Telephone:  (617) 542-5070
Facsimile:   (617) 542-5071

Excylyn Hardin-Smith (hardin-smith@fr.com / *Pro Hac Vice*)
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Attorneys for Defendant
MICROSOFT CORP.