*Corel Software, LLC v. Microsoft Corporation*
Case No. 2:15-cv-00528-JNP-DBP

## Corel's Summary Judgment Presentation
September 9, 2025

## Microsoft's Motion for Summary Judgment

**The '483 claims are not obvious in view of Photoshop 4's slider bar.**

## Summary Judgment Standards

- **"[T]he task of determining whether the construed claim reads on the accused product [or asserted prior art] is for the finder of fact."** *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998).

- **Summary judgment must be denied unless "the movant shows that there is no genuine dispute as to any material fact."** Fed. R. Civ. P. 56(a).

  - **"At summary judgment, . . . the facts in the record are viewed in the light most favorable to . . . the non-movant."** *Yellowbear v. Lampert*, 741 F.3d 48, 56-57 (10th Cir. 2014).

  - **"[A]ll doubt respecting the presence or absence of factual issues must be resolved in favor of the party opposing summary judgment."** *Howes v. Med. Components, Inc.*, 814 F.2d 638, 643 (Fed. Cir. 1987).

3

## Photoshop 4 does not satisfy the claims as a matter of fact.

**Dr. Bederson's technical analysis introduces many fact issues, at least:**

- **Photoshop 4 does not operate on text having "font" or an associated "font command code," because it operates only on images.** Ex. 87, Bederson Rebuttal Report, at ¶¶ 166-171.

- **Photoshop 4 does not identify a font by hovering a cursor over a font, because it requires the user to press the mouse button to select an image editing slider.** *Id.* at ¶¶ 184-192.

- **Photoshop 4 does not identify a font by hovering a cursor over a font, because positioning the mouse cursor over an image editing slider does not have any effect.** *Id.* at ¶ 217.

4

# Photoshop: No Text with Font Command Codes

**Photoshop 4 does not have "text having an associated font command code."**

### '483 Claim 1:

displaying at least part of the active document in the document display window including <mark>text having an associated font command code,</mark> the document display window for editing the active document therein;

'483 Patent at 14:2-33 (claim 1).

5

# Photoshop: No Text with Font Command Codes

**Photoshop 4 does not operate on text that has font or font command codes. It operates only on images.**

## Dr. Bederson's opinions:

166.    None of these examples relate to "fonts" or "font command codes" as claimed. Rather, they relate to the adjustment of certain Photoshop 4 layer properties like Levels, Brightness/Contrast, Opacity, and Hue/Saturation.

167.    Once text is drawn to create a new image layer, Photoshop 4 operates on that layer no differently than any other layer.

168.    The Levels, Brightness/Contrast, Opacity, and Hue/Saturation controls operate on a Photoshop 4 layer that modify pixel values, not on any text attributes including font face, size and color.

Ex. 95 (Dkt. 404-54), Bederson Rebuttal Report, at ¶¶ 166-171.

6

# Photoshop: No Text with Font Command Codes

**Photoshop 4 does not operate on text that has font or font command codes. It operates only on images.**

**Dr. Bederson's opinions:**

> 171.  The Photoshop 4 User Guide further describes the Levels, Brightness/Contrast, Opacity, and Hue/Saturation controls as tools for modifying *images*. MS_COREL_00340474 at 494 ("Adobe Photoshop provides a full range of tools for retouching images, including dodge and burn tools, as well as features for adjusting color, contrast, hue, and saturation."); *see also id.* at 593, 599, 606-607, 613-615, 621, 677, and 740-744.

Ex. 95 (Dkt. 404-54), Bederson Rebuttal Report, at ¶¶ 166-171.

## Photoshop: No Text with Font Command Codes

**Photoshop 4 does not operate on text that has font or font command codes. It operates only on images.**



Bederson Decl. (Dkt. 402-1), Exhibit 1 (filed nonelectronically at Dkt. 405); Ex. 95 (Dkt. 404-54), Bederson Rebuttal Report, at ¶¶ 166-171.

## Photoshop: No Text with Font Command Codes

**Photoshop 4 does not operate on text that has font or font command codes. It operates only on images.**



Bederson Decl. (Dkt. 402-1), Exhibit 4 (filed nonelectronically at Dkt. 405); Ex. 95 (Dkt. 404-54), Bederson Rebuttal Report, at ¶¶ 166-171.

