IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| COREL SOFTWARE, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:15-cv-00528-JNP-DBP<br><br>District Judge Jill N. Parrish |

Plaintiff Corel Software, LLC sued defendant Microsoft Corporation for patent infringement. Before the court are three pending motions in this action: (1) Microsoft's combined motion for summary judgment and to exclude expert testimony, ECF No. 385, (2) Corel's motion to exclude expert testimony of Dan Olsen, ECF No. 379, and (3) Corel's motion to exclude expert testimony of John Hansen, ECF No. 382. The court GRANTS Microsoft's motion to the extent that it seeks summary judgment in its favor. Accordingly, the portion of the motion seeking the exclusion of Corel's expert testimony is MOOT. The court likewise finds Corel's motions to exclude Microsoft's expert testimony to be MOOT.

## BACKGROUND

Corel asserts that Microsoft's products infringe Claims 1, 2, 3, 4, 6, 7, 11, and 14 of U.S. Patent No. 7,827,483 (the '483 patent). Microsoft argues that it cannot be liable for infringement because these claims are invalid in light of the prior art—specifically, Adobe Photoshop 4.

Photoshop 4 is a graphic editing computer program that was first sold in the United States in November 1996. It allows users to create and edit documents containing images and text. The

user can insert text into the document by opening the "Type Tool" dialogue box,[1] which permits the selection of various fonts, font sizes, and font styles, such as bold and italic. The user can type text in the dialogue box using these options and then transfer the text to the document display window by clicking the "OK" button.

The user can adjust the color of text in the document display window by opening one of several dialogue boxes. For example, the "Hue/Saturation" dialogue box contains three horizontal slide toolbars: one for hue, one for saturation, and one for lightness. To modify the color of the text, the user positions the cursor over one of the sliders, grabs it by clicking and holding the mouse, and then moves the slider left or right to change the hue, saturation, or lightness values for the color of the text. While the slider is in motion, the text in the document display window does not change. But if the "Preview" option is selected, when the user hovers the cursor over a position on the slide bar for a fraction of a second, the color of the text in the document changes to reflect the selected value. The user can then move the slider to a different location on the bar and hover to preview the color of the text for another value. When the user is finished, he or she releases the slider by unclicking the mouse, which locks the slider into place. The user can repeat this process with the three available sliders until he or she is satisfied with the color of the text previewed in the document display window. If the user then clicks the "OK" button, the dialogue box closes and the previewed color values for the text in the active document remain in place. If the user instead clicks on the "Cancel" button, the dialogue box closes, and the text in the document display

---

[1] The '483 patent uses the spelling "dialogue box" and "dialogue window," rather than the more common spelling "dialog box" and "dialog window." The court likewise employs the spelling "dialogue" in this order to maintain consistency with the patent.

window reverts to the color values in place before the user had opened the "Hue/Saturation" dialogue box.

In November 2010, the United States Patent and Trademark Office issued the '483 patent to Corel, which describes a method for previewing font changes in document editing programs. This patent has a priority date of August 28, 1998. Claim 1 of the '483 patent is an independent method claim, which describes the invention as follows:

> **1.** A method of providing a real time preview of changes to fonts in a computer system operating a document editing program having a document display window, comprising:
>
> storing an active document in a memory medium;
>
> displaying at least part of the active document in the document display window including text having an associated font command code, the document display window for editing the active document therein;
>
> tracking a cursor position controlled by a user in the document editing program;
>
> identifying a font by hovering of the cursor for a predetermined period of time over the font displayed in a menu or tool bar option of the document display window, the menu or toolbar option providing one or more available fonts, each of the available fonts associated with a respective font command codes [sic] that can be applied to the active document;
>
> inserting the font command code corresponding to the identified font into the memory medium storing the active document and
>
> updating the display of the active document in the document display windows to show the impact of the inserted font command code on the display of the text of the active document, without confirmation being received from the user;
>
> pushing the font command code corresponding to the identified font to the undo stack when a subsequent confirmation is received from the user; and

3

removing the font command code corresponding to the identified font from the memory medium when subsequent confirmation is not received from the user or when another font command code is identified.