9

## Photoshop: No Identification by Hovering Over a Font

**Photoshop 4 does not perform "identifying a font by hovering of the cursor over the font."**

**'483 Claim 1:**

> identifying a font by hovering of the cursor for a predetermined period of time over the font displayed in a menu or toolbar option of the document display window, the menu or toolbar option providing one or more available fonts, each of the available fonts associated with a respective font command codes that can be applied to the active document;

'483 Patent at 14:2-33 (claim 1).                                                    10

# Photoshop: No Identification by Hovering Over a Font

**Photoshop 4 does not identify a font by hovering over a font. Positioning the cursor over the slider does not trigger any effect.**

**Dr. Bederson's opinions:**

186.    In the case of the Photoshop 4 slider, after positioning the mouse cursor above the slider, the user must select the slider by then depressing the mouse button. The user then must keep the mouse button depressed to continue to interact with the slider. A POSITA at the time of the invention would not consider positioning a mouse over an object plus depressing a mouse button to be a hover.

Ex. 95 (Dkt. 404-54), Bederson Rebuttal Report, at ¶¶ 184-192.

# Photoshop: No Identification by Hovering Over a Font

## Microsoft's source code expert, Dr. Plock:

Q.   Okay.  And if you just position the cursor above the slider buttons in the -- in the Photoshop functionality, what would happen?  If it was just -- literally just positioned above it?

A.   If you move the cur -- are we talking about whether buttons are up or down?

Q.   If you literally just put the cursor over the command, the four commands that you describe, what would happen?

MR. LAMBERSON:  Object --

THE WITNESS:  Well, it --

MR. LAMBERSON:  Object to form.

THE WITNESS:  -- depends if the mouse is up or down.  If the mouse is up, nothing will happen.  If the mouse is down, then it'll drag the slider.

18    Q.   Okay.  So, now, I'm not going to use
19  the word "hover" so we don't have a dispute.  And I'm
20  saying, what happens if the only act that is taken is
21  the cursor is positioned above a command in the
22  dialogue box?
23    A.   Depends on whether the mouse button is
24  down or up.
25    Q.   And if no other acts are taken other
1  than positioning the cursor above the command in the
2  Adobe source code, what happens?
3    A.   If you're asking what happens if the
4  button is up and you position the cursor as you
5  described, then nothing.

Ex. 95 (Dkt. 404-54), Plock Dep., at 50:9-24, 51:18-52:5; Ex. 95 (Dkt. 404-54), Bederson Rebuttal Report, at ¶¶ 186, 189.

12

# Photoshop: No Identification by Hovering Over a Font

**Photoshop 4 does not identify a font by hovering over a font. Positioning the cursor over the slider does not trigger any effect—even after depressing the mouse button.**

**Dr. Bederson's opinions:**

> 217.    The slider is unlabeled and provides no indication of the Levels values at the various positions of the slider other than by way of an editable text box ("Output Levels") found above the slider itself. Once a user has grabbed the slider, the Levels are adjusted as the user moves the mouse horizontally across the screen. ==The Levels are not adjusted by virtue of the user hovering over a particular value.==

Ex. 95 (Dkt. 404-54), Bederson Rebuttal Report, at ¶ 217.

# Photoshop: No Identification by Hovering Over a Font

**Photoshop 4 does not identify a font by hovering over a font.
Positioning the cursor over the slider does not trigger any effect.**



Bederson Decl. (Dkt. 402-1), Exhibit 6 (filed nonelectronically at Dkt. 405); Ex. 95 (Dkt. 404-54), Bederson Rebuttal Report, at ¶ 217.          14

# Photoshop: Fact Issues for the Jury

- **The Court should not grant summary judgment of obviousness because evidence shows that Photoshop 4 does not satisfy the '483 claim elements.**

- **The parties' experts disagree about the application of the claims to the prior art—this is a fact issue for the jury.**

15

## Microsoft's Motion for Summary Judgment

**The '483 method steps are satisfied under the plain language of the claim.**

## Method Steps: Infringement

- **The plain language of the claim and express embodiments in the specification show that the steps at issue are conditional.**

- **Microsoft's new claim construction reads the preferred embodiment out of the claim.**

- **Microsoft's motion does not challenge that Corel's infringement evidence satisfies this plain language of the claim.**

# Legal Standard: Method Claims

- **"To establish liability for direct infringement of a claimed method or process under 35 U.S.C. § 271(a), a patentee must prove that each and every step of the method or process was performed."** *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013) (citations omitted).

- **"It is of course true that method steps may be contingent. If the condition for performing a contingent step is not satisfied, the performance recited by the step need not be carried out in order for the claimed method to be performed.** *Cybersettle, Inc. v. National Arbitration Forum, Inc.*, 243 Fed. Appx. 603, 607 (Fed. Cir. 2007) (unpublished).