'483 patent at 14:2–33.

Claims 2, 3, 4, 6, 7, and 11 are dependent on Claim 1. These dependent method claims are described as follows:

**2.** The method of claim **1** wherein the font comprises a font face.

**3.** The method of claim **1** wherein the font comprises a font size.

**4.** The method of claim **1** wherein the font comprises a font color.

. . .

**6.** The method of claim **1** wherein pushing the font command code corresponding to the font to the undo stack when the subsequent confirmation is received by the user, further comprises closing the menu or tool bar option.

**7.** The method of claim **1** further comprising selecting desired text to change within the active document before responding to the identified font.

. . .

**11.** The method of claim **1** wherein the document editing program is a spreadsheet program.

*Id.* at 14:34–63.

Claim 14 is an independent claim that describes "[a] computer readable memory providing instructions for executing" the method described in Claim 1. *Id.* at 15:1–2.The limitations of Claim 14 are nearly identical to the limitations of Claim 1.

In July 2015, Corel sued Microsoft, alleging that several of its products infringe the above-listed claims of the '483 patent. Microsoft moves for summary judgment on the '483 patent claims,

4

arguing that Corel cannot prevail on its infringement claims as a matter of law because the asserted patent claims are invalid in light of Photoshop 4.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Microsoft argues that it is entitled to summary judgment because the patent claims asserted by Corel are invalid. "The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282(a). An invalidity defense must be proven by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). Microsoft's invalidity argument turns on the resolution of two types of disputes.

First, the parties disagree regarding the extent to which Photoshop 4 anticipates (i.e., discloses) the limitations of the claims asserted by Corel. "While anticipation is a question of fact, 'it may be decided on summary judgment if the record reveals no genuine dispute of material fact.'" *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1331 (Fed. Cir. 2010). Corel's arguments that Photoshop 4 does not anticipate some of the limitations of the '483 patent largely rest on its proposed interpretation of terms found in the asserted patent claims. The proper construction of words or phrases found in a patent claim is a question of law for the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 387 (1996).

Second, the parties dispute whether some of the claims would have been obvious in light of the teachings of Photoshop 4. "The ultimate judgment of obviousness is a legal determination. Where . . . the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these

factors, summary judgment is appropriate." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) (citation omitted).

## ANALYSIS

Only inventions that are both novel and nonobvious are patentable. 35 U.S.C. §§ 102(a), 103. An invention is not novel if each limitation described in a patent claim is expressly or inherently described in a single prior art reference. *See Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008). Moreover, an invention is unpatentable as obvious if any limitations not described in a prior art reference would have been apparent to a person of ordinary skill in the art before the effective filing date of the claimed invention. *See* 35 U.S.C. § 103.

Microsoft argues that Claims 1, 2, 3, 4, 6, 7, 11, and 14 the '483 patent are all invalid as obvious when compared to the relevant prior art. It contends that most of the limitations of each of these claims were described in Photoshop 4, which was available in the United States well over a year before the August 28, 1998 effective filing date of the '483 patent. [2] Microsoft further asserts that the limitations that were not described in Photoshop 4 would have been obvious to a person of ordinary skill in the art. Because patent validity must be determined on a claim-by-claim basis, the court considers Microsoft's arguments as to each asserted patent claim. *See Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1379–80 (Fed. Cir. 2002) (citing 35 U.S.C. § 282).

-------

[2] Because Corel filed its application for the '309 patent prior to March 16, 2013, the court applies the pre-America Invents Act version of 35 U.S.C. § 102 in this action. *See* Leahy–Smith America Invents Act, Pub. L. No. 112-29, September 16, 2011, 125 Stat. 284, 293. Under this version of the statute, a prior art reference must be "in public use or on sale in this country, more than one year prior to the date of the application for patent" in order to invalidate the patent. 35 U.S.C. § 102 (2002).