18

# '483 Claim 1

**1**. A method of providing a real time preview of changes to fonts in a computer system operating a document editing program having a document display window, comprising:

storing an active document in a memory medium;

displaying at least part of the active document in the document display window including text having an associated font command code, the document display window for editing the active document therein;

tracking a cursor position controlled by a user in the document editing program;

identifying a font by hovering of the cursor for a predetermined period of time over the font displayed in a menu or toolbar option of the document display window, the menu or toolbar option providing one or more available fonts, each of the available fonts associated with a respective font command codes that can be applied to the active document;

inserting the font command code corresponding to the identified font into the memory medium storing the active document and

updating the display of the active document in the document display windows to show the impact of the inserted font command code on the display of the text of the active document, without confirmation being received from the user;

pushing the font command code corresponding to the identified font to the undo stack when a subsequent confirmation is received from the user; and

removing the font command code corresponding to the identified font from the memory medium when subsequent confirmation is not received from the user or when another font command code is identified.

'483 Patent at 14:2-33 (claim 1).

19

# '483 Claim 1

**Claim 1 recites conditional method steps based on whether "a subsequent confirmation is received from the user."**

> pushing the font command code corresponding to the identified font to the undo stack when a subsequent confirmation is received from the user; and
> removing the font command code corresponding to the identified font from the memory medium when subsequent confirmation is not received from the user or when another font command code is identified.

'483 Patent at 14:2-33 (claim 1).

20

# '483 Figure 2



'483 Patent at Fig. 2.

# '483 Claim 1 & Figure 2

pushing the font command code corresponding to the iden-
tified font to the undo stack when a subsequent confir-
mation is received from the user; and
removing the font command code corresponding to the
identified font from the memory medium when subse-
quent confirmation is not received from the user or when
another font command code is identified.



'483 Patent at 14:27-33 (claim 1), Fig. 2.

22

# '483 Specification & Figure 2

In a preferred embodiment of the invention for text editing routines, it is intended that the User confirm or accept the identified command, shown as step **54**. Such a query to the User may be provided as a dialogue box in a command window, or by similar means. If the User confirms the identified command, then the program need only push the identified command unto the Undo Stack at step **56**, which contains a listing of the executed commands in sequential order, and close the menu or toolbar at step **58**. Again, implementation of such subroutines are known in the art and are generally already available in most application programs if they are required.



'483 Patent at 8:4-15 (describing Fig. 2), Fig. 2.                    23

# Legal Standard: Method Claims

- **"The Board's decision in *Schulhauser* is closer to the situation we have in this case because it presented two alternative conditions and described a response to each. . . . In *Schulhauser*,** nothing in the earlier steps of the claim suggested that the claimed method would be incomplete after the triggering step**. Thus, each alternative condition could reasonably be construed as a standalone method claim . . . ."** *Hytera Commc'ns Co. Ltd. v. Motorola Solutions, Inc.*, 841 Fed. Appx. 210, 217 (Fed. Cir. 2021) (unpublished) (citations omitted).

24

# Microsoft's Motion for Summary Judgment

**Dr. Bederson cites extensive evidence identifying the "font command code" in Excel and showing how it is used, creating issues of material fact on infringement.**

## Bederson Font Command Code Opinions and Evidence

**The Court may not grant summary judgment because Dr. Bederson cites extensive record evidence identifying the "font command code" in Excel as contained in the XF data structure which controls font formatting, including:**

1. Testimony of Microsoft witnesses

2. Microsoft documents

3. Discussions with and opinions of Corel's source code expert Dr. Levitt

4. Dr. Bederson's own review of Microsoft source code for Excel

5. Dr. Bederson's own testing and operation of the accused Excel products

# Testimony of Microsoft Witnesses (Bederson Report, ¶ 216)

**Microsoft Partner Group Engineering Manager Matthew Androski (more than 22 years working on Excel):**



Q. All right. If I change my question text in a cell in Microsoft Excel from black to red?

**A. Right.**

Q. Is there any location in Microsoft Excel that's going to know the text is now red?

**A. Yes.**

Q. And is there some code that represents that red color in Excel?

**A. It's represented by an XF in the format table containing that information. And then that XF would be indexed from the cell that you changed.**

Ex. 98 (Dkt. 404-57), Androski Dep. II, at 248:10-21; Ex. 86 (Dkt. 404-48), Bederson Report, at ¶ 216.

28

# Microsoft Documents (Bederson Report, ¶ 216)

*Excel Formatting*

1/24/2004

## Excel formatting

- XFs are used to store formatting information
- Six major categories of information in the XF
  - Font – (type family, type face, color, text size)
  - Number format – (including custom user formats)
  - Alignment – (vertical, horizontal, rotation, fill)
  - Borders – (borders, colors, and line types)
  - Fill – (foreground, background, and pattern)
  - Protection

Ex. 87 (Dkt. 404-49) at 81; MS_COREL_00503561 at 563; Ex. 86 (Dkt. 404-48), Bederson Report, at ¶ 216.