## I.    CLAIMS 1 AND 14

Because the limitations of Claim 1 and Claim 14 are nearly identical, the court considers them together. Microsoft argues that almost all of the limitations of these two claims were described in Photoshop 4, including: storing a document in memory, displaying the document in a document display window, tracking a cursor, identifying a font by hovering, inserting the font command code, updating the display of the active document, and removing the font command code when confirmation is not received. Microsoft acknowledges that Photoshop 4 does not describe the limitation of "pushing the font command code corresponding to the identified font to the undo stack when a subsequent confirmation is received from the user." '483 patent at 14:27–29. But it asserts that this limitation would have been obvious.

Corel does not contest that pushing the font command code to the undo stack would have been an obvious modification. Instead, it argues that Photoshop 4 does not disclose (1) limitations based on "font" or "font command codes" or (2) the limitation of "identifying a font by hovering." Corel contends that because Photoshop 4 does not anticipate these limitations of Claims 1 and 14, they cannot be obvious in light of the prior art.

In resolving these disputes, the court first addresses whether Photoshop 4 discloses the font limitations and the hovering limitation of Claims 1 and 14. Because the court answers these questions in the affirmative, the court then looks to whether the undo stack limitation would have been obvious to a person of ordinary skill in the art.

### A.    "Font" and "Font Command Code" Limitations

Several of the limitations of Claims 1 and 14 use the terms "font" or "font command code," including: (1) displaying a document "including text having an associated font command code," (2) "identifying a font by hovering," (3) "inserting the font command code corresponding to the

identified font into the memory medium," and (4) "updating the display of the active document . . . to show the impact of the inserted font command code." '483 patent at 14:6–24, 15:9–16:9. Corel argues that Photoshop 4 does not disclose the limitations employing the terms "font" and "font command code" because Photoshop 4 displays text as a single image. When a user of Photoshop 4 enters text into the document display window via the Type Tool dialogue box, the text is displayed as a unitary image on the screen. Individual letters or words can no longer be isolated and edited sperate from the other letters or words within the image. Corel contends that the text appearing in the display window is no different from any other image and that changes made to the displayed text are "simply adjusting images and not, *inter alia*, providing a real time preview of changes to fonts." ECF No. 402 at 16.

Corel, therefore, argues that Photoshop 4 does not disclose the "font" and "font command code" limitations because the definition of these terms, as they are used in the '483 patent, excludes the methods taught by Photoshop 4. Corel's contention hinges on its proposed construction of "font" and "font command codes," which is a question of law for the court. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 387 (1996). "[T]he words of a claim 'are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (citation omitted). In determining the ordinary and customary meaning of a term, courts first look to intrinsic evidence, which includes "the patent claims and specifications, along with the patent's prosecution history." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). "In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant

8

time period." *Id.* at 331. Extrinsic evidence includes "expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317.

Corel does not support its proposed construction of "font" and "font command code"—i.e., to exclude the attributes of a block of text displayed as a single image—with intrinsic evidence such as language within the patent or its prosecution history. Nor does it properly support its arguments with extrinsic evidence. Corel's expert gives an opinion regarding how Photoshop 4 functions. He also cites manuals for Photoshop 4 that confirm that this program displays text as an image. Corel's expert, however, does not give an opinion as to the commonly understood meaning of the terms "font" or "font command code" by practitioners of the art of creating document editing programs at the time that Corel applied for a patent. In short, Corel's expert does not opine that "font" excluded the attributes of text displayed as an image on a computer screen. Absent either intrinsic or extrinsic evidence to support its proposed construction, Corel has not met its burden of persuasion.