29

# Bederson Limitation-by-Limitation Analysis and Application

**Font command code:**

1) **Being associated with fonts in the font dropdown menu**
   - ➢ **Summary of Opinion**: font formatting information is associated with text in a cell via an index to an XFE that contains the font formatting code (Bederson Rpt. ¶¶ 214-216, 552-555, 578, 581; Bederson Dep. 84:8-23).
   - ➢ **Evidence relied on**: MS_COREL_00503563-64; Androski Dep. 248:10-21 (Dkt. 404-48); Little Dep. 88:10-89:15 (Dkt. 404-58); Levitt Rpt. ¶¶ 208, 286 (Dkt. 404-49).

2) **Being inserted into the memory**
   - ➢ **Summary of Opinion**: Either (1) insert new XFE with the font formatting information into memory (if no other cell has same font format) OR (2) set cell ixfe index to point to existing XFE in memory (if another cell has same font) (Bederson Rpt. ¶¶ 219-221, 589, 593-598; Bederson Dep. 92:10-24).
   - ➢ **Evidence relied on**: MS_COREL_00503502; MS_COREL_00503568; Androski Dep. 248:10-21; Little Dep. 88:10-89:15; Levitt Rpt. ¶¶ 209, 267-282.

30

## Bederson Limitation-by-Limitation Analysis and Application

3) **Impact of insertion**

   ➢ **Summary of Opinion**: Font changes on screen after insertion (Bederson Rpt. ¶¶ 605-607).

   ➢ **Evidence relied on**: Levitt Rpt. ¶ 227.

4) **Being placed on the undo stack when the font is confirmed**

   ➢ **Summary of Opinion**: Copy ixfe to XFE with current font into undo record and push record to undo stack (Bederson Rpt. ¶¶ 232-234, 620-623; Bederson Dep. 99:24-101:21, 103:17-104:2, 106:15-107:16).

   ➢ **Evidence relied on**: Androski Dep. 205:25-209:25, 211:19-213:25; MS_COREL_00503509; MS_COREL_00503577; Levitt Rpt. ¶ 312.

5) **Being removed from the document when the font is not confirmed**

   ➢ **Summary of Opinion**: Undo application undoes the application of the previous command (Bederson Rpt. ¶¶ 634-639).

   ➢ **Evidence relied on**: MS_COREL_00001372; MS_COREL_00000139; Androski Dep. 31:7-32:10; Little Dep. 181:6-192:6.

31

# Excel Infringement: No Summary Judgment

- **Dr. Bederson relies on extensive record evidence in identifying the font command code and explaining how it used as part of the XF data structure to meet all relevant claim limitations.**

- **The jury must decide whether the XF data structure contains the font command code and whether that font command code meets all relevant claim limitations.**

32

# Microsoft's Motion for Summary Judgment

## The jury must decide whether Corel is entitled to pre-suit damages.

## Marking presents a question of fact.

**"Compliance with § 287 is a question of fact."**

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017).

**"[A] delay between issuance of the patent and compliance with the marking provisions of section 287(a) will not prevent recovery of damages after the date that marking has begun. . . . [O]nce marking has begun, it must be substantially consistent and continuous in order for the party to avail itself of the constructive notice provisions of the statute."**

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993).

# Evidence of Pre-Suit Marking: Corel's Virtual Patent Marking

Q.   So, for example, does Corel list its patents    13:49:28
on the physical packaging of the product?    13:49:34

A.   Yes.  From what time frame?    13:49:38

Q.   That was going to be my next question.  So    13:49:52
let's start this way:  Does Corel currently mark    13:49:59
physical copies of WordPerfect Office with    13:50:02
notifications of its patents?    13:50:09

A.   We have a virtual patent marking page, which    13:50:11
is on every product package as well as within the    13:50:17
in-product copyright.    13:50:24

Q.   And do you actually list the patents or do    13:50:38
you provide a link to the virtual patent marking    13:50:47
page?    13:50:51

A.   We provide a link to the virtual patent    13:50:51
page.    13:50:55

Q.   And is your answer the same for the physical    13:50:55
product marking that you discussed?    13:50:59

A.   Yes.    13:51:02

Q.   And at what date did Corel begin marking    13:51:03
WordPerfect Office in that manner?    13:51:10

A.   We began virtual marking in September --    13:51:12
August, September of 2013.    13:51:21

Ex. 89 at 141:2-142:2 (Dkt. 404-51); *see also* COREL FACTS 1, 2, 3 (Dkt. 404 at 10-11).    35