Indeed, the extrinsic evidence Corel relied on during the *Markman* hearing to interpret the term "font" contradicts its assertion in this summary judgment proceeding.[3] In its *Markman* briefing, Corel argued that this term should be given its plain and ordinary meaning, and "[t]o the

---

[3] In the *Markman* proceedings, Microsoft argued that both the language of the specification of the '483 patent and the doctrine of prosecution disclaimer required the court to limit the definition of "font" to "font face, font size, or font color." ECF No. 320 at 13. Corel, on the other hand, argued that "font" should be given a broader definition. It contended that the term should be given its plain and ordinary meaning, and "[t]o the extent a construction is helpful" it should be defined as "a set of attributes for text characters." ECF No. 321 at 12. The court rejected Microsoft's proposed narrow construction and held that "font" should be given its plain and ordinary meaning. The court acknowledged that by adopting the plain and ordinary meaning of the term it was essentially deferring the question of a definitive interpretation of "font" and noted that further interpretation of the term might be required at a future stage of the litigation.

extent a construction is helpful," it should be defined as "a set of attributes for text characters"—the same definition provided for this term in the 1995 publication, *Windows Interface Guidelines for Software Design*. ECF No. 321 at 12. In short, Corel's own proposed definition of "font" focuses on the appearance of the text characters and not on whether the characters are displayed as an image or whether they are individually editable.

Based on Corel's own proposed definition of "font" in the *Markman* briefing, the court rejects its proposed construction. Corel argues that because a block of text is displayed as a single image in Photoshop 4, the preview functionality of that software program "operates on image attributes" and not on a font. ECF No. 402 at 16. In other words, it contends that Photoshop 4 only displays a picture and not text with font characteristics. But this attempt to distinguish text displayed in Photoshop 4 from text displayed in other document editing programs fails. Even document editing programs that permit text to be edited at the level of each individual character, such as Word or WordPerfect, display each character as an image on a computer screen. The fact that text is displayed as an image does not mean that the text has no font characteristics such as font face, font size, or font color. Moreover, whether individual characters are editable does not determine whether text has font characteristics. Text printed on paper is not easily editable at all, but printed words are considered to have font features. In short, the particular medium where text is displayed, whether pixels on a screen, words printed in a book, or the word "STOP" painted on a sign at an intersection, does not determine whether the text has font characteristics such as the shape and style of the characters, size, or color.

Accordingly, the definition of "font" and "font command code" as used in the '483 patent does not exclude the font characteristics of text displayed in Photoshop 4 or command codes

related to those font characteristics. Thus, Photoshop 4 anticipates the limitations of Claims 1 and 14 that employ these terms.

        B.        *"Identifying a Font by Hovering" Limitation*

        Claims 1 and 14 of the '483 patent contain the following limitation: "identifying a font by hovering of the cursor for a predetermined period of time over the font displayed in a menu or toolbar option of the document display window." '483 patent at 14:12–14, 15:16–18. Corel argues that Photoshop 4 does not disclose this limitation for four reasons.

        First, Corel relies on expert testimony to support its contention that the term "hovering" means positioning the cursor in a particular screen location with the mouse in the unclicked position. It asserts that because Photoshop 4 discloses identifying a font color by positioning and pausing the cursor over a font selection with the mouse in the clicked position, Photoshop 4 does not disclose this limitation. But Corel's reliance on extrinsic expert testimony regarding the meaning of "hovering" is improper because it conflicts with the intrinsic evidence.

        "[E]xtrinsic evidence in general, and expert testimony in particular, may be used only to help the court come to the proper understanding of the claims; it may not be used to vary or contradict the claim language. Nor may it contradict the import of other parts of the specification." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996) (citation omitted). "Indeed, where the patent documents are unambiguous, expert testimony regarding the meaning of a claim is entitled to no weight." *Id.* Corel explicitly defined "hovering" in the specification of the '483 patent: "The cursor being positioned above a command is generally described as hovering, and is used to identify commands." This definition, which excludes any reference to the mouse being unclicked or clicked, controls. *See Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1380 (Fed. Cir. 2009) ("When a patentee explicitly defines a claim term in the patent

specification, the patentee's definition controls."). Corel may not resort to extrinsic expert testimony to vary or limit this definition of "hovering" to exclude hovering while the mouse is clicked.