# Evidence of Pre-Suit Marking: Corel's Virtual Patent Marking

Q. Okay. How about for CorelDRAW, what -- by     13:55:09
what methods does Corel currently mark this        13:55:27
product?                                           13:55:30
A. We currently mark it with the virtual patent   13:55:30
marking.                                           13:55:34
Q. And did that also -- strike that.              13:55:34
   Is that also marked both on the physical       13:55:43
product and in the software "About" notice?       13:55:45
A. Yes, it is.                                     13:55:49
Q. And did that also begin in September 2013?     13:55:50
A. Yes, it did.                                    13:55:56

Ex. 89 at 144:9-19 (Dkt. 404-51); *see also* COREL FACTS 1, 2, 3 (Dkt. 404 at 10-11).                    36

# Evidence of Pre-Suit Marking: Corel's Virtual Patent Marking



Corel Corporation and Affiliates -- Virtual Patent Marking

The following Corel® products and the use of such products are protected by, or otherwise contain or practice all elements of, patents in the United States and elsewhere, including those listed below. This website is provided to satisfy the patent marking provisions of the United States and other jurisdictions, including but not limited to the provisions on virtual marking in 35 U.S.C. § 287(a), as amended under the America Invents Act. This list of products may not be all-inclusive, and other Corel® products not listed here may also be protected by one or more patents. In addition to the patents listed below, other patents may be issued or pending in the United States and elsewhere. This information is subject to change without notice. All rights reserved. Requests of any kind should be directed to legal.requests@corel.com.

| Product Name | Covered by one or more of the following United States Patents and their foreign counterparts |
|---|---|
| CorelDRAW® | 6195100; 6552725; 6657739; 6825859; 6959422; 7086006; 7207047; 7256793; 7515752; 7640500; 6731309; 7827483; 8397176 |
| Corel® Painter® | 5767860; 6731309; 6595422; 6657739; 6825859; 6959422; 7079153; 8250488; 8493340 |
| Corel® PaintShop® Pro | 6731309; 6826310; 6850651; 6868179; 6950211; 6980691; 7003174; 7006688; 7050651; 7057768; 7218795; 7239331; 7251361; 7277206; 7319787; 7386190; 7443533; 7609894; 7720291; 7782338; 7826668; 7827483; 7840,074; 7940988; 7945126; 7990381; 8081196; 8086049; 8115782; 8144980; 8233725; 8254730; 8270709; 8358306 |
| Corel® Photo Video Suite™ | 5828380; 6542863; 6601032; 6678648; 6731309; 6826310; 6850651; 6868179; 6876705; 6940903; 6940907; 6944224; 6950211; 6970506; 6980691; 6990151; 6993075; 6999919; 7003033; 7003174; 7006688; 7042948; 7050651; 7057768; 7110452; 7133451; 7149592; 7164716; 7164717; 7197072; 7215712; 7218795; 7221706; 7224730; 7236520; 7239331; 7242715; 7251361; 7260150; 7269331; 7274864; 7276656; 7277206; 7319787; 7386190; 7443533; 7609894; 7720291; 7782338; 7826668; 7827483; 7840074; 7940988; 7945126; 7990381; 8081196; 8086049; 8115782; 8135067; 8144980; 8224153; 8233725; 8254730; 8270709; 8358306 |
| Corel® VideoStudio® Pro | 5828380; 6542863; 6601032; 6678648; 6731309; 6850566; 6876705; 6940903; 6940907; 6944224; 6970506; 6990151; 6993075; 6999919; 7003033; 7042948; 7110452; 7133451; 7149592; 7164716; 7164717; 7197072; 7215712; 7221706; 7224730; 7236520; 7242715; 7260150; 7269331; 7274864; 7276656; 7827483; 7945126; 7940988; 8115782; 8135067; 8224153; 8254730 |
| Corel® WordPerfect® Office | 6225996; 6317758; 6731309; 6959422; 7827483 |

**7827483;**

# Evidence of Pre-Suit Marking: Corel's Virtual Patent Marking



Ex. 91 (Dkt. 402-8).

38

# Evidence of Pre-Suit Marking: Corel's Virtual Patent Marking



Ex. 92 (Dkt. 402-9).

## Microsoft's Disagreements Go to Weight, Not Admissibility

- **"Verizon points out various weaknesses in the damages assessment by ActiveVideo's expert. At their core, however, Verizon's disagreements are with the conclusions reached by ActiveVideo's expert and the factual assumptions and considerations underlying those conclusions, not his methodology. These disagreements go to the weight to be afforded the testimony and not its admissibility."** *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012).

89