Second, Corel argues that Photoshop 4 does not anticipate the hovering limitation because it teaches the selection of a font color by grabbing and dragging a slider rather than hovering over a font selection. But this contention misstates the operation of Photoshop 4. Grabbing and dragging the slider in Photoshop 4 does not identify a font for display in the active document. The font selection is not identified until the user hovers the cursor over a font color selection for at least a fraction of a second. Thus, the operation of pausing the cursor for a period of time identifies the font, just as described in the hovering limitation of Claims 1 and 14.

Third, Corel argues that because the user must open a dialogue box in order to identify a font color selection, Photoshop 4 does not disclose identifying a font "in a menu or toolbar option of the document display window." '483 patent at 14:13–14. It contends that the dialogue box is separate and distinct from the document display window and, therefore, not a menu or tool bar option *of* that window. But this interpretation of the hovering limitation impermissibly contradicts the specification of the '483 patent. Describing a diagram of the preferred embodiment of the invention, the specification states:

> At step **10** the software application program notes that a menu or toolbar option has been identified. As described above, available commands may be presented and selected from menus and toolbars which may be set up as pull down menus, dropdown controls, toolbar combo-boxes, toolbar grid-pickers, and dialogue boxes.

*Id*. at 3:63–4:1. The specification also describes a preferred embodiment for text editing programs, stating that font commands may be identified by "hovering over a menu or toolbar option," which "may be presented by the application program in a number of manners including pull down menus

and dialogue boxes." *Id*. at 6:45–49. Because the preferred embodiment of the invention described in the specification explicitly includes identifying a font selection in a dialogue box, the court rejects Corel's construction of the claim language, which would exclude the preferred embodiment. *See  SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) ("A claim construction that excludes a preferred embodiment . . . 'is rarely, if ever, correct.'" (citation omitted)).

Fourth, Corel asserts that Photoshop 4 does not identify a font while hovering because it is possible for the user to identify a font without hovering directly on top of the desired selection. After the user grabs a slider by clicking and holding while the cursor is located over it, he or she can move the cursor up or down until it is above or below the horizonal slide bar. If the user then moves the cursor to the left or the right, the slider will follow the horizontal movement. And when the user hovers the cursor above or below the slide bar, the selected color value is previewed in the document display window even though the cursor is not hovering directly on top of the selected value. But the fact that Photoshop 4 discloses identifying a font by hovering above or below the desired color value on the slide bar does not prevent this program from disclosing the normal operation of grabbing and dragging the slider until the user hovers the cursor on top of  selected color value. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1319 (Fed. Cir. 2009) (holding that the fact that a prior art reference performed functions in addition to the patented function did not prevent the prior art reference from anticipating a limitation of a patent claim). Because Photoshop 4 teaches identifying a font by hovering the cursor over a font option, it anticipates this limitation.

Accordingly, the court rejects Corel's arguments and finds that Photoshop 4 discloses the "identifying a font by hovering" limitation of Claims 1 and 14.

13

C.    *Obviousness of the Undo Stack Limitation*

"Obviousness is a question of law based on underlying findings of fact." *BTG Int'l Ltd. v. Amneal Pharms. LLC*, 923 F.3d 1063, 1073 (Fed. Cir. 2019). The underlying facts to be considered include: (1) "the scope and content of the prior art," (2) "differences between the prior art and the claims at issue," and (3) "the level of ordinary skill in the pertinent art." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966). Additionally, "[s]uch secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy." *Id.* at 17–18. If evidence of these secondary considerations is presented to the court, it must be considered in tandem with the other three *Graham* factors. *Eurand, Inc. v. Mylan Pharms., Inc.*, 676 F.3d 1063, 1075 (Fed. Cir. 2012) ("[E]vidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness." (citation omitted)); *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 306 (Fed. Cir. 1985) (holding that "all relevant evidence going to the issue of obviousness/nonobviousness, which includes properly presented evidence on secondary considerations, must [be] considered").

Here, there is no dispute regarding the first three *Graham* considerations. The parties agree that an individual with ordinary skill in the pertinent art would have a bachelor's degree in computer science or other similar degree and 2–5 years of work, graduate study, or research experience in the field of computer science and the subfield of graphic user interface design. Moreover, the parties do not dispute that the scope of the relevant prior art is a single reference: Photoshop 4. And there is no dispute as to the differences between Photoshop 4 and Claims 1 and 14 of the '483 patent. As discussed at length above, Photoshop 4 discloses all of the limitations of

14

these claims save one: "pushing the font command code corresponding to the identified font to the undo stack when a subsequent confirmation is received from the user." An undue stack is an electronically stored record of a series of edits to a document. The undo stack limitation describes adding a font command code to the undo stack when confirmation is received so that the resulting edit can be reversed if the user activates the undo function of the document editing program. Photoshop 4 differs from this limitation in two respects. First, Photoshop 4 stores the undo information when the user opens the dialogue menu rather than when the user confirms the edit. Second, Photoshop 4 stores only a single level of undo information. Because the user can only reverse the last edit performed, Photoshop 4 does not disclose adding the undo information to a "stack" of prior edits.

The evidence relevant to the secondary considerations all points to a finding that the undo stack limitation was obvious. Microsoft's expert noted that multiple computer software programs commonly available at the time that Corel applied for a patent utilized multilevel undo stacks, including CorelDraw 7, Microsoft Word, and Corel WordPerfect. Indeed, the multilevel undo feature appeared as early as 1973 in the Bravo text editor on the Xerox Alto. Microsoft's expert further opined that a "stack is a standard data structure taught in introductory computer science classes." ECF No. 387-1 at ¶ 164. Because Photoshop 4 already performed the function of saving the prior state of the document in order to facilitate a single-level undo function, it would have been obvious to create a stack to facilitate a multilevel undo function, especially in light of the common usage of undo stacks in document editing programs. Microsoft's expert further opined that it would have been obvious to a person of ordinary skill in the art to modify the teachings of Photoshop 4 to update the undo stack when the user confirms the font selection in order to reduce RAM usage.

Corel's expert does not dispute any of these expert opinions regarding the obviousness of the undo stack limitation. Nor does Corel dispute Microsoft's obviousness contention in its briefing to the court. Accordingly, there is no dispute as to the underlying facts relevant to an analysis of the *Graham* obviousness factors. Considering these factors, and for the reasons discussed above, the court finds by clear and convincing evidence that the undo stack limitation was an obvious modification to the disclosures of Photoshop 4. Because Claims 1 and 14 were obvious in light of the prior art, Microsoft prevails as a matter of law on its invalidity defense and is entitled to summary judgment on these claims.

## II.    CLAIMS 2, 3, AND 4

Claims 2, 3, and 4 describe the method of Claim 1 while modifying the definition of the term "font." '483 patent at 14:34–39. In Claim 2, "the font comprises a font face." In Claim 3, "the font comprises a font size." And in Claim 4, "the font comprises a font color." Each of these claims is obvious in light of Photoshop 4.

Claim 4 describes the same function performed by Photoshop 4: previewing changes to font color. Accordingly, Claim 4 is obvious in light of this prior art for the same reasons that Claim 1 is obvious. Corel apparently concedes this point as it does not articulate any reason why Claim 4 would not be obvious.

Although Photoshop 4 does not specifically disclose previewing changes to font face or font size, as described in Claims 2 and 3, these claims are also obvious in light of Photoshop 4's disclosure of a method for previewing font edits. The specification of the '483 patent describes the invention as the method of previewing font edits in the active document by hovering. *Id*. at 3:17–25. The specification states that although the invention employs routines known in the art, it is novel because the invention's order of execution of these routines allows the user to preview edits

16

more quickly than with methods used in the prior art. *Id*. at 5:65–6:12, 9:41–45. Because the asserted novelty of the invention lies in the preview method, the specification does not suggest that there is any innovation associated with the type of font option previewed. Indeed, the '483 patent concedes that a variety of font commands, including "text color," "Font face," and "Font size," are "easily implemented . . . features" once the real time preview method is known. *Id*. at 8:56–9:24. This concession that font face and font size commands are easily implemented variations on the real-time font preview method shows that Claims 2 and 3 would have been obvious in light of Photoshop 4's disclosure of real-time previews of font color commands. *See Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330, 1339 (Fed. Cir. 2020) ("[I]t is appropriate to rely on admissions in a patent's specification when assessing whether that patent's claims would have been obvious.").

In opposition to Microsoft's obviousness contention, Corel argues that Microsoft does not challenge its expert's opinions regarding secondary indicia of non-obviousness. But Corel's expert opined only that Corel's live preview invention, as a whole, was not obvious.[4] He did not express any opinions regarding the obviousness of font face and font size previews in light of Photoshop 4's disclosure of font color previews. Accordingly, Corel does not point to any relevant expert opinions that would require refutation.

Thus, the court finds by clear and convincing evidence that Claims 2, 3, and 4 are also invalid as obvious. Microsoft is entitled to summary judgment on these claims as well.

---

[4] Of course, evidence related to the obviousness or non-obviousness of previewing font commands is not relevant to this case because, as discussed above, Photoshop 4 disclosed this feature.

### III.     CLAIM 6

Claim 6 describes the method of Claim 1 wherein the selection of the font option closes the menu or toolbar option. Corel does not dispute that Photoshop 4 discloses Claim 6. When a user of Photoshop 4 selects a font color by clicking the "OK" button, the dialogue window closes. Thus, Claim 6 is invalid as obvious for the same reasons that Claim 1 is invalid.

### IV.     CLAIM 7

Claim 7 describes the method of Claim 1 "further comprising selecting desired text to change within the active document before responding to the identified font." '483 patent at 14:51–53. Corel argues that because Photoshop 4 does not permit the user to select individual characters or words within a given text image, it does not disclose selecting text before previewing an identified font command.

But the undisputed evidence demonstrates that Photoshop 4 discloses the limitation described in Claim 7. Photoshop 4 allows the user to add text to a document in layers. For example, the user could add a phase or word to a document as layer 1. The user could then add another phrase or word to the same document as layer 2, and so on. If the user decided to change the color of any text in the document, he or she must select the layer to be edited before previewing the font color edits for that layer. Thus, Photoshop 4 anticipates selecting text before previewing font commands for that selection.

Moreover, Claim 7 is also obvious in light of the prior art. The '483 patent describes the prior art of document editing programs as displaying font edits in a dialogue window. *Id*. at 1:35–44. The patent states that one of the "common implementations" of this method involves executing font commands on a portion "of the selected text being modified" displayed in the dialogue window. *Id* at 1:44–57. Thus, Corel made a binding admission in its patent that a common feature

of the prior art was the selection of text for font modification. *See PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1362 (Fed. Cir. 2007) ("Admissions in the specification regarding the prior art are binding on the patentee for purposes of a later inquiry into obviousness."). In light of the *Graham* considerations discussed above, the court finds that including this common functionality of the relevant prior art would have been obvious to an individual with ordinary skill in the art.

## V.    CLAIM 11

Claim 11 describes the method of Claim 1 "wherein the document editing program is a spreadsheet program." '483 patent at 14:62–63. The specification of the '483 patent concedes that "[i]t would be clear to one skilled in the art . . . how to apply the invention to other software applications, such as spreadsheets and database management programs." *Id*. at 6:15–18. This explicit concession of obviousness demonstrates that the application of the invention to a spreadsheet program would have been apparent in light of the disclosures of Photoshop 4. *See Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330, 1339 (Fed. Cir. 2020). Accordingly, Claim 11 is also invalid as obvious.

## CONCLUSION AND ORDER

For the foregoing reasons, the court grants summary judgment in favor of defendant Microsoft on the '483 patent claims. Both Microsoft's and Corel's motions to exclude expert testimony are denied as moot.

DATED September 23, 2025.

BY THE COURT

Jill N. Parrish
United States District Court Judge

